UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTARIAN PARTY OF ERIE COUNTY, MICHAEL KUZMA, RICHARD COOPER, GINNY ROBER, PHILIP M. MAYOR, MICHAEL REBMANN, EDWARD L. GARRETT, and DAVID MONGIELO, <br><br> Plaintiffs, <br><br> - against - <br><br> ANDREW M. CUOMO, as Governor of the State of New York; ERIC T. SCHNEIDERMAN, as Attorney General of the State of New York; and JOSEPH A. D'AMICO, as Superintendent of the New York State Police, <br><br> Defendants. | 15-cv-00654-FPG |

## MEMORANDUM OF LAW IN SUPPORT OF THE ATTORNEY GENERAL'S MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, TO TRANSFER VENUE

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
ANTHONY J. TOMARI
Assistant Attorneys General
    *Of Counsel*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

A.  New York's Longstanding History of Firearms Licensing and Regulation ............................ 3
B.  New York's Current Firearms Licensing Law ................................................................. 4
C.  The Present Action ..................................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.  THE PLAINTIFFS LACK ARTICLE III STANDING ........................................................ 6

    A.  As the Complaint Sets Forth No Allegations at All Regarding the
        Firearms License Statuses of Plaintiffs Kuzma, Cooper, Rober,
        Rebmann, Garrett, and Mongielo, Each Plainly Lacks Standing Here ........................ 7

    B.  The Organizational Plaintiff, Libertarian Party, Does Not Have Standing Either ......... 8

    C.  Plaintiff Mayor Also Lacks Standing .......................................................... 9

II.  THE ATTORNEY GENERAL, LIKE THE OTHER DEFENDANTS,
    IS NOT A PROPER PARTY TO THIS ACTION -- AND THE
    COMPLAINT IS THUS BARRED BY THE ELEVENTH AMENDMENT ..................... 11

III.  VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF NEW YORK ................. 13

IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND
    AMENDMENT ................................................................................................. 14

    A.  Plaintiffs' Second Amendment Challenges to New York's Firearms Licensing
        Law Have Already Been Considered and Rejected by the Second Circuit and
        Other Federal and State Courts in this Circuit ................................................ 14

    1.  As Plaintiffs Concede, the Second Circuit's Decision in *Kachalsky*
        Compels Dismissal of their Second Amendment Challenge to the
        "Proper Cause" Requirement for the Public Carry of Firearms in New York ............ 15

    2.  New York's Licensing Requirements for Home Firearm Possession
        Also Have Been Upheld, Without Exception, by Every Federal and State
        Court to Consider the Issue ......................................................................... 16

B.  In Any Event, Plaintiffs' Claims Fail as a Matter of Law Under the Second
Circuit's "Two-Step Inquiry" for Assessing Second Amendment Challenges ................. 19

1.  The Second Circuit's Framework for Assessing Second Amendment Claims................. 19

2.  New York's Licensing Requirements for Home Firearm Possession Do Not
Substantially Burden the Second Amendment Right......................................................... 20

3.  Even if Heightened Scrutiny Applied Here, New York's
Licensing Law Would Easily Pass Constitutional Muster................................................. 21

a.  At Most, Intermediate Scrutiny Applies ........................................................ 21
b.  New York's Firearms Licensing Law Satisfies Intermediate Scrutiny ........................ 23

V.  PENAL LAW § 400.00 IS NOT UNCONSTITUTIONALLY VAGUE ............................. 25

A.  The Applicable Vague-In-All-Applications Standard ..................................................... 26

B.  Penal Law § 400.00 Is Not Unconstitutionally Vague on its Face ................................ 27

CONCLUSION........................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)..................................................................................................8

*Aron v. Becker*,
   48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014),
   *appeal dismissed as in default*, No. 14-3843 (2d Cir. Nov. 17, 2014) ............................ *passim*

*Arriaga v. Mukasey*,
   521 F.3d 219 (2d Cir. 2008)................................................................................................26

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005), *overruled in part on other grounds by McDonald* v. *City
   of Chicago*, 561 U.S. 742 (2010) ........................................................................................8

*Barlow v. Fischer*,
   No. 08-CV-6474 (CJS), 2010 U.S. Dist. LEXIS 37522 (W.D.N.Y. Apr. 15, 2010) .............13

*Betancourt v. Bloomberg*,
   448 F.3d 547 (2d Cir. 2006)................................................................................................26

*Carter v. HealthPort Techs., LLC*,
   No. 14-CV-6275-FPG, 2015 U.S. Dist. LEXIS 43058 (W.D.N.Y. Mar. 31, 2015).................7

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010)..................................................................................................7

*Cincotta v. N.Y.C. Human Resources Admin.*,
   No. 00 Civ. 9064 (JGK), 2001 U.S. Dist. LEXIS 11457 (S.D.N.Y. Aug. 9, 2001) ...............12

*City of Chicago v. Morales*,
   527 U.S. 41 (1999)...............................................................................................................27

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) .................................................................................................. 9-10

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005)................................................................................................13

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)........................................................................................ 9, 14, 16-17, 20

*Ex parte Young*,
   209 U.S. 123 (1908)...........................................................................................................11

*Giammatteo v. Newton*,
    452 F. App'x 24 (2d Cir. 2011) ..........................................................................7

*Gras v. Stevens*,
    415 F. Supp. 1148 (S.D.N.Y. 1976)...................................................................12

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)......................................................................................26, 29

*Hightower v. City of Boston*,
    693 F.3d 61 (1st Cir. 2012)...........................................................................8-9

*In re Grand Jury Subpoena John Doe v. United States*,
    150 F.3d 170 (2d Cir. 1988).............................................................................21

*Johnson v. N.Y. State Dep't of Corr. Servs.*,
    709 F. Supp. 2d 178 (N.D.N.Y. 2010) .............................................................11

*Kachalsky v. Cacace*,
    817 F. Supp. 2d 235 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81 (2d Cir. 2013),
    *cert. denied*, 133 S. Ct. 1806 (2013) ............................................................. 7-9

*Kachalsky v. Cnty. of Westchester*,
    701 F.3d 81 (2012), *cert. denied*, 133 S. Ct. 1806 (2013) ............................... *passim*

*Kinlaw v. Pataki*,
    No. 07-CV-574Sr, 2007 U.S. Dist. LEXIS 85555 (W.D.N.Y. Nov. 15, 2007)......................13

*Knife Rights, Inc. v. Vance*,
    No. 13-4840-cv, 2015 U.S. App. LEXIS 16814 (2d Cir. Sept. 22, 2015) .................................9

*Kuck v. Danaher*,
    600 F.3d 159 (2d Cir. 2010)..............................................................................23

*Kuck v. Danaher*,
    822 F. Supp. 2d 109 (D. Conn. 2011) ........................................................... 26-29

*Kwong v. Bloomberg*,
    876 F. Supp. 2d 246 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013),
    *cert. denied*, 134 S. Ct. 2696 (2014) ..............................................................12

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014)............................19, 21, 23

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50, 59 (2d Cir. 2012)............................................................................1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 7, 9-10

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012) ....................................................................................6

*Mallard v. Potenza*,
  376 F. App'x 132 (2d Cir. 2010) ........................................................................20

*Matter of Delgado v. Kelly*,
  127 A.D.3d 644 (1st Dep't 2015), *leave to appeal denied*, 26 N.Y.3d 905 (2015)...........18, 23

*Matter of Knight v. Bratton*,
  48 Misc. 3d 536 (Sup. Ct. N.Y. Cnty. 2015) .......................................................18

*Matter of Tessler v. City of New York*,
  38 Misc. 3d 215 (Sup. Ct. N.Y. Cnty. 2012) .......................................................18

*Matter of Zedek v. Kelly*,
  37 Misc. 3d 1208(A), 2012 N.Y. Misc. LEXIS 4834 (Sup. Ct. N.Y. Cnty. Jan. 25,
  2012) .............................................................................................................18, 26, 28

*McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*,
  No. 12-CV-3852 (JFB)(ETB), 2013 U.S. Dist. LEXIS 127614 (E.D.N.Y. July 23,
  2013), *adopted by* 2013 U.S. Dist. LEXIS 126874 (E.D.N.Y. Sept. 5, 2013).........................11

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ....................................................................................8, 14, 20

*Mendez v. Heller*,
  530 F.2d 457 (2d Cir. 1976).......................................................................12, 16, 19

*Mongielo v. Cuomo*,
  40 Misc. 3d 362 (Sup. Ct. Albany Cnty. 2013) ..................................................18

*Moore v. U.S. Dep't of Educ.*,
  457 F. App'x 10 (2d Cir. 2011) ...........................................................................18

*Moreno v. New York City Police Department*,
  No. 10 Civ. 6269 (DAB) (RLE), 2011 U.S. Dist. LEXIS 76129 (S.D.N.Y. May 6,
  2011), *adopted by* 2011 U.S. Dist. LEXIS 76131 (S.D.N.Y. July 14, 2011) ................... 16-17

*N.Y. State Citizens' Coal. for Children v. Velez*,
  No. 14-2919-cv, 2015 U.S. App. LEXIS 18805 (2d Cir. Oct. 29, 2015) (summary
  order)......................................................................................................................8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  132 S. Ct. 2566 (2012).........................................................................................22

*Nnebe v. Daus,*
    644 F.3d 147 (2d Cir. 2011) .................................................................................8

*Nolan v. Cuomo,*
    No. 11 CV 5827 (DRH) (AKT), 2013 U.S. Dist. LEXIS 6680 (E.D.N.Y. Jan. 16,
    2013) .......................................................................................................................12

*NRA v. BATFE,*
    700 F.3d 185 (5th Cir. 2012) ...............................................................................22

*NYSRPA v. City of New York,*
    86 F. Supp. 3d 249, 259 (S.D.N.Y. 2015)....................................................... 19-20

*NYSRPA v. Cuomo,*
    --- F.3d ----, 2015 U.S. App. LEXIS 18121 (2d Cir. Oct. 19, 2015) ......... 19, 21-22, 24, 27, 29

*O'Connor v. Scarpino,*
    83 N.Y.2d 919 (1994) .............................................................................................4

*Osterweil v. Bartlett,*
    819 F. Supp. 2d 72 (N.D.N.Y. 2011), *vacated on other grounds by* 738 F.3d 520 (2d
    Cir. 2013) ..............................................................................................................12

*Parker v. District of Columbia,*
    478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. Heller v. District of Columbia,* 554
    U.S. 570 (2008)........................................................................................................9

*People ex rel. Darling v. Warden of City Prison,*
    154 A.D. 413 (1st Dep't 1913) ...............................................................................3

*People v. Foster,*
    30 Misc. 3d 596 (Crim. Ct. Kings Cnty. 2010).....................................................18

*People v. Hughes,*
    22 N.Y.3d 44 (2013) .............................................................................................21

*People v. Nivar,*
    30 Misc. 3d 952 (Sup. Ct. Bronx Cnty. 2011) .................................... 18, 25-26, 28-29

*People v. Perkins,*
    62 A.D.3d 1160 (3d Dep't 2009) ..........................................................................18

*Powell v. Tompkins,*
    926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd,* 783 F.3d 332 (1st Cir. 2015)............8

*Snell v. Suffolk Cnty.,*
    782 F.2d 1094 (2d Cir. 1986)................................................................................24

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)..................................................................................................10

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014)..........................................................................................10

*Thibodeau v. Portuondo*,
   486 F.3d 61 (2d Cir. 2007).....................................................................................29

*TSIG Consulting, Inc. v. ACP Consulting LLC*,
   No. 14 Civ. 2032 (SHS), 2014 U.S. Dist. LEXIS 49843 (S.D.N.Y. Apr. 9, 2014)........... 13-14

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994)................................................................................................22

*United States v. Decastro*,
   682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013) ........................... 7-8, 23, 25

*United States v. Farhane*,
   634 F.3d 127 (2d Cir. 2011)....................................................................................27

*United States v. Rybicki*,
   354 F.3d 124 (2d Cir. 2003) (en banc)....................................................................27

*United States v. Salerno*,
   481 U.S. 739 ...........................................................................................................27

*Va. Office for Prot. & Advocacy v. Stewart*,
   131 S. Ct. 1632 (2011)............................................................................................11

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
   535 U.S. 635 (2002)................................................................................................11

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982)................................................................................................26

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)................................................................................... 6-7

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................................................7

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008)................................................................................................23

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)................................................................................................10

*Williams v. State*,
    10 A.3d 1167 (Md. 2011) ...........................................................................8

## STATUTES & RULES

28 U.S.C.
    § 1391..............................................................................................13
    § 1404(a) ...........................................................................................1
    § 1406(a) .......................................................................................1, 13

42 U.S.C.
    § 1983................................................................................................8

Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627 ......................................3

Act of Apr. 22, 1785, ch. 81, 1785 Laws of N.Y. 152 ......................................3

1881 Laws of N.Y., ch. 676 .......................................................................3

1884 Laws of N.Y., ch. 46, § 8 ...................................................................3

1905 Laws of N.Y., ch. 92, § 2 ...................................................................3

1911 Laws of N.Y., ch. 195, § 1 ..................................................................3

1913 Laws of N.Y., ch. 608 .....................................................................3-4

N.Y. Exec. Law § 63 ...............................................................................11

N.Y. Penal Law
    § 265.00......................................................................................4-5, 16
    §§ 265.01-265.04 ........................................................................3-4, 10
    § 265.20.....................................................................................3-4, 10
    § 400.00......................................................................................*passim*
    § 400.01..............................................................................................5

Fed. R. Civ. P.
    12(a)(1) ..............................................................................................1
    12(b)(1) ..........................................................................................1, 10
    12(b)(3) ..........................................................................................1, 13
    12(b)(6) ................................................................................1, 13, 17, 28

## OTHER AUTHORITIES

Kara E. Rudolph et al., *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides,* 105 Am. J. Pub. Health e49 (2015).........................................................24

Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep Firearms from High-Risk Individuals*, 36 Ann. Rev. Pub. Health 21 (2015).........................24

Daniel Webster et al., *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. Urban Health 293 (2014) (erratum: 91 J. Urban Health 598 (2014))...........................................................................................................................24

Daniel W. Webster et al., *Preventing the Diversion of Guns to Criminals through Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109 (2013)................................................................. 24-25

Daniel W. Webster et al., *Relations Between Licensing, Registration, and Other Gun Sales Laws and the Source State of Crime Guns,* 7 Injury Prevention 184 (2001) .................25

Defendant Eric T. Schneiderman, Attorney General of the State of New York

("Defendant" or the "Attorney General") respectfully submits this memorandum of law in

support of his motion to dismiss Plaintiffs' Complaint, dated July 21, 2015, pursuant to Rules

12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. §§

1406(a) and 1404(a), or, alternatively, to transfer this case to the Northern District of New York.[1]

## PRELIMINARY STATEMENT

Plaintiffs, a local Erie County political organization and seven individuals, bring this

action to challenge the constitutionality of New York's century-old firearms licensing law under

the Second and Fourteenth Amendments.  Plaintiffs allege that they would like to exercise their

rights under the Second Amendment primarily to defend and deter "against the prospect of

tyrannical government."  (Complaint (ECF Docket No. 1) ("Cplt.") ¶¶ 20, 64.)  They point to

"[e]xamples of tyrannical governments in history" and set forth alleged "signposts of incipient

tyrannical government in America," which, they assert, "would trigger the right of the people to

alter or abolish their government using the tools provided by the right to bear arms."  (*Id.* ¶¶ 21-

22, 30.)  And while Plaintiffs concede that "the United States has not engaged in these [alleged

tyrannical] practices or the kinds of atrocities associated with [the Soviet Union, Nazi Germany,

---

[1] This motion is brought at this time only on behalf of the Attorney General.  The other two
defendants named in this action -- Andrew M. Cuomo, Governor of the State of New York (the
"Governor") and Joseph A. D'Amico, Superintendent of the New York State Police (the
"Superintendent") -- have not yet been served.  As we previously noted to the Court, Plaintiffs'
counsel had indicated over a month ago that he intended to take steps to effect such service
immediately.  (*See* ECF Docket No. 4.)  But that has not happened.  Thus, the Court currently
lacks personal jurisdiction over both the Governor and the Superintendent, *see, e.g.*, *Licci ex rel.
Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012), and their time to respond
to the Complaint has not yet begun to run, *see* Fed. R. Civ. P. 12(a)(1).  In any event, the grounds
for dismissal (or, alternatively, transfer) set forth by the Attorney General below, apply equally
to the Governor and the Superintendent.

or Pol Pot's Cambodia]," they state that "it is reasonable to be concerned about the future." (*Id.* ¶ 23.)

As an initial matter, Plaintiffs' Complaint is subject to dismissal because not a single Plaintiff comes close to establishing standing, as is required for this Court to have jurisdiction to entertain their claims. Additionally, as set forth below, the Attorney General is not a proper party to this action, and the United States District Court for the Western District of New York is the improper venue for this action against him. In light of the foregoing, this case should be dismissed and/or transferred without this Court reaching the merits.

But even if this Court were to reach the merits, Plaintiffs' Complaint must be dismissed. Plaintiffs challenge both New York's at-home and public-carry firearms licensing provisions. Every Court to consider constitutional challenges to the State's licensing scheme has rejected such claims and found New York's licensing statue, codified in Penal Law § 400.00, to be constitutional. Further, the statute would readily pass any applicable constitutional scrutiny.

Finally, Plaintiffs' Fourteenth Amendment challenge, which seems to allege that certain terms in the licensing statute are unconstitutionally vague, must be rejected. Courts have repeatedly upheld New York's firearms licensing law against vagueness challenges, and the terms at issue have long been constitutionally applied in this State.

Accordingly, as discussed in detail below, the Attorney General's motion should be granted, and the Complaint should be dismissed with prejudice. Alternatively, the action should be transferred to the Northern District of New York.

## STATEMENT OF FACTS

The facts and circumstances relevant to this motion are briefly summarized below.

**A.     New York's Longstanding History of Firearms Licensing and Regulation**

As the Second Circuit has recognized, "New York's efforts in regulating the possession and use of firearms predate the Constitution," *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 84 (2012), *cert. denied*, 133 S. Ct. 1806 (2013), and have continued since.  By 1785, New York had enacted laws regulating when and where firearms could be used, as well as restricting the storage of gun powder.  *Id.* (citing Act of Apr. 22, 1785, ch. 81, 1785 Laws of N.Y. 152; Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627).  As early as 1881, New York prohibited the concealed carrying of "any kind of fire-arms."  *Id.* (quoting 1881 Laws of N.Y., ch. 676, at 412).  By 1884, New York instituted a statewide licensing requirement for minors carrying weapons in public.  *Id.* (citing 1884 Laws of N.Y., ch. 46, § 8, at 47).  And, in 1905, it expanded its licensing requirements to include all persons carrying concealable pistols.  *Id.* (citing 1905 Laws of N.Y., ch. 92, § 2, at 129-30).

Then, in 1911, due to a rise in violent crime associated with concealable weapons, New York enacted the Sullivan Law as a public safety measure.  *See, e.g., People ex rel. Darling v. Warden of City Prison*, 154 A.D. 413, 422-23 (1st Dep't 1913); *see Kachalsky*, 701 F.3d at 84-85.  The Sullivan Law "made it unlawful for any person to possess, without a license, 'any pistol, revolver or other firearm of a size which may be concealable upon the person.'"  *Kachalsky*, 701 F.3d at 84 (quoting 1911 Laws of N.Y., ch. 195, § 1, at 443).

In 1913, the Sullivan Law was amended to impose statewide standards for the issuance of licenses to possess and carry concealable firearms.  *See* 1913 Laws of N.Y., ch. 608, at 1627-30.  A license for home possession was to be issued by "any magistrate in this state, upon application

therefor, . . . provided such magistrate is satisfied of the good moral character of the applicant, and provided that no other good cause exists for the denial of such application." *Id.*  The statute also authorized a magistrate to issue an unrestricted license for concealed carrying in public "upon proof . . . of good moral character, and that proper cause exists for the issuance [of the license]."  *Id.*; *see Kachalsky*, 701 F.3d at 85.

These licensing measures have regulated the possession of handguns and other firearms in New York for more than a century.  *Kachalsky*, 701 F.3d at 84-86; *see* Penal Law §§ 265.01, 265.20(a)(3), 400.00.  Statutory amendments and recodifications over the years have consistently emphasized the importance of the State's licensing regime to crime prevention and public safety, while at the same time it preserves and protects "legitimate interests such as . . . the right of self defense."  *Kachalsky*, 701 F.3d at 97 n.22 (quoting Report of the N.Y. State Joint Legislative Comm. on Firearms & Ammunition, Doc. No. 6, at 12 (1965)).

**B.** **New York's Current Firearms Licensing Law**

Today, New York maintains this general prohibition on the possession of firearms, as defined by statute, without a license.[2]  Penal Law §§ 265.01-265.04, 265.20(a)(3); *see Kachalsky*, 701 F.3d at 85.  Licenses are currently issued pursuant to Penal Law § 400.00, which "is the exclusive statutory mechanism for the licensing of firearms in New York State."  *O'Connor v. Scarpino*, 83 N.Y.2d 919, 920 (1994); *see Kachalsky*, 701 F.3d at 85-86.  Under this provision, "[l]icenses are limited to those over twenty-one years of age, of good moral character, without a

---

[2] A "firearm" is defined under New York law to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; "any weapon made from a shotgun or rifle" with an overall length of less than twenty-six inches; and assault weapons.  Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85.  Rifles and shotguns are otherwise not subject to New York's licensing provisions.  Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85.

history of crime or mental illness, and 'concerning whom no good cause exists for the denial of the license.'"  *Kachalsky*, 701 F.3d at 86 (quoting Penal Law § 400.00(1)).

There are several types of firearms licenses available in New York, including licenses for household possession, *see* Penal Law § 400.00(2)(a), for workplace possession, *see id.* § 400.00(2)(b), and to "have and carry concealed," *see id.* § 400.00(2)(f).  As has been true since 1913, the last type, a public-carry license, may issue only for "proper cause."  *Id.* § 400.00(2)(f); *see Kachalsky*, 701 F.3d at 78-80.

Applications for a license under Penal Law § 400.00 are adjudicated by local licensing officers.  In most of New York, local judges serve as licensing officers.  Penal Law § 265.00(10); *see Kachalsky*, 701 F.3d at 87 & n.6.[3]  An individual may obtain judicial review of a licensing officer's denial of a license application, or any suspension or revocation of a firearms license, by filing a proceeding under Article 78 of New York's Civil Practice Law and Rules.  *See Kachalsky*, 701 F.3d at 87.

## C.      The Present Action

On July 22, 2015, Plaintiffs -- Libertarian Party of Erie County ("Libertarian Party"), an unincorporated entity "whose platform includes support for the right to bear arms," and seven individuals[4] -- commenced this action against the Governor, the Attorney General, and the

---

[3] In New York City, Nassau County, and Suffolk County, designated local police officials serve as licensing officers.  Penal Law § 265.00(10).  Pursuant to another statute not relevant here, Penal Law § 400.01, the Superintendent may serve as the licensing officer for retired members of the New York State Police.

[4] The individual Plaintiffs are Michael Kuzma ("Kuzma"), Richard Cooper ("Cooper"), Ginny Rober ("Rober"), Philip M. Mayor ("Mayor"), Michael Rebmann ("Rebmann"), Edward L. Garrett ("Garrett"), and David Mongielo ("Mongielo").  (Cplt. ¶¶ 4-10.)  Kuzma, Mayor, Rebmann, and Garrett are residents of Erie County, in the Western District of New York.  (*Id.* ¶¶ 4, 7-9.)  Cooper is a resident of Nassau County, in the Eastern District of New York.  (*Id.* ¶ 5.)  Rober is a resident of Broome County, in the Northern District of New York.  (*Id.* ¶ 5.)  Mongielo is a resident of Niagara County, in the Western District of New York.  (*Id.* ¶ 10.)

Superintendent (collectively, the "Defendants"), each of whom is sued in his official capacity. (Cplt. ¶¶ 2-14.)  In the Complaint, Plaintiffs challenge the constitutionality of New York's firearms licensing law, codified at Penal Law § 400.00[5], alleging that, on its face and as applied, (i) it violates their right to keep and bear arms, both at home and in public, under the Second Amendment (Counts One and Two) and (ii) certain of its terms "are not capable of definition" and thus unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment (Count Three).  (*Id.* ¶¶ 83-87.)  They seek a declaratory judgment that the licensing law "infringe[s] on the right of the people to keep and bear arms and right to due process, in violation of the Second and Fourteenth Amendments" (*id.* at 16); preliminary and permanent injunctive relief "enjoining  . . . administration and enforcement" of the law (*id.* at 16-17); and attorney's fees and costs (*id.* at 17).

The Attorney General now moves to dismiss, or, alternatively, to transfer this action to the Northern District of New York, for the reasons discussed below.

## ARGUMENT

## I.

## THE PLAINTIFFS LACK ARTICLE III STANDING

Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const., art. III, § 2; *see Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir.

---

[5] Plaintiffs also cite to Penal Law § 265.00 (*see id.* ¶¶ 83-84), which sets forth statutory definitions used in Articles 265 and 400 of the Penal Law.

2008) (alteration in original).  Standing is "the threshold question in every federal case."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Plaintiffs must demonstrate three elements: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief."  *W.R. Huff*, 549 F.3d at 106-07 (citing *Lujan*, 504 U.S. at 560-61); *see, e.g.*, *Carter v. HealthPort Techs., LLC*, No. 14-CV-6275-FPG, 2015 U.S. Dist. LEXIS 43058, at *6-7 (W.D.N.Y. Mar. 31, 2015).

Plaintiffs have the burden of establishing Article III standing for each claim asserted and each type of relief sought.  *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  And they must do so "by a preponderance of the evidence."  *Carter*, 2015 U.S. Dist. LEXIS 43058, at *7 (quoting *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011)).  None of the Plaintiffs has come close to meeting that burden here.

**A.      As the Complaint Sets Forth No Allegations at All Regarding the
        Firearms License Statuses of Plaintiffs Kuzma, Cooper, Rober,
        <u>Rebmann, Garrett, and Mongielo, Each Plainly Lacks Standing Here</u>**

In order to have standing to challenge New York's firearms licensing scheme, Plaintiffs, at a minimum, must plausibly allege (and ultimately prove) that they have applied for gun licenses in the State.  *See United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (holding that "because Decastro failed to apply for a gun license in New York, he lacks standing to challenge the licensing laws of the state"), *cert. denied*, 133 S. Ct. 838 (2013); *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 248 (S.D.N.Y. 2011) (holding that the plaintiffs had standing to challenge New York's public-carry licensing law because each "ha[d] submitted to [Penal Law

§] 400.00(2)(f), having applied for, and subsequently been denied full-carry permits under the statute"), *aff'd*, 701 F.3d 81.[6]

With respect to six of the named Plaintiffs -- Kuzma, Cooper, Rober, Rebmann, Garrett, and Mongielo -- such required allegations are entirely absent. Indeed, nowhere in the Complaint do Plaintiffs allege, as they must, *see Decastro*, 682 F.3d at 164, that any of them has ever applied for a firearms license in New York. Accordingly, none of the six has plausibly alleged an injury-in-fact and so each fails to establish standing in this case. *See id.*; *see also, e.g.*, *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148-49 (2d Cir. 2011); *Carter*, 2015 U.S. Dist. LEXIS 43058, at *14. Dismissal on subject-matter jurisdiction grounds is thus fully warranted.[7]

**B.** **The Organizational Plaintiff, Libertarian Party, Does Not Have Standing Either**

The organizational plaintiff, Libertarian Party, also plainly lacks standing here. Libertarian Party alleges in the Complaint that it is asserting claims "on behalf of itself and its members." (Cplt. ¶ 3.) But, as the Second Circuit has repeatedly held, in a 42 U.S.C. § 1983 action like this one (*see id.* ¶ 16), an organization may bring suit only "on its own behalf, rather than that of its members." *N.Y. State Citizens' Coal. for Children v. Velez*, No. 14-2919-cv, 2015 U.S. App. LEXIS 18805, at *3 (2d Cir. Oct. 29, 2015) (summary order); *see, e.g.*, *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). And nowhere in the Complaint does Libertarian Party

---

[6] *See also, e.g.*, *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 384 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015); *Williams v. State*, 10 A.3d 1167, 1169 (Md. 2011).

[7] This result not only comports with binding precedent, but, as the Second Circuit has explained, it is eminently sensible. "[R]equiring litigants to actually apply for a license before challenging a licensing scheme prevents courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Bach v. Pataki*, 408 F.3d 75, 82 (2d Cir. 2005) (internal quotation marks omitted), *overruled in part on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010). This is certainly so here.

allege any injury to itself, let alone one that would give rise to standing in this case. *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 251 (holding that an organizational plaintiff's allegations "that it 'promote[s] the exercise of the right to keep and bear arms and engages in 'education, research, publishing and legal action focusing on the [c]onstitutional right to privately own and possess firearms' . . . are plainly insufficient to give rise to standing"); *see also, e.g.*, *Knife Rights, Inc. v. Vance*, No. 13-4840-cv, 2015 U.S. App. LEXIS 16814, at *26-27 (2d Cir. Sept. 22, 2015) (noting that when organizational plaintiffs sue on their own behalf, "they must independently satisfy the requirements of Article III standing").

## C.      **Plaintiff Mayor Also Lacks Standing**

Plaintiff Mayor lacks standing here as well. While Mayor is the only one of the Plaintiffs to allege that he has a firearms license (*see* Cplt. ¶ 62), that, by itself, does not provide a sufficient basis for standing. If a license has been granted to Mayor and has not been revoked, as the Complaint alleges (*id.*), then he has not suffered any "concrete and particularized" harm, *Lujan*, 540 U.S. at 560, and thus has failed to establish the requisite injury-in-fact needed for standing. *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 248-49 (holding that it was the licensing officers' "denial of the [plaintiffs'] permit applications" that established the injury-in-fact needed to challenge New York's public-carry licensing law); *see also, e.g.*, *Parker v. District of Columbia*, 478 F.3d 370, 375-76 (D.C. Cir. 2007), *aff'd sub nom. Heller v. District of Columbia*, 554 U.S. 570 (2008); *Hightower*, 693 F.3d at 70.

Mayor's assertion that he "remains under constant threat of having his license revoked based on application of the arbitrary and subjective criteria set forth in the statute" (Cplt. ¶ 62) is precisely the sort of "highly speculative fear" that does not meet the requirements of Article III. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013). Likewise, Mayor's allegation that

he "risk[s] . . . immediate arrest" if he does not "carry his permit with him at all times" (Cplt. ¶ 63) cannot support a pre-enforcement challenge, if that is what he is attempting, because, as the Supreme Court has made clear, "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in *Clapper*); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  Mayor cannot meet that strict standard.

Finally, even if any of the Plaintiffs could establish injury-in-fact here (which they cannot), they still cannot satisfy the causation and redressability elements of Article III standing. As discussed below, *infra* Point II, it is local licensing officers, not the Attorney General or the Governor or the Superintendent, who specifically administer and enforce New York's firearms licensing law.  Thus, Plaintiffs cannot claim any injury that is "fairly traceable" to the actions of the Attorney General or the other Defendants or that could be remedied by an injunction against them.  *See Clapper*, 133 S. Ct. at 1150 & n.5; *Lujan*, 504 U.S. at 560-61.  For this reason, too, Plaintiffs lack standing to sue.[8]

In sum, each of the Plaintiffs has failed to meet his, her, or its  burden of establishing standing in this case.  Accordingly, on that threshold basis, the Court should dismiss this action, under Rule 12(b)(1), for lack of subject-matter jurisdiction.

---

[8] Notably, Plaintiffs' Complaint does not even purport to challenge those provisions of the Penal Law that make it a criminal offense to possess a handgun or other firearm without a license (§§ 265.01-265.04, 265.20(a)(3)).  Thus, even if Plaintiffs satisfied the other requirements of standing (which, as discussed, they do not) and prevailed on the merits of their claims (which they cannot, see *infra* Points IV-V), that would not remedy what it appears they deem to be their alleged injury here, as the criminal prohibition on unlicensed firearm possession would remain unaltered.  On this lack of redressability alone, Plaintiffs still would lack standing to bring this action.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

## II.

## THE ATTORNEY GENERAL, LIKE THE OTHER DEFENDANTS, IS NOT A PROPER PARTY TO THIS ACTION -- AND THE COMPLAINT IS THUS BARRED BY THE ELEVENTH AMENDMENT.

Plaintiffs also have failed to allege any specific connection of the Attorney General, or the Governor or the Superintendent, to the administration or enforcement of New York's firearms licensing law.  Thus, none of the Defendants is a proper party to this action.

The law on this point is clear.  The *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment sovereign immunity allows for suits against state officers in their official capacities if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (internal quotation marks omitted).  But this exception applies only where the official sued has "some connection with the enforcement of the [allegedly unconstitutional] act." *Ex parte Young*, 209 U.S. at 157; *see also, e.g.*, *McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*, No. 12-CV-3852 (JFB)(ETB), 2013 U.S. Dist. LEXIS 127614, at *15 (E.D.N.Y. July 23, 2013) (explaining that the state official "must ha[ve] a direct connection to, or responsibility for, the alleged illegal action" (internal quotation marks and citations omitted)), *adopted by* 2013 U.S. Dist. LEXIS 126874 (E.D.N.Y. Sept. 5, 2013).

Here, to satisfy the *Ex parte Young* exception, Plaintiffs "must plead facts showing that [the Attorney General, as well as the other Defendants,] had a connection with the alleged violation of federal law." *Johnson v. N.Y. State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 183 (N.D.N.Y. 2010).  They have failed to do so.  Plaintiffs' reliance on the Attorney General's general duty to "prosecute and defend all actions and proceedings in which the state is interested

11

. . ." (Cplt. ¶ 77 (quoting N.Y. Exec. Law § 63(1)) is unavailing.[9]  Under settled precedent, that is

simply not enough to make the Attorney General a proper party.  *See, e.g.*, *Mendez v. Heller*, 530

F.2d 457, 460 (2d Cir. 1976); *Gras v. Stevens*, 415 F. Supp. 1148, 1151 (S.D.N.Y. 1976) (three-

judge court) (Friendly, J.); *see also, e.g.*, *Cincotta v. N.Y.C. Human Resources Admin.*, No. 00

Civ. 9064 (JGK), 2001 U.S. Dist. LEXIS 11457, at *28 n.7 (S.D.N.Y. Aug. 9, 2001).

Indeed, courts in this Circuit to consider the question have expressly held that the

Attorney General and the Governor are not proper parties to actions, like this one, challenging

New York's firearms licensing scheme as unconstitutional.  *See Aron v. Becker*, 48 F. Supp. 3d

347, 368-69 (N.D.N.Y. 2014) (Governor), *appeal dismissed as in default*, No. 14-3843 (2d Cir.

Nov. 17, 2014); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 75 (N.D.N.Y. 2011) (Governor and

Attorney General), *vacated on other grounds by* 738 F.3d 520 (2d Cir. 2013); *see also Kwong v.

Bloomberg*, 876 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2012) (noting that the Attorney General was

initially sued in this action challenging the constitutionality of aspects of the State's licensing

law, but then subsequently dismissed as a defendant), *aff'd*, 723 F.3d 160 (2d Cir. 2013), *cert.

denied*, 134 S. Ct. 2696 (2014).  Rather, the case law makes clear that such suits should be

brought, if at all, against the plaintiffs' local licensing officers.  *See Kachalsky*, 701 F.3d at 83-

84.  Accordingly, Plaintiffs' claims against the Attorney General are subject to dismissal on

Eleventh Amendment grounds.[10]

---

[9] Likewise, as to both the Governor and the Superintendent, Plaintiffs merely recite, and rely upon, those officials' general law-enforcement duties under the New York law.  (*Id.* ¶¶ 76, 78.)

[10] This same reasoning would apply equally to Plaintiffs' claims against the Governor and the Superintendent and mandate dismissal of the action against them as well. *See, e.g.*, *Nolan v. Cuomo*, No. 11 CV 5827 (DRH) (AKT), 2013 U.S. Dist. LEXIS 6680, at *26-29 (E.D.N.Y. Jan. 16, 2013); *Gras*, 415 F. Supp. at 1151-52.

### III.

### <u>VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF NEW YORK</u>

If an action is filed in the wrong division or district, the court "shall dismiss" it, or transfer it "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see* Fed. R. Civ. P. 12(b)(3).  Plaintiffs bear the burden to establish that venue is correct.  *Barlow v. Fischer*, No. 08-CV-6474 (CJS), 2010 U.S. Dist. LEXIS 37522, at *3 (W.D.N.Y. Apr. 15, 2010).

Here, Plaintiffs make the conclusory allegation that venue in the United States District Court for Western District of New York is proper under 28 U.S.C. § 1391.  (Cplt. ¶ 17.)  Presumably, Plaintiffs intend to rely upon subsections (1) or (2) of § 1391(b), which provide that a civil action may be brought only in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  But this statute does not provide a basis for venue in this District under § 1391(b)(1), as none of the Defendants reside in the Western District of New York.  As alleged in the Complaint, the Attorney General, the Governor, and the Superintendent all reside in Albany, in the Northern District of New York.[11]  (Cplt. ¶¶ 11-14); *see Kinlaw v. Pataki*, No. 07-CV-574Sr, 2007 U.S. Dist. LEXIS 85555, at *2-4 (W.D.N.Y. Nov. 15, 2007).  Further, the Complaint is completely silent as to any relevant action of the Defendants that occurred in the Western District, and, accordingly, venue cannot lie under § 1391(b)(2).  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *see, e.g.*, *TSIG Consulting, Inc. v. ACP Consulting LLC*, No. 14 Civ. 2032 (SHS), 2014 U.S. Dist. LEXIS 49843, at *5 (S.D.N.Y. Apr. 9,

---

[11] The Attorney General also maintains executive offices in New York City, in the Southern District of New York.  *See* http://www.ag.ny.gov/tour-attorney-generals-office.

2014).  Accordingly, because venue is not proper in this District, the Court must dismiss the

Amended Complaint or transfer the case to the Northern District of New York.[12]

## IV.
## PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT

Plaintiffs assert that New York's firearms licensing law, codified at Penal Law § 400.00,

violates their Second Amendment rights, both at home and in public.  (Cplt. ¶¶ 83-84.)  These

claims, though the Court should not reach them for the reasons just discussed, *see supra* Points I-

III, are entirely without merit and should be dismissed as a matter of law under Rule 12(b)(6).

### A.    Plaintiffs' Second Amendment Challenges to New York's Firearms
### Licensing Law Have Already Been Considered and Rejected
### by the Second Circuit and Other Federal and State Courts in this Circuit

This is not the first case to raise a Second Amendment challenge to New York's firearms

licensing law.  Since the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S.

570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Circuit and

other courts in this Circuit have considered numerous such challenges.  All have been rejected.

As Plaintiffs acknowledge (*see* Cplt. ¶¶ 58-59), in *Kachalsky v. County of Westchester*,

701 F.3d 81, 83-84, 1010 (2d Cir. 2012), the Second Circuit itself rejected a Second Amendment

challenge to the licensing law's "proper cause" requirement, which governs the issuance of

licenses to carry a handgun or other firearm, as defined in the law, in public.  And, with respect

to the licensing of in-home firearm possession in this State, every federal district court and state

court to address the issue has held that Penal Law § 400.00, including its "good moral character"

and "good cause" provisions, comports with the Second Amendment.  These decisions fully

---

[12] Although not alleged in the Complaint, as noted, *see supra* note 11, if the Court decides to
transfer this action, transfer to the Southern District of New York also would be appropriate.

support -- and, in the case of *Kachalsky*, compel -- dismissal of Plaintiffs' Second Amendment

claims in this action with prejudice.

**1.    As Plaintiffs Concede, the Second Circuit's Decision in *Kachalsky* Compels Dismissal of their Second Amendment Challenge to the "Proper Cause" Requirement for the Public Carry of Firearms in New York**

In Count Two of the Complaint, Plaintiffs contend that New York's licensing restrictions

on the public carry of firearms violate their rights under the Second Amendment.  (Cplt. ¶ 84.)

While Plaintiffs appear to attack in this claim essentially all aspects of New York's public-carry

licensing scheme, the "proper cause" requirement of Penal Law § 400.00(2)(f) is the only

relevant distinction between what is needed for a public-carry license and what is needed to

obtain a license for in-home possession.  But, as Plaintiffs concede (*see id.* ¶¶ 58-59), the Second

Circuit expressly held in *Kachalsky* that the "proper cause" requirement is constitutional.  Thus,

under this binding precedent, Plaintiffs' challenge to the "proper cause" requirement in this

action, and their "invitation to strike down New York's one-hundred-year-old law and call into

question the state's traditional authority to extensively regulate handgun possession in public,"

*Kachalsky*, 701 F.3d at 101, if reached by the Court, must be dismissed with prejudice.[13]

In *Kachalsky*, individual plaintiffs argued that the licensing law's "proper cause"

provision, on its face and as applied to them, violated the Second Amendment.  701 F.3d at 83-

84.  The Second Circuit rejected that argument.  *Id.* at 83-84, 101.  Assuming the Second

Amendment was applicable, the Court applied intermediate scrutiny and held that this statutory

restriction on the public carry of firearms "is substantially related to New York's interests in

public safety and crime prevention" and thus "d[oes] not run afoul of the Second Amendment."

---

[13] The other licensing requirements Plaintiffs purport to challenge here, as they apply to all firearms licenses, are discussed more specifically below, in the context of home possession.  As noted, under settled precedent, they, too, are plainly constitutional.  *See infra* Point IV(A)(2)-(B).

*Id.* at 96-101.  Accordingly, the Second Circuit upheld New York's "proper cause" requirement as constitutional, both as applied and on its face.  *Id.* at 101.

Plaintiffs do not dispute this holding of *Kachalsky*.  (Cplt. ¶ 59.)  They assert, however, that they complain here about the "proper cause" requirement "so as to preserve the issue for reconsideration by the Second Circuit or review by the Supreme Court."  (*Id.*)  The Attorney General submits that such future appellate challenges would be meritless.  But, in any event, given the Second Circuit's controlling decision, the issue is, of course, not subject to reconsideration by this Court.  Under *Kachalsky*, Plaintiffs' claim that New York's firearm licensing scheme violates the Second Amendment by requiring an applicant to demonstrate "proper cause" to obtain a license to carry a handgun or other firearm in public must be dismissed with prejudice.

>    **2.      New York's Licensing Requirements for Home Firearm
>             Possession Also Have Been Upheld, Without Exception,
>             <u>by Every Federal and State Court to Consider the Issue</u>**

The constitutionality under the Second Amendment of New York's licensing requirements for home firearm possession, which Plaintiffs challenge in Count One of the Complaint, also has been repeatedly considered, by both federal district courts and state courts, since *Heller*.  The law has been upheld as constitutional on each such occasion.

Two federal district court decisions have expressly ruled that Penal Law § 400.00, as it applies to in-home firearm possession, is constitutionally sound under the Second Amendment.  In *Moreno v. New York City Police Department*, No. 10 Civ. 6269 (DAB) (RLE), 2011 U.S. Dist. LEXIS 76129 (S.D.N.Y. May 6, 2011), *adopted by* 2011 U.S. Dist. LEXIS 76131 (S.D.N.Y. July 14, 2011), the district court rejected a plaintiff's Second Amendment challenge to a licensing officer's denial of his application to possess a handgun in his home.  *Id.* at *10-14. The court noted that "*Heller* does not constrain the rights of the states to reasonably restrict the

possession of handguns through registration and licensing requirements"; it adopted the reasoning of New York state courts, "which have found the regulations in P.L. §§ 265.00 and 400.00 to be constitutional and consistent with *Heller* because they do not 'effect a complete ban on handguns,' but rather, permit persons who meet the statutory requirements to lawfully possess handguns in their home"; and it thus concluded that "so long as [the licensing officer]'s denial of [plaintiff]'s application comports with New York's licensing laws . . . the denial is consistent with *Heller* and does not infringe upon [plaintiff]'s Second Amendment rights." *Id.* at *9-11.

More recently, in *Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y. Sept. 22, 2014), a district court again upheld New York's firearms licensing law against Second Amendment attack. *Id.* at 369-72. Employing the Second Circuit's post-*Heller* framework for assessing Second Circuit claims (which is discussed further below, *see infra* Point IV(B)), the court found that because the State's licensing law "burden[s] only the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun," it "do[es] not present a substantial burden on the core protection of self-defense inside hearth and home for law-abiding, responsible citizens." *Id.* at 371. Applying intermediate scrutiny, the court then determined that § 400.00 "substantially relates to the important governmental objective of ensuring that only law-abiding, responsible citizens are allowed to possess a handgun" and thus does not violate the Second Amendment. *Id.* at 371-72. Accordingly, the Second Amendment challenges asserted to the licensing law -- the very same challenges raised by Plaintiffs in this case -- were dismissed with prejudice pursuant to Rule 12(b)(6). *Id.* at 372.

State court decisions on this point are numerous. And they, too, all go the same way. Just like the federal courts, state courts to consider the question have, without exception, found that New York's firearms licensing scheme, even as applied to the regulation of in-home firearm

possession, is wholly valid under the Second Amendment.  In *Matter of Delgado v. Kelly*, 127

A.D.3d 644 (1st Dep't 2015), *leave to appeal denied*, 26 N.Y.3d 905 (2015), for example, the

Appellate Division, First Department rejected petitioner's argument "that the licensing eligibility

standards in Penal Law § 400.00, *et seq.*, as applied [t]herein, including the requirements of

truthful entries on the license application and demonstration of good moral character,

impermissibly impinge upon his Second Amendment right to have a firearm in his home."  *Id.* at

644.  As the First Department held, directly contrary to Plaintiffs' contentions here, New York's

firearms licensing law was constitutional and advanced "a governmental interest in maintaining

public safety."  *Id.*  Countless other state court cases have held likewise.  *See, e.g.*, *People v.

Perkins*, 62 A.D.3d 1160, 1161 (3d Dep't 2009); *Mongielo v. Cuomo*, 40 Misc. 3d 362, 363-66

(Sup. Ct. Albany Cnty. 2013);[14] *People v. Nivar*, 30 Misc. 3d 952, 958-62 (Sup. Ct. Bronx Cnty.

2011); *People v. Foster*, 30 Misc. 3d 596, 600 (Crim. Ct. Kings Cnty. 2010).[15]

Given this unwavering authority, the analysis here is a simple and straightforward one.

The Court need only follow the results and reasoning of every court to consider a Second

Amendment challenge to New York's firearms licensing law and, in accord with this precedent,

should dismiss Plaintiffs' Second Amendment claims in this case, as to both public carry and in-

home possession, in their entirety and with prejudice.

---

[14] It appears that the lead plaintiff in this state court action may be the same David Mongielo who is named as one of the Plaintiffs in this case.  If that is true, Mongielo's claims here also would be barred as a matter of law on claim and issue preclusion grounds.  *See, e.g.*, *Moore v. U.S. Dep't of Educ.*, 457 F. App'x 10, 12-13 (2d Cir. 2011).

[15] *See also, e.g.*, *Matter of Knight v. Bratton*, 48 Misc. 3d 536, 540 (Sup. Ct. N.Y. Cnty. 2015); *Matter of Tessler v. City of New York*, 38 Misc. 3d 215, 230-231 (Sup. Ct. N.Y. Cnty. 2012); *Matter of Zedek v. Kelly*, 37 Misc. 3d 1208(A), 2012 N.Y. Misc. LEXIS 4834, at *3-6 (Sup. Ct. N.Y. Cnty. Jan. 25, 2012).

**B.     In Any Event, Plaintiffs' Claims Fail as a Matter of Law Under the Second Circuit's "Two-Step Inquiry" for Assessing Second Amendment Challenges**

The Attorney General, to be clear, is not suggesting that this Court blindly follow non-binding precedent.  As noted, *see supra* Point IV(A)(1), it is the Second Circuit's binding precedent in *Kachalsky*, 701 F.3d at 83-84, 101, that compels dismissal of Plaintiffs' challenge to the "proper cause" requirement of New York's firearms licensing law, making any further analysis on that point unnecessary.  Plaintiffs' claims against the rest of the State's licensing scheme, including the law's application to  in-home handgun possession, demonstrably fail under the Second Circuit's governing "two-step inquiry" for assessing Second Amendment challenges, as the federal district court and state court cases just discussed make plain.

**1.     The Second Circuit's Framework for Assessing Second Amendment Claims**

The Second Circuit has established a "two-step inquiry" for deciding Second Amendment challenges to firearms regulations.  *NYSRPA v. Cuomo*, --- F.3d ----, 2015 U.S. App. LEXIS 18121, at *22 (2d Cir. Oct. 19, 2015).  *First*, the court must ask whether the conduct at issue falls within the scope of the Second Amendment right.  *Id.*  *Second*, if it does, the court then "must determine and apply the appropriate level of scrutiny."  *Id.*  Only if the challenged law is found to impose a "substantial burden" on the right to keep and bear arms is "some form of heightened scrutiny" appropriate.  *Id.* at *34 (quoting *Kachalsky*, 701 F.3d at 93).  And, under those circumstances, the Second Circuit and courts in this Circuit have, without exception, applied intermediate scrutiny -- under which court assess whether a law is substantially related to an important government objective -- in assessing the constitutionality of the challenged measure. *See, e.g.*, *id.* at *38; *Kwong*, 723 F.3d at 168; *Kachalsky*, 701 F.3d at 96-97; *NYSRPA v. City of New York*, 86 F. Supp. 3d 249, 259 (S.D.N.Y. 2015); *Aron*, 48 F. Supp. 3d at 371.  Plaintiffs' claims fail as a matter of law under this analysis.

19

## 2. New York's Licensing Requirements for Home Firearm Possession Do Not Substantially Burden the Second Amendment Right

Even if the Court were to find that New York's licensing requirements for home firearm possession implicate the Second Amendment (which the Attorney General does not concede[16]), Plaintiffs have set forth no facts in the Complaint demonstrating that this law substantially burdens their rights.  As noted, *see supra* Point I, Plaintiff Mayor has a firearms license, and the other Plaintiffs do not even allege they applied for one.  Nor do Plaintiffs point to any actual, specific burden that the State's licensing requirements has imposed upon any of them.  Instead, Plaintiffs premise their claims on generalized concerns about crime and fantastical fears of potentially impending tyranny, and, based upon that, appear to assert that any firearms licensing scheme is necessarily unconstitutional.   (Cplt. ¶¶ 18-40, 62-75.)  But that plainly is not the law.  *See Mallard v. Potenza*, 376 F. App'x 132, 134 (2d Cir. 2010) (noting that *Heller* "did not hold reasonable licensing requirements unconstitutional"); *see also, e.g.*, *NYSRPA v. City of New York*, 86 F. Supp. 3d at 258-59 (citing cases).

As the district court held in *Aron*, even with respect to those who properly apply for a home firearms license, the New York scheme, as it "burden[s] only the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun,"

_____

[16] In *Kachalsky*, the Second Circuit assumed, but did not decide, that the State's licensing requirements for public carry fell within the scope of the Second Amendment right.  701 F.3d at 89.  But, at the same time, it noted that New York's firearms licensing scheme is "longstanding," *id.* at 90 n.11; *see supra* pp. 3-4, comparable to the sorts of measures the Supreme Court identified in *Heller* and *McDonald* as "presumptively lawful."  And, as courts have recognized, *Heller* itself "presume[s] a licensing scheme."  *NYSRPA v. City of New York*, 86 F. Supp. 3d at 258; *see Heller*, 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.").  It is the State's position that New York's licensing statutes are "longstanding" regulations that fall outside the scope of Second Amendment protection.  Nevertheless, for the purposes of this motion, we will proceed, as the Second Circuit did in *Kachalsky*, assuming for the sake of argument that the challenged licensing provisions are subject to Second Amendment analysis.

does not substantially burden the Second Amendment. *Aron*, 48 F. Supp. 3d at 371. Indeed, as

the New York Court of Appeals has made clear, any burden at all here on the Second

Amendment right is a minimal one, as "a license to possess a handgun in one's home" is not

"difficult to come by." *People v. Hughes*, 22 N.Y.3d 44, 50 (2013). By no means, do the

requirements for such a license impose a substantial burden.

### 3. Even if Heightened Scrutiny Applied Here, New York's Licensing Law Would Easily Pass Constitutional Muster

As the federal district court and state court cases discussed above demonstrate, *see supra*

Point IV(A)(2), even if the Court were to find that New York's firearms licensing requirements

for in-home possession substantially burden Plaintiffs' Second Amendment rights, their claims

should still be dismissed because intermediate scrutiny, at best, is appropriate, and the challenged

law unquestionably withstands such scrutiny.

### a. At Most, Intermediate Scrutiny Applies

Where a law substantially burdens the Second Amendment right, courts assess how

severely the challenged provision burdens that right in order to determine the level of scrutiny

applicable. *See NYSRPA*, 2015 U.S. App. LEXIS, at *30-38; *Kwong*, 723 F.3d at 168 & n.15;

*Kachalsky*, 701 F.3d at 93-94. As noted, the Second Circuit and district courts in this Circuit

have, without exception, applied intermediate scrutiny at this stage of the analysis -- including in

assessing, and upholding, the constitutionality under the Second Amendment of New York's

firearms licensing law, with respect to both public carry and in-home possession. *See, e.g.*,

*Kachalsky*, 701 F.3d at 96; *Aron*, 48 F. Supp. 3d at 371. Thus, intermediate scrutiny is, at most,

what the Court should apply here as well.

Under intermediate scrutiny, the Court is to assess whether a law "is substantially related

to the achievement of an important governmental objective." *Kachalsky*, 701 F.3d at 96-97.

Public safety and crime prevention are compelling governmental objectives, *id.* at 97; *see NYSRPA*, 2015 U.S. App. LEXIS 18121, at *39, as is the prevention of suicide, *see In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1988).  Accordingly, here, the Court need only assess whether the challenged provisions of New York's licensing law are "substantially related to these interests."  *Kachalsky*, 701 F.3d at 97.

Courts give "substantial deference" to legislative efforts to design solutions to address public safety and well-being.  *Id.*  This is especially true in the area of firearms regulation.  *Id.* Indeed, "[i]n the context of firearm regulation, the Second Circuit has made clear that the legislature is 'far better equipped than the judiciary' to make sensitive policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks."  *Id.* (quoting *Turner Broad. Sys., Inc*. *v. FCC*, 512 U.S. 622, 665 (1994)); *accord NYSRPA*, 2015 U.S. App. LEXIS 18121, at *40.

To survive intermediate scrutiny, the fit between the governmental objective and the challenged regulation need only be substantial, not perfect.  *Kachalsky*, 701 F.3d at 97.  In particular, as the Second Circuit recently stated, "gun-control legislation 'need not strike at all evils at the same time' to be constitutional."  *NYSRPA*, 2015 U.S. App. LEXIS 18121, at *43 (quoting *NRA v. BATFE*, 700 F.3d 185, 211 (5th Cir. 2012)); *see Kachalsky*, 701 F.3d at 98-99.

Given the "general reticence to invalidate the acts of [our] elected leaders," firearms regulations of the sort at issue here should be struck down under the Second Amendment "only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.'" *Kachalsky*, 701 F.3d at 100-01 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (2012)) (internal quotation marks omitted) (alterations in *Kachalsky*).  And, where, as here, Plaintiffs bring not only an as-applied, but a facial challenge to the provisions of a statute, that

facial challenge can succeed only if Plaintiffs "show that 'no set of circumstances exists under which the [statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep.'"  *Decastro*, 682 F.3d at 168 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (alteration in *Decastro*).

### b. New York's Firearms Licensing Law Satisfies Intermediate Scrutiny

The Second Circuit has already held that "proper cause" requirement of New York's firearms licensing law, which applies to the public carry of handguns, satisfies intermediate scrutiny.  *Kachalsky*, 701 F.3d at 97.  As every court to consider the issue has concluded, *see supra* Point IV(A), the remainder of the law's provisions (which, as noted, apply to both in-home possession and public carry, *see supra* pp. 4-5) also reasonably fit the State's compelling interests in public safety and crime prevention -- and thus easily satisfy intermediate scrutiny as well.  *See, e.g.*, *Aron*, 48 F. Supp. 3d at 372; *Matter of Delgado*, 127 A.D.3d at 644; *see also, e.g.*, *Kwong*, 723 F.3d at 168-69 (noting that New York's firearms licensing scheme "is designed to promote public safety and prevent gun violence," and that the imposition of a licensing fee, in order to allow that licensing scheme to function properly, satisfies intermediate scrutiny); *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010) (noting that State "clearly has a strong and compelling interest in ensuring that firearm permits are not issued to those 'lacking the essential character or temperament necessary to be entrusted with a weapon'" (citation omitted)).

A brief overview of the some of the relevant empirical evidence further demonstrates that New York's firearms licensing scheme is substantially related to the State's compelling interests

in protecting its populace from gun violence.[17]  Research shows, in fact, that handgun permit and

licensing laws are"[t]he type of firearm policy most consistently associated with curtailing the

diversion of guns to criminals and for which some evidence indicates protective effects against

gun violence."  Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep

Firearms from High-Risk Individuals*, 36 Ann. Rev. Pub. Health 21, 34 (2015).  One recent

study, for example, found that Missouri's repeal of its handgun licensing law, in 2007, was

associated with a 14% increase in the state's annual murder rate (*i.e.*, "an additional 49 to 69

murders per year") and an increase of 25% in its rate of firearm homicides.  Daniel Webster et

al., *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J.

Urban Health 293 (2014) (erratum: 91 J. Urban Health 598 (2014)).  Another recent study

examined the impact of Connecticut's handgun licensing law and found that it was associated

with a 40% reduction in that state's firearm homicide rate.  Kara E. Rudolph et al., *Association

Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 Am. J. Pub.

Health e49 (2015).  Notably, in both Missouri and Connecticut, no "substitution effect" was

observed, meaning criminals did not just switch to other weapons when they failed to obtain

firearms.

Licensing laws like New York's, which allow licensing officers discretion in issuing

permits, have been found to be particularly effective in keeping guns out of the hands of

criminals.  *See* Daniel W. Webster et al., *Preventing the Diversion of Guns to Criminals through

Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with*

---

[17] The Court may properly take judicial notice of "studies and data" in assessing Plaintiffs'
Second Amendment claim under intermediate scrutiny.  *Kachalsky*, 701 F.3d at 97-99; *see
NYSRPA*, 2015 U.S. App. LEXIS 18121, at *40-47; *see also, e.g.*, *Snell v. Suffolk Cnty.*, 782
F.2d 1094, 1105-06 (2d Cir. 1986) (holding that social science studies can be reviewed by courts
as "legislative facts").

*Evidence and Analysis* 109, 109-22 (2013) (handgun licensing laws that provided officers with discretion in issuing permits were associated with 76% lower per capita rates of exporting guns to criminals); Daniel W. Webster et al., *Relations Between Licensing, Registration, and Other Gun Sales Laws and the Source State of Crime Guns*, 7 Injury Prevention 184, 188 (2001) (finding that "cities with the lowest proportion of their crime guns originating from in-state dealers," which included New York City, "were in states that also allowed law enforcement discretion in issuing permits to purchase handguns, had longer waiting periods, and required purchase applicants to be fingerprinted").

Accordingly, for all these reasons, New York's firearms licensing law plainly passes constitutional muster under the Second Amendment.[18]

## V.

## <u>PENAL LAW § 400.00 IS NOT UNCONSTITUTIONALLY VAGUE</u>

In Count Three of the Complaint, Plaintiffs raise an apparent vagueness claim against Penal Law § 400.00.  (Cplt. ¶¶ 85-87.)  They assert that the statute's requirements of "good moral character" and "proper cause" for the issuance of a handgun license, or conversely, the absence of "good cause" to deny a license, "are not capable of definition in such a way that puts an applicant, a licensing officer or a reviewing court on notice of the meaning of the terms."  (*Id.* ¶¶ 85-86.)  They allege that "the state, its licensing officers and reviewing judges, are given unfettered discretion in denying an application based on their own whimsical notion of what

---

[18] Within their Second Amendment claims, Plaintiffs also make a variety of assertions regarding such issues as "prior restraint," "overbreadth," and claims related to others persons who are not before the Court (*e.g.*, the "terminally ill or the elderly").  (Cplt. ¶¶ 83-84.)  Plaintiffs have no standing to raise any of these matters, and they are all meritless in any event.  *See, e.g.*, *Kachalsky*, 701 F.3d at 91-92 (declining to apply prior-restraint doctrine in Second Amendment context); *Decastro*, 682 F.3d at 169 (no overbreadth in Second Amendment context); *see also, e.g.*, *Nivar*, 30 Misc. 3d at 958-62.

these terms mean." (*Id.* ¶ 87.)  And, as a result, Plaintiffs contend that Penal Law § 400.00 is

violative of the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 85-87.)

Plaintiffs' vagueness challenge is entirely without merit.  Like their Second Amendment

claims, it has been rejected by every court to consider the issue.  *See Aron*, 48 F. Supp. 3d at

372-74; *Nivar*, 30 Misc. 3d at 959-60; *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *4-6.

Plaintiffs do not come close to meeting the applicable vague-in-all-applications standard.  Thus,

even if the Court were to reach this claim (which it should not, *see supra* Points I-III), it fails,

and should be dismissed with prejudice, as a matter of law.

**A.**      **The Applicable Vague-In-All-Applications Standard**

"The Due Process Clause of the Fourteenth Amendment requires that laws be crafted

with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to

know what is prohibited' and to 'provide explicit standards for those who apply them.'"

*Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of

Rockford*, 408 U.S. 104, 108 (1972)).  "Regulations need not, however, achieve 'meticulous

specificity,' which would come at the cost of 'flexibility and reasonable breadth.'"  *Betancourt*,

448 F.3d at 552 (quoting *Grayned*, 408 U.S. at 110).  Instead, "[t]he degree of vagueness that the

Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement --

depends in part of the nature of the enactment."  *Vill. of Hoffman Estates v. Flipside, Hoffman

Estates, Inc.*, 455 U.S. 489, 498 (1982).

Where, as here, the challenged law is not a criminal statute, but a licensing scheme, it is

subject to "less exacting vagueness scrutiny."  *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir.

2008); *see Kuck v. Danaher*, 822 F. Supp. 2d 109, 133 (D. Conn. 2011) (Connecticut handgun

licensing statute).  And, critically, because Plaintiffs' vagueness challenges are pre-enforcement

and "do[] not reach conduct protected by the First Amendment," to prevail in this case, they must show that the statute at issue, Penal Law § 400.00, is impermissibly vague (under the standards just described) in all possible applications.  *United States v. Farhane*, 634 F.3d 127, 138-39 (2d Cir. 2011); *see NYSRPA*, 2015 U.S. App. LEXIS 18121, at *49-50.[19]

This is an exceedingly heavy burden.  As the Second Circuit recently reaffirmed, to succeed on such a facial vagueness claim, "the challenger must establish that *no set of circumstances* exists under which the [legislative enactment] would be valid."  *NYSRPA*, 2015 U.S. App. LEXIS 18121, at *50 (quoting *United States v. Salerno*, 481 U.S. 739, 745) (emphasis in *NYSRPA*).  It is thus "the most difficult challenge to mount successfully."  *Id.*  Plaintiffs plainly cannot successfully mount it in this case.[20]

**B.      Penal Law § 400.00 Is Not Unconstitutionally Vague on its Face**

The analysis here is not complicated.  "There are innumerable factual circumstances in which invocation of [Penal Law § 400.00's "good moral character," "proper cause," or "good cause"] standard[s] to revoke [or deny] a person's pistol permit on the basis that he poses a

---

[19] Plaintiffs do not expressly state in the Complaint whether they assert Penal Law § 400.00 to be vague on facial or as-applied grounds.  But because, as noted, *see supra* Point I, none of the Plaintiffs alleges that he or she has been denied a firearms license, had one revoked, or ever "been charged with any violation of law" relating to the licensing process, this could only be a "pre-enforcement," facial challenge.  *See NYSRPA*, 2015 U.S. App. LEXIS 18121, at *49-50.

[20] In setting forth this vague-in-all-applications standard, the Second Circuit in *NYSRPA* noted that it has not adopted the approach of three-Justice plurality opinion in *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (Stevens, J.), which provides that when a criminal law lacks a *mens rea* requirement and burdens a constitutional right it is subject to facial attack when "vagueness permeates the text of such a law."  *NYSRPA*, 2015 U.S. App. LEXIS 18121, at *50 (internal quotation marks omitted).  In any event, as Penal Law § 400.00 is a licensing statute and "not a criminal statue without a mens rea requirement," the standard set forth in *Morales* would be inapplicable regardless.  *Kuck*, 822 F. Supp. 2d at 133 (citing *United States v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003) (en banc)).  Nor, for the reasons discussed herein, could Plaintiffs possibly establish that Penal Law § 400.00 is "permeated" with vagueness.  *See, e.g.*, *Aron*, 48 F. Supp. 3d at 374; *see also Kuck*, 822 F. Supp. 2d at 133 (finding that Connecticut's licensing statute, which includes a statutorily- undefined "suitable" person requirement and grants discretion to licensing officials, is not "permeated" with vagueness).

danger to the public, even though he does not fall within one of the express statutory grounds for revocation [or denial] would be constitutionally valid."  *Kuck*, 822 F. Supp. 2d at 132 (dismissing vagueness challenge to Connecticut's firearms licensing statute under Rule 12(b)(6)).  "For instance, it could not possibly be unconstitutional for the state to revoke a person's pistol permit after he develops incurable dementia, is diagnosed with paranoid schizophrenia and makes threats to harm others, repeatedly shoots himself, or has an alcohol or drug addiction and repeatedly engages in reckless activity with his firearm while intoxicated."  *Id.* (noting that these examples are "illustrative" and "are not meant to provide an exhaustive list").  On this basis alone, Plaintiffs' facial challenge necessarily fails as a matter of law.

Moreover, Penal Law § 400.00 has already been determined, by every court to consider the issue, to not be unconstitutionally vague.  *Aron*, 48 F. Supp. 3d at 372-74; *Nivar*, 30 Misc. 3d at 959-60; *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *4-6.  And, notably, these courts have expressly rejected the very vagueness concerns Plaintiffs assert in the Complaint.  With respect to the "good moral character" requirement, for example, the district court in *Aron* held that, as used in Penal Law § 400.00, it "is not some esoteric standard devoid of parameters, but rather is a measure used to assess the suitability of the applicant to gain licensure to possess a potential deadly weapon like a pistol."  *Aron*, 48 F. Supp. 3d at 374; *accord Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *2 (noting that "[t]he 'good moral character' standard under Penal Law § 400.00(1) . . . is interpreted as 'moral character and fitness to possess a firearm'").  Like the rest of the statute, it has been "repeatedly applied in the firearms licensing context without questioning the requirement's constitutionality."  *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *3; *see Nivar*, 30 Misc. 3d at 808; *see also Kachalsky*, 701 F.3d at 86-87, 101

(upholding the constitutionality of the "proper cause" requirement, and noting that there is "a substantial body of law instructing licensing officials on the application of this standard").[21]

Nor does the discretion provided to firearms licensing officers raise a vagueness issue here.  The exercise of some degree of judgment on the part of law enforcement is expected, and constitutionally unproblematic.  *Grayned*, 408 U.S. at 114; *see Thibodeau v. Portuondo*, 486 F.3d 61, 69 (2d Cir. 2007) (Sotomayor, J.) ("[T]he Constitution does not ban *all* discretion on the part of police officers or prosecutors as '[e]ffective law enforcement often requires the exercise of some degree of police judgment.'").  And, contrary to Plaintiffs' assertions, "the discretion of a pistol licensing officer to deny an application is not unfettered, and the officials involved . . . are bound by standards reviewable in a court of law."  *Nivar*, 30 Misc. 3d at 961 (internal quotation marks omitted); *see, e.g.*, *Aron*, 48 F. Supp. 3d at 370 ("An aggrieved pistol permit applicant has well-established appellate recourse under N.Y. CPLR Article 78."); *see also Kuck*, 822 F. Supp. 2d at 129-35 (noting that "it is impossible for the legislature to conceive in advance each and every circumstance in which a person could pose an unacceptable danger to the public if entrusted with a firearm," so a scheme conferring "circumscribed discretion" on the licensing official is constitutional).

Accordingly, Plaintiffs' vagueness challenge to Penal Law § 400.00 should be dismissed with prejudice.

---

[21] As the Second Circuit recently noted, this sort of "repeated use for decades, without evidence of mischief or misunderstanding . . . suggests that the language is comprehensible."  *NYSRPA*, 2015 U.S. App. LEXIS 18121, at *56.

## CONCLUSION

For the foregoing reasons, the Attorney General respectfully requests that the Court grant his motion and dismiss the Complaint in its entirety with prejudice.  Alternatively, the Court should transfer this action to the Northern District of New York and grant such other and further relief as is just and appropriate.

Dated: New York, New York
       November 6, 2015

<div style="margin-left:45%">

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
By:
/s/ *William J. Taylor, Jr.*
William J. Taylor, Jr.
Anthony J. Tomari
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

</div>