UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIBERTARIAN PARTY OF ERIE COUNTY,
MICHAEL KUZMA, RICHARD COOPER, GINNY
ROBER, PHILIP M. MAYOR, MICHAEL
REBMANN, EDWARD L. GARRETT, DAVID
MONGIELO, JOHN MURTARI, and WILLIAM A.
CUTHBERT,

       Plaintiffs,

  - against -

ANDREW M. CUOMO, individually and as Governor
of the State of New York; ERIC T. SCHNEIDERMAN,
individually and as Attorney General of the State of
New York; JOSEPH A. D'AMICO, individually and as
Superintendent of the New York State Police;
MATTHEW J. MURPHY, III, individually and as
Niagara County pistol permit licensing officer; DENNIS
M. KEHOE, individually and as Wayne County pistol
permit licensing officer; and M. WILLIAM BOLLER,
individually and as Erie County pistol permit licensing
officer,

       Defendants.

15-cv-00654-FPG

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
JONATHAN CONLEY
Assistant Attorneys General
 *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 4

A.  New York's Longstanding History of Firearms Licensing and Regulation ...................... 4
B.  New York's Current Firearms Licensing Law .................................................................. 5
C.  The Present Action ............................................................................................................ 6

ARGUMENT ..................................................................................................................... 9

I. ARTICLE III BARS THE BULK OF PLAINTIFFS' CLAIMS. ................................. 9

A. As the Amended Complaint Sets Forth No Allegations at All
Regarding the Firearms License Statutes of Plaintiffs Kuzma,
Cooper, Rober, Rebmann, and Garrett, Each Plainly Lacks Standing. ............................... 10

B.  The Organizational Plaintiff, Libertarian Party, Does Not Have Standing ....................... 11

C.  Plaintiff Mayor Lacks Standing. ....................................................................................... 12

D.  Plaintiff Mongielo's Claims Fail on Mootness Grounds. .................................................. 13

E.  Cuthbert and Murtari, at a Minimum, Lack Standing to
Assert at Least Some of their Claims Against at Least Some of the Defendants ............. 14

  1. Cuthbert Lacks Standing to Challenge the State's
  At-Home Licensing Requirement ...................................................................................... 14

  2. Murtari's Claims Are Also Restricted Under Article III. ................................................. 15

II.  THE GOVERNOR, THE ATTORNEY GENERAL, AND THE SUPERINTENDENT
ARE NOT PROPER PARTIES TO THIS ACTION -- AND PLAINTIFFS' CLAIMS
AGAINST THEM ARE THUS BARRED BY THE ELEVENTH AMENDMENT ......... 17

III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT. .. 20

A.   Plaintiffs' Second Amendment Challenges to New York's Firearms
Licensing Law Have Already Been Considered and Rejected
by the Second Circuit and Other Federal and State Courts in this Circuit ...................... 20

1.  As Plaintiffs Concede, the Second Circuit's Decision in *Kachalsky* Compels Dismissal of their Second Amendment Challenge to the "Proper Cause" Requirement for the Public Carry of Firearms in New York ..................... 21

2.  New York's Licensing Requirements for Home Firearm Possession Also Have Been Upheld, Without Exception, by Every Federal and State Court to Consider the Issue ................................................. 22

B.  In Any Event, Plaintiffs' Claims Fail as a Matter of Law Under the Second Circuit's "Two-Step Inquiry" for Assessing Second Amendment Challenges ................ 25

1.  The Second Circuit's Framework for Assessing Second Amendment Claims ................. 25

2.  New York's Licensing Requirements for Home Firearm Possession Do Not Substantially Burden the Second Amendment Right ......................... 26

3.  Even if Heightened Scrutiny Applied Here, New York's Licensing Law Would Easily Pass Constitutional Muster ............................................. 28

  a.  At Most, Intermediate Scrutiny Applies. ................................................. 28

  b.  New York's Firearms Licensing Law Satisfies Intermediate Scrutiny. .................... 30

IV.   PENAL LAW § 400.00 IS NOT UNCONSTITUTIONALLY VAGUE. ........................ 32

A.  The Vague-In-All-Applications Standard Applies. ........................................... 33

B.  Penal Law § 400.00 Is Not Unconstitutionally Vague. ...................................... 34

V.   ADDITIONAL GROUNDS FOR DISMISSAL OF PLAINTIFFS' CONSTITUTIONAL CLAIMS ......................................................... 36

A.  Plaintiffs' Claims Against Judge Murphy, Judge Kehoe, and Judge Boller Are Barred Here by Judicial Immunity .................................... 37

B.  Eleventh Amendment Immunity Bars Any Damages Claims Against Defendants in their Official Capacities. ................................... 38

C.  Qualified Immunity Bars Plaintiffs' Damages Claims Against All Defendants in their Individual Capacities .................................. 38

D.  Plaintiffs' § 1983 Claims Against at Least the Governor, the Attorney General, and the Superintendent Fail for Lack of the Requisite Personal Involvement ............... 39

VI.   MURTARI'S ARTICLE 78 CLAIM SHOULD BE DISMISSED ................................... 40

A.  The Court Should Decline to Exercise Jurisdiction over Murtari's
Article 78 Claim................................................................................................. 41

B.  In any Event, Judge Kehoe's Denial of Murtari's Firearms
License Application Easily Survives Article 78 Review................................. 43

CONCLUSION.................................................................................................................. 45

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amador v. Andrews*,
   655 F.3d 89 (2d Cir. 2011)...................................................................................9, 13

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)........................................................................................11

*Aplin v. McCrossen*,
   Nos. 12-CV-6312FPG, 13-CV-6388FPG, 2014 U.S. Dist. LEXIS 119682 (W.D.N.Y.
   Aug. 25, 2014) ...........................................................................................................38

*Aron v. Becker*,
   48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014), *appeal dismissed as in default*, No. 14-
   3843 (2d Cir. Nov. 17, 2014).................................................................... *passim*

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997)......................................................................................................10

*Arriaga v. Mukasey*,
   521 F.3d 219 (2d Cir. 2008)........................................................................................33

*Azim v. Vance*,
   530 F. App'x 44 (2d Cir. 2013) ..............................................................................9, 13

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005), *overruled in part on other grounds by McDonald v. City
   of Chicago*, 561 U.S. 742 (2010) ............................................................................11

*Betancourt v. Bloomberg*,
   448 F.3d 547 (2d Cir. 2006)........................................................................................33

*Bibicheff v. Holder*,
   55 F. Supp. 3d 254, 260 (E.D.N.Y. 2014) .................................................................13

*Blatch ex rel. Clay v. Hernandez*,
   360 F. Supp. 2d 595 (S.D.N.Y. Mar. 30, 2005).........................................................42

*Bliven v. Hunt*,
   579 F.3d 204 (2d Cir. 2009)........................................................................................37

*Camreta v. Greene*,
   563 U.S. 692 (2011)....................................................................................................10

*Cartagena v. City of N.Y.*,
    257 F. Supp. 2d 708 (S.D.N.Y. 2003) .................................................................42

*Carter v. HealthPort Techs., LLC*,
    No. 14-CV-6275-FPG, 2015 U.S. Dist. LEXIS 43058 (W.D.N.Y. Mar. 31, 2015) ...... 9-11, 13

*Carver v. City of New York*,
    621 F.3d 221 (2d Cir. 2010) ..............................................................................10

*Carver v. Nassau County Interim Fin. Auth.*,
    730 F.3d 150 (2d Cir. 2013) ..............................................................................42

*Cea v. Bradley*,
    No. 02-CV-448, 2003 U.S. Dist. LEXIS 28824 (N.D.N.Y. Feb. 12, 2003) ...........................37

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ............................................................................ 12-13, 16

*Clear Wireless L.L.C. v. Bldg. Dep't of Lynbrook*,
    No. 10-CV-5055, 2012 U.S. Dist. LEXIS 32126 (ADS)(ETB)
    (E.D.N.Y. Mar. 8, 2012) ...................................................................................41

*Costello v. City of Burlington*,
    632 F.3d 41 (2d Cir. 2011) ................................................................................39

*Davidson v. Capuano*,
    792 F.2d 275 (2d Cir. 1986) ..............................................................................42

*Delano v. City of Buffalo*,
    45 F. Supp. 3d 297, 309 (W.D.N.Y. 2014), *aff'd*, 626 F. App'x 23 (2d Cir. 2015) ...............42

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ...................................................................... 20, 22-23, 26-27

*E. End Eruv Ass'n v. Town of Southampton*,
    No. 13-CV-4810 (AKT), 2014 U.S. Dist. LEXIS 134746 (E.D.N.Y. Sept. 24, 2014) ......42, 43

*Etuk v. Slattery*,
    936 F.2d 1433 (2d Cir. 1991) ..............................................................................9

*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................................................17

*Giammatteo v. Newton*,
    452 F. App'x 24 (2d Cir. 2011) ...........................................................................10

*Gras v. Stevens*,
    415 F. Supp. 1148 (S.D.N.Y. 1976) .....................................................................18

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................................................33, 36

*Hightower v. City of Boston,*
    693 F.3d 61 (1st Cir. 2012) ......................................................................11, 12

*In re Grand Jury Subpoena John Doe v. United States,*
    150 F.3d 170 (2d Cir. 1988) ...........................................................................28

*Johnson v. N.Y. State Dep't of Corr. Servs.,*
    709 F. Supp. 2d 178 (N.D.N.Y. 2010) ............................................................17

*Justice v. King,*
    No. 08-CV-6417-FPG, 2015 U.S. Dist. LEXIS 39555 (W.D.N.Y. Mar. 27, 2015),
    *aff'd,* 628 F. App'x 58 (2d Cir. 2016) ............................................................40

*Kachalsky v. Cacace,*
    817 F. Supp. 2d 235 (S.D.N.Y. 2011), *aff'd,* 701 F.3d 81 (2d Cir. 2012),
    *cert. denied,* 133 S. Ct. 1806 (2013) .....................................11-12, 14-15

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 1806 (2013) ................. *passim*

*Knife Rights, Inc. v. Vance,*
    802 F.3d 377 (2d Cir. 2015) ...........................................................................12

*Kuck v. Danaher,*
    600 F.3d 159 (2d Cir. 2010) ...........................................................................30

*Kuck v. Danaher,*
    822 F. Supp. 2d 109 (D. Conn. 2011) .................................................. 16, 33-36

*Kwong v. Bloomberg,*
    876 F. Supp. 2d 246 (S.D.N.Y. 2012), *aff'd,* 723 F.3d 160 (2d Cir. 2013), *cert.*
    *denied,* 134 S. Ct. 2696 (2014) .....................................................................19

*Kwong v. Bloomberg,*
    723 F.3d 160 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 2696 (2014) ......................26, 28, 30, 32

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................................9, 12, 16

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012) ...............................................................................9

*Mallard v. Potenza,*
    376 F. App'x 132 (2d Cir. 2010) ....................................................................27

*Maloney v. Cuomo,*
  470 F. Supp. 2d 205 (E.D.N.Y. 2007), *aff'd*, 554 F.3d 56 (2d Cir. 2009), *vacated on other grounds*, 561 U.S. 1040 (2010) ........................................................................... 18-19

*Maloney v. Singas,*
  106 F. Supp. 3d 300 (E.D.N.Y. 2015) ................................................................................19

*Matter of Chomyn v. Boller,*
  137 A.D.3d 1705, 2016 N.Y. App. Div. LEXIS 2194 (4th Dep't 2016)...............................25

*Matter of Delgado v. Kelly,*
  127 A.D.3d 644 (1st Dep't 2015), *leave to appeal denied*, 26 N.Y.3d 905 (2015).....24, 27, 30

*Matter of Galletta v. Crandall,*
  107 A.D.3d 1632 (4th Dep't 2013)................................................................................43, 45

*Matter of Graefe v. Cnty. of Westchester,*
  85 A.D.3d 789 (2d Dep't 2011) ..........................................................................................44

*Matter of Knight v. Bratton,*
  48 Misc. 3d 536 (Sup. Ct. N.Y. Cnty. 2015) .......................................................................24

*Matter of Lawtone-Bowles v. Klein,*
  131 A.D.3d 697 (1st Dep't 2015) ........................................................................................43

*Matter of Ostrowski v. City of New York,*
  55 A.D.3d 471 (1st Dep't 2008) .....................................................................................44-45

*Matter of Pell v. Bd. of Educ.,*
  34 N.Y.2d 222 (1974)..........................................................................................................43

*Matter of Tessler v. City of New York,*
  38 Misc. 3d 215 (Sup. Ct. N.Y. Cnty. 2012) .......................................................................24

*Matter of Velez v. DiBella,*
  77 A.D.3d 670 (2d Dep't 2010) ...........................................................................................44

*Matter of Zedek v. Kelly,*
  37 Misc. 3d 1208(A), 2012 N.Y. Misc. LEXIS 4834 (Sup. Ct. N.Y. Cnty. Jan. 25, 2012) .........................................................................................................................24, 32, 35

*McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.,*
  No. 12-CV-3852 (JFB)(ETB), 2013 U.S. Dist. LEXIS 127614 (E.D.N.Y. July 23, 2013), *adopted by* 2013 U.S. Dist. LEXIS 126874 (E.D.N.Y. Sept. 5, 2013)..................17, 19

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010)......................................................................................................20, 26

*McNamara v. Kaye,*
  360 F. App'x 177 (2d Cir. 2009) ........................................................................42

*Mireles v. Waco,*
  502 U.S. 9 (1991)...............................................................................................37

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985)...........................................................................................39

*Mongielo v. Cuomo,*
  40 Misc. 3d 362 (Sup. Ct. Albany Cnty. 2013) .................................................24

*Montero v. Travis,*
  171 F.3d 757 (2d Cir. 1999) (per curiam).........................................................37

*Moore v. U.S. Dep't of Educ.,*
  457 F. App'x 10 (2d Cir. 2011) .........................................................................24

*Moreno v. N.Y.C. Police Dep't,*
  No. 10 Civ. 6269 (DAB) (RLE), 2011 U.S. Dist. LEXIS 76129 (S.D.N.Y. May 6,
  2011), *adopted by* 2011 U.S. Dist. LEXIS 76131 (S.D.N.Y. July 14, 2011) ............. 22-23, 27

*Morningside Supermarket Corp. v. N.Y. State Dep't of Health,*
  48 F. Supp. 2d 334 (S.D.N.Y. 2006).............................................................41, 43

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
  132 S. Ct. 2566 (2012).......................................................................................21

*Nat'l Fuel Gas Supply Corp. v. Town of Wales,*
  904 F. Supp. 2d 324 (W.D.N.Y. 2012) ...................................................... 3, 41-43

*N.Y. State Citizens' Coal. for Children v. Velez,*
  No. 14-2919-cv, 629 F. App'x 92 (2d Cir. 2015) ..............................................11

*Nitti v. Cnty. of Tioga,*
  3:14-CV-0954 (GTS/DEP), 2015 U.S. Dist. LEXIS 130685 (N.D.N.Y. Sept. 28,
  2015) .......................................................................................................... 41, 42-43

*Nnebe v. Daus,*
  644 F.3d 147 (2d Cir. 2011)...............................................................................11

*NRA v. BATFE,*
  700 F.3d 185 (5th Cir. 2012) .............................................................................29

*NYSRPA v. City of New York,*
  86 F. Supp. 3d 249, 259 (S.D.N.Y. 2015).................................................... 26-27

*NYSRPA v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015)..................................................................25, 28-30, 34-36

*O'Connor v. Scarpino*,
   83 N.Y.2d 919 (1994) ..........................................................................................6

*Osterweil v. Bartlett*,
   819 F. Supp. 2d 72 (N.D.N.Y. 2011), *vacated on other grounds by* 738 F.3d 520 (2d
   Cir. 2013) ............................................................................................................19

*Parker v. District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. Heller v. District of Columbia*, 554
   U.S. 570 (2008)....................................................................................................12

*Pecuch v. Platt*,
   No. 13-CV-6102-FPG, 2015 U.S. Dist. LEXIS 145636 (W.D.N.Y. Oct. 27, 2015)..............39

*People ex rel. Darling v. Warden of City Prison*,
   154 A.D. 413 (1st Dep't 1913) ............................................................................4

*People v. Foster*,
   30 Misc. 3d 596 (Crim. Ct. Kings Cnty. 2010)....................................................24

*People v. Hughes*,
   22 N.Y.3d 44 (2013) ............................................................................................27

*People v. Nivar*,
   30 Misc. 3d 952 (Sup. Ct. Bronx Cnty. 2011) ....................................24, 32, 35, 36

*People v. Perkins*,
   62 A.D.3d 1160 (3d Dep't 2009).....................................................................24, 27

*Plumhoff v. Rickard*,
   134 S. Ct. 2012 (2014)........................................................................................39

*Powell v. Tompkins*,
   926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015), *cert.
   denied*, --- S. Ct. ----, 2016 U.S. LEXIS 2095 (Mar. 21, 2016)................................11

*Reichle v. Howards*,
   132 S. Ct. 2088 (2012)........................................................................................39

*Rosa R. v. Connelly*,
   889 F.2d 435 (2d Cir. 1989)................................................................................39

*Sabin v. Nelson*,
   No. 12-cv-1373, 2014 U.S. Dist. LEXIS 88462 (N.D.N.Y. June 30, 2014).........................18

*Snell v. Suffolk Cnty.*,
    782 F.2d 1094 (2d Cir. 1986)..................................................................................30

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..................................................................................................16

*Thibodeau v. Portuondo*,
    486 F.3d 61 (2d Cir. 2007).....................................................................................36

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015)...................................................................................39

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)...............................................................................................29

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013)..................10, 11, 13, 29, 32

*United States v. Salerno*,
    481 U.S. 739 (1987)...............................................................................................34

*Va. Office for Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011)...............................................................................................17

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002)...............................................................................................17

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)...............................................................................................33

*Vt. Rt. to Life Comm., Inc. v. Sorrell*,
    758 F.3d 118 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 949 (2015)...................33-34

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008).....................................................................................9

*Warden v. Pataki*,
    35 F. Supp. 2d 354 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d
    Cir. 1999)...............................................................................................................18

*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................................................9

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)...............................................................................................29

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...............................................................................................13

*Wik v. Noonan*,
  No. 12-CV-6400-FPG, 2013 U.S. Dist. LEXIS 177085 (W.D.N.Y. Dec. 17, 2013) ............37

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ........................................................................................................38

*Williams v. State*,
  10 A.3d 1167, 1169 (Md. 2011) ....................................................................................11

## CONSTITUTION, STATUTES & RULES

U.S. Const., art. III, § 2 ......................................................................................................9

28 U.S.C. § 1367 .........................................................................................................41-43

42 U.S.C. § 1983 .............................................................................................3, 11, 36-40

N.Y. Const., art. IV, § 3 ...................................................................................................17

Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627 .......................................................4

Act of Apr. 22, 1785, ch. 81, 1785 Laws of N.Y. 152 .......................................................4

1881 Laws of N.Y., ch. 676 ...............................................................................................4

1884 Laws of N.Y., ch. 46, § 8 ..........................................................................................4

1905 Laws of N.Y., ch. 92, § 2 ..........................................................................................4

1911 Laws of N.Y., ch. 195, § 1 ........................................................................................5

1913 Laws of N.Y., ch. 608 ...............................................................................................5

Article 78 of New York Civil Practice Law and Rules ........................................ *passim*

N.Y. Exec. Law § 63 ........................................................................................................17

N.Y. Exec. Law § 223 ......................................................................................................18

N.Y. Penal Law
  § 265.00 .................................................................................................5-7, 23, 37
  §§ 265.01-265.04 ...............................................................................................5, 16
  § 265.20 ..............................................................................................................5, 16
  § 400.00 ............................................................................................................ *passim*
  § 400.01 ...................................................................................................................6

Fed. R. Civ. P.
  12(b)(1) ................................................................................................................1, 13
  12(b)(6) .................................................................................1, 3, 20, 23, 34, 40

### OTHER AUTHORITIES

Cassandra K. Crifasi et al., *Effect of Changes in Permit-to-Purchase Handgun Laws in Connecticut and Missouri on Suicide Rates*, 79 Preventive Medicine 43 (2015) ...................31

Kara E. Rudolph et al., *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides,* 105 Am. J. Pub. Health e49 (2015)........................................................31

Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep Firearms from High-Risk Individuals*, 36 Ann. Rev. Pub. Health 21 (2015)........................30

Daniel Webster et al., *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. Urban Health 293 (2014) (erratum: 91 J. Urban Health 598 (2014)).................................................................................................................................... 30-31

Daniel W. Webster et al., *Preventing the Diversion of Guns to Criminals through Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109 (2013).......................................................................31

Daniel W. Webster et al., *Relationship Between Licensing, Registration, and Other Gun Sales Laws and the Source State of Crime Guns,* 7 Injury Prevention 184 (2001) ........... 31-32

Defendants Andrew M. Cuomo, Governor of the State of New York (the "Governor"); Eric T. Schneiderman, Attorney General of the State of New York (the "Attorney General"); Joseph A. D'Amico, Superintendent of the New York State Police (the "Superintendent"); the Honorable Matthew J. Murphy III, Niagara County Court Judge ("Judge Murphy"); the Honorable Dennis M. Kehoe, Wayne County Judge and Acting New York State Supreme Court Justice ("Judge Kehoe"); and the Honorable M. William Boller, Judge of the New York State Court of Claims and Acting New York State Supreme Court Justice ("Judge Boller") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Complaint, dated December 23, 2015, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, a local Erie County political organization and nine individuals, bring this action to challenge the constitutionality of New York's century-old firearms licensing law under the Second and Fourteenth Amendments.  Plaintiff John Murtari also asserts an Article 78 proceeding before this Court.   Plaintiffs allege that they would like to exercise their rights under the Second Amendment primarily to defend and deter "against the prospect of tyrannical government."  (Amended Complaint (ECF Docket No. 17) ("Am. Cplt.") ¶¶ 34, 104.)  They point to "[e]xamples of tyrannical governments in history" and set forth alleged "signposts of incipient tyrannical government in America," which, they assert, "would trigger the right of the people to alter or abolish their government using the tools provided by the right to bear arms." (*Id.* ¶¶ 35-36, 44.)  And while Plaintiffs concede that "the United States has not engaged in these [alleged tyrannical] practices or the kinds of atrocities associated with [the Soviet Union, Nazi

Germany, or Pol Pot's Cambodia]," they state that "it is reasonable to be concerned about the future." (*Id.* ¶ 37.)

Dismissal of each of Plaintiffs' claims, as against each of the Defendants, is fully warranted here, as a matter of law, on numerous grounds:

*First*, at least the bulk of Plaintiffs' claims are barred on subject-matter jurisdiction grounds, under the standing and mootness doctrines. As discussed below, at most, only two of the Plaintiffs have any plausible basis for standing here, and even those two face substantial jurisdictional restrictions. *See infra* Point I.

*Second*, the Governor, the Attorney General, and the Superintendent, none of whom has any specific connection to the administration or enforcement of New York's firearms licensing law, are not proper parties to this action. Thus, even if the Court were to find that it has jurisdiction over all of Plaintiffs' claims under Article III, the claims for prospective declaratory and injunctive relief, as against these three Defendants, would be barred on Eleventh Amendment grounds. *See infra* Point II.

*Third*, if this Court reaches the merits, Plaintiffs' Second Amendment claims, challenging both New York's at-home and concealed-carry firearms licensing provisions, must be dismissed with prejudice. Every Court to consider Second Amendment challenges to the State's licensing scheme has rejected such claims and found New York's licensing statue, codified at Penal Law § 400.00, to be constitutional. Plaintiffs, in fact, concede (*see* Am. Cplt. ¶¶ 73-74) that the Second Circuit, in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013), has already upheld the State's concealed-carry provision against Second Amendment attack. And, under the applicable framework for assessing

Second Amendment claims, both the at-home and concealed-carry provisions readily pass constitutional muster.  *See infra* Point III.

*Fourth*, Plaintiffs' Fourteenth Amendment challenge, which seems to allege that certain terms in the licensing statute are unconstitutionally vague, must be rejected.  Courts have repeatedly upheld New York's firearms licensing law against vagueness challenges, and the terms at issue have long been constitutionally applied in this State.  *See infra* Point IV.

*Fifth*, all of Plaintiffs' constitutional claims, under both the Second and Fourteenth Amendments, are subject to dismissal, at least in part, on numerous additional grounds. Absolute judicial immunity prohibits any claims for damages against Judge Murphy, Judge Kehoe, and Judge Boller, and the statutory immunity provided by 42 U.S.C. § 1983 itself precludes any claims against them for injunctive relief.  *See infra* Point V(A).  The Eleventh Amendment bars Plaintiffs' damages claims against all Defendants in their official capacities. *See infra* Point V(B).  Qualified immunity bars any damages claims against Defendants in their individual capacities.  *See infra* Point V(C).  And Plaintiffs' failure to allege the requisite personal involvement also compels dismissal of their individual-capacity § 1983 claims against at least the Governor, the Attorney General, and the Superintendent, under Rule 12(b)(6).  *See infra* Point V(D).

*Finally*, Plaintiff John Murtari's attempt to assert, in this federal court action, a claim under Article 78 of New York's Civil Practice Law and Rules, in order to challenge Judge Kehoe's recent denial of his application for a firearms license, is wholly unwarranted.  An Article 78 proceeding is "a novel and special creation of state law," *Nat'l Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp. 2d 324, 336 (W.D.N.Y. 2012) (internal quotation marks and citations omitted), and, as federal courts in New York have essentially universally found,

properly should be brought only in state court.  Given Murtari's lengthy criminal history of

repeated arrests, prosecutions, jail sentences, and violations of court orders, his Article 78

challenge here plainly fails on the merits in any event.  *See infra* Point VI.

Accordingly, as discussed in detail below, the Defendants' motion should be granted, and

the Amended Complaint should be dismissed, in its entirety, with prejudice.

## STATEMENT OF FACTS

The facts and circumstances relevant to this motion are briefly summarized below.

**A.    New York's Longstanding History of Firearms Licensing and Regulation**

As the Second Circuit has recognized, "New York's efforts in regulating the possession

and use of firearms predate the Constitution," *Kachalsky*, 701 F.3d at 84 , and have continued

since.  For example, by 1785, New York had enacted laws regulating when and where firearms

could be used, as well as restricting the storage of gun powder.  *Id.* (citing Act of Apr. 22, 1785,

ch. 81, 1785 Laws of N.Y. 152; Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627).  As early

as 1881, New York prohibited the concealed carrying of "any kind of fire-arms."  *Id.* (quoting

1881 Laws of N.Y., ch. 676, at 412).  By 1884, New York instituted a statewide licensing

requirement for minors carrying weapons in public.  *Id.* (citing 1884 Laws of N.Y., ch. 46, § 8, at

47).  And, in 1905, it expanded its licensing requirements to include all persons carrying

concealable pistols.  *Id.* (citing 1905 Laws of N.Y., ch. 92, § 2, at 129-30).

Then, in 1911, due to a rise in violent crime associated with concealable weapons, New

York enacted the Sullivan Law as a public safety measure.  *See, e.g., People ex rel. Darling v.*

*Warden of City Prison*, 154 A.D. 413, 422-23 (1st Dep't 1913); *see Kachalsky*, 701 F.3d at 84-

85.  The Sullivan Law "made it unlawful for any person to possess, without a license, 'any pistol,

revolver or other firearm of a size which may be concealable upon the person.'" *Kachalsky*, 701 F.3d at 84 (quoting 1911 Laws of N.Y., ch. 195, § 1, at 443).

In 1913, the Sullivan Law was amended to set statewide standards for the issuance of licenses to possess and carry concealable firearms.  *See* 1913 Laws of N.Y., ch. 608, at 1627-30. A license for home possession was to be issued by "any magistrate in this state, upon application therefor, . . . provided such magistrate is satisfied of the good moral character of the applicant, and provided that no other good cause exists for the denial of such application." *Id.*  The statute also authorized a magistrate to issue an unrestricted license for concealed carrying in public "upon proof . . . of good moral character, and that proper cause exists for the issuance [of the license]." *Id.*; *see Kachalsky*, 701 F.3d at 85.

These licensing measures have regulated the possession of handguns and other firearms in New York for more than a century.  *Kachalsky*, 701 F.3d at 84-86; *see* Penal Law §§ 265.01, 265.20(a)(3), 400.00.  Statutory amendments and recodifications over the years have consistently emphasized the importance of the State's licensing regime to crime prevention and public safety, while at the same time it preserves and protects "legitimate interests such as . . . the right of self defense." *Kachalsky*, 701 F.3d at 97 n.22 (quoting Report of the N.Y. State Joint Legislative Comm. on Firearms & Ammunition, Doc. No. 6, at 12 (1965)).

**B.**      **New York's Current Firearms Licensing Law**

Today, New York maintains this general prohibition on the possession of firearms, as defined by statute, without a license.[1]  Penal Law §§ 265.01-265.04, 265.20(a)(3); *see Kachalsky*,

---

[1] A "firearm" is defined under New York law to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; "any weapon made from a shotgun or rifle" with an overall length of less than twenty-six inches; and assault weapons.  Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85.  Rifles and

701 F.3d at 85.  Licenses are currently issued pursuant to Penal Law § 400.00, which "is the exclusive statutory mechanism for the licensing of firearms in New York State." *O'Connor v. Scarpino*, 83 N.Y.2d 919, 920 (1994); *see Kachalsky*, 701 F.3d at 85-86.  Under this provision, "[l]icenses are limited to those over twenty-one years of age, of good moral character, without a history of crime or mental illness, and 'concerning whom no good cause exists for the denial of the license.'"  *Kachalsky*, 701 F.3d at 86 (quoting Penal Law § 400.00(1)).

There are several types of firearms licenses available in New York, including licenses for household possession, *see* Penal Law § 400.00(2)(a), for workplace possession, *see id.* § 400.00(2)(b), and to "have and carry concealed," *see id.* § 400.00(2)(f).  As has been true since 1913, the last type, a public-carry license, may issue only for "proper cause."  *Id.* § 400.00(2)(f); *see Kachalsky*, 701 F.3d at 78-80.

Applications for a license under Penal Law § 400.00 are adjudicated by local licensing officers.  In most of New York, local judges serve as licensing officers.  Penal Law § 265.00(10); *see Kachalsky*, 701 F.3d at 87 & n.6.[2]  An individual may obtain judicial review of a licensing officer's denial of a license application, or any suspension or revocation of a firearms license, by filing a proceeding under Article 78 of New York's Civil Practice Law and Rules ("CPLR").  *See Kachalsky*, 701 F.3d at 87.

## C.   The Present Action

On July 22, 2015, Plaintiffs -- Libertarian Party of Erie County ("Libertarian Party"), an unincorporated entity "whose platform includes support for the right to bear arms," and, at the

---

shotguns are otherwise not subject to New York's licensing provisions.  Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85.

[2] In New York City, Nassau County, and Suffolk County, designated local police officials serve as licensing officers.  Penal Law § 265.00(10).  Pursuant to another statute not relevant here, Penal Law § 400.01, the Superintendent may serve as the licensing officer for retired members of the New York State Police.

time, seven individuals[3] -- commenced this action against only the Governor, the Attorney

General, and the Superintendent, each of whom was sued in his official capacity.  (Cplt. ¶¶ 2-14.)

In the original Complaint, Plaintiffs challenged the constitutionality of New York's firearms

licensing law, codified at Penal Law § 400.00[4], alleging that, on its face and as applied, (i) it

violates their right to keep and bear arms, both at home and in public, under the Second

Amendment (Counts One and Two) and (ii) certain of its terms "are not capable of definition"

and thus unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth

Amendment (Count Three).  (*Id.* ¶¶ 83-87.)  They sought a declaratory judgment that the

licensing law "infringe[s] on the right of the people to keep and bear arms and right to due

process, in violation of the Second and Fourteenth Amendments" (*id.* at 16); preliminary and

permanent injunctive relief "enjoining . . . administration and enforcement" of the law (*id.* at 16-

17); and attorney's fees and costs (*id.* at 17).

On November 6, 2015, the Attorney General moved to dismiss the Complaint, or,

alternatively, to transfer this action to the Northern or Southern District of New York.  (ECF

Docket Nos. 6-8.)  On December 3, 2015, the Governor and the Superintendent, neither of whom

was served until after the Attorney General moved to dismiss, then moved to dismiss and/or

transfer venue as well.  (ECF Docket Nos. 14-15.)

---

[3] These original seven individual Plaintiffs were Michael Kuzma ("Kuzma"), Richard Cooper
("Cooper"), Ginny Rober ("Rober"), Philip M. Mayor ("Mayor"), Michael Rebmann
("Rebmann"), Edward L. Garrett ("Garrett'), and David Mongielo ("Mongielo").  (Complaint
(ECF Docket No. 1) ¶¶ 4-10.)  Kuzma, Mayor, Rebmann, and Garrett are residents of Erie
County.  (Am. Cplt. ¶¶ 5, 8-10.)  Cooper is a resident of Nassau County.  (*Id.* ¶ 6.)  Rober is a
resident of Broome County.  (*Id.* ¶ 7.)  Mongielo is a resident of Niagara County.  (*Id.* ¶ 12.)
Each remains as a named plaintiff in the Amended Complaint, as does Libertarian Party.  (*Id.* ¶¶
3-11.)

[4] Plaintiffs also cited to Penal Law § 265.00 (*see id.* ¶¶ 83-84), which sets forth statutory
definitions used in Articles 265 and 400 of the Penal Law.

In response to these motions, on December 23, 2015, Plaintiffs filed the Amended Complaint.  This now-operative pleading adds two new plaintiffs, John Murtari ("Murtari") and William A. Cuthbert ("Cuthbert") (Am. Cplt. ¶¶ 12-13)[5]; names three firearms licensing officers as new defendants, Judge Murphy, Judge Kehoe, and Judge Boller (*id.* ¶¶ 17, 19, 21)[6]; alleges a new claim under Article 78 of the CPLR, brought by Murtari to challenge Judge Kehoe's denial of Murtari's application for a firearms license (Count Four) (*id.* ¶¶ 142-44; *see id.* ¶¶ 96-103); purports to sue all Defendants in both their individual and official capacities (*id.* ¶ 27); and now seeks, along with declaratory and injunctive relief and attorney's fees and costs, both compensatory and punitive damages (*id.* ¶¶ 134-36 & at 25-26).

In all other respects, however, the Amended Complaint is essentially identical to the original.  Plaintiffs continue to assert that New York's firearms licensing law, codified at Penal Law § 400.00, violates their Second Amendment rights, both at home and in public.  (*Id.* ¶¶ 137-38.)  They continue to raise an apparent vagueness claim against Penal Law § 400.00 under the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 139-141.)  The vast majority of the allegations in the Amended Complaint are a word-for-word copy of the original.  (*Compare* Cplt. ¶¶ 1-87, *with* Am. Cplt. ¶¶ 1, 3-11, 14-16, 27-77, 104-116, 119, 123, 130-33, 137-41.)  And dismissal of this action, in its entirety, remains fully warranted.

Accordingly, for the reasons set forth below, Defendants now move to dismiss the Amended Complaint with prejudice.

---

[5] Murtari is a resident of Wayne County.  (*Id.* ¶ 12.)  Cuthbert is a resident of Erie County.  (*Id.* ¶ 13.)

[6] Judge Murphy is firearms licensing officer for Niagara County.  (*Id.* ¶ 17.)  Judge Kehoe is firearms licensing officer for Wayne County.  (*Id.* ¶ 21.)  Judge Boller is firearms licensing officer for Erie County.  (*Id.* ¶ 19.)

**ARGUMENT**

**I.**

**ARTICLE III BARS THE BULK OF PLAINTIFFS' CLAIMS.**

Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const., art. III, § 2; *see Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original).  Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  And, for the Court to maintain jurisdiction, it must exist "throughout the course of the proceedings." *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991).

To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Plaintiffs must demonstrate three elements: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff*, 549 F.3d at 106-07 (citing *Lujan*, 504 U.S. at 560-61); *see, e.g.*, *Carter v. HealthPort Techs., LLC*, No. 14-CV-6275-FPG, 2015 U.S. Dist. LEXIS 43058, at *6-7 (W.D.N.Y. Mar. 31, 2015).

"Similarly, the mootness doctrine ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit." *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011); *see, e.g.*, *Azim v. Vance*, 530 F. App'x 44, 46 (2d Cir. 2013).  As the

Supreme Court has put it, "[t]o ensure a case remains fit for federal-court adjudication, the parties must have the necessary [personal] stake not only at the outset of litigation, but throughout its course." *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)) (internal quotation marks omitted).

Plaintiffs have the burden of establishing these essential requirements of Article III for each plaintiff, as against each defendant, for each claim asserted, and for each type of relief sought. *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010). And they must do so "by a preponderance of the evidence." *Carter*, 2015 U.S. Dist. LEXIS 43058, at *7 (quoting *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011)). Nevertheless, in their Amended Complaint, Plaintiffs persist in asserting claims on behalf of Plaintiffs for whom, with extremely limited possible exceptions, standing is entirely lacking. But for, perhaps, the two newly named Plaintiffs (Cuthbert and Murtari), none has come close to meeting the Article III burden here. As discussed below, Kuzma, Cooper, Rober, Rebmann, Garrett, Libertarian Party, and Mayor all lack standing. *See infra* Point I(A)-I(C). Mongielo's claims are plainly precluded on mootness grounds. *See infra* Point I(D). And even Cuthbert and Murtari, at the very least, lack standing to assert some of their claims against some of the Defendants. *See infra* Point I(E).

**A.     As the Amended Complaint Sets Forth No Allegations at All Regarding the Firearms License Statuses of Plaintiffs Kuzma, Cooper, Rober, Rebmann, and Garrett, Each Plainly Lacks Standing.**

In order to have standing to challenge New York's firearms licensing scheme, Plaintiffs, at a minimum, must plausibly allege (and ultimately prove) that they have applied for gun licenses in the State. *See United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (holding that "because Decastro failed to apply for a gun license in New York, he lacks standing to

challenge the licensing laws of the state"), *cert. denied*, 133 S. Ct. 838 (2013); *see also Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 248 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81.[7]

With respect to five of the named Plaintiffs -- Kuzma, Cooper, Rober, Rebmann, and Garrett -- such required allegations are entirely absent. Indeed, nowhere in the Complaint do these Plaintiffs allege, as they must, *see Decastro*, 682 F.3d at 164, that any of them has ever applied for a firearms license in New York. Accordingly, none of the five has plausibly alleged an injury-in-fact, and so each fails to establish standing in this case. *See id.*; *see also, e.g.*, *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148-49 (2d Cir. 2011); *Carter*, 2015 U.S. Dist. LEXIS 43058, at *14.[8]

**B.**    **The Organizational Plaintiff, Libertarian Party, Does Not Have Standing.**

The organizational plaintiff, Libertarian Party, also plainly lacks standing here. Libertarian Party alleges in the Amended Complaint that it is asserting claims "on behalf of itself and its members." (Am. Cplt. ¶ 3.) But, as the Second Circuit has repeatedly held, in a 42 U.S.C. § 1983 action like this one (*see id.* ¶ 30), an organization may bring suit only "on its own behalf, rather than that of its members." *N.Y. State Citizens' Coal. for Children v. Velez*, No. 14-2919-cv, 629 F. App'x 92, 93 (2d Cir. 2015); *see, e.g.*, *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). And nowhere in the Complaint does Libertarian Party allege any injury to itself, let alone one that would give rise to standing in this case. *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at

---

[7] *See also, e.g.*, *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 384 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015), *cert. denied*, --- S. Ct. ----, 2016 U.S. LEXIS 2095 (Mar. 21, 2016); *Williams v. State*, 10 A.3d 1167, 1169 (Md. 2011).

[8] This result not only comports with binding precedent, but, as the Second Circuit has explained, it is eminently sensible. "[R]equiring litigants to actually apply for a license before challenging a licensing scheme prevents courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Bach v. Pataki*, 408 F.3d 75, 82 (2d Cir. 2005) (internal quotation marks omitted), *overruled in part on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010); *see also Decastro*, 682 F.3d at 164.

251 (holding that an organizational plaintiff's allegations "that it 'promote[s] the exercise of the right to keep and bear arms and engages in 'education, research, publishing and legal action focusing on the [c]onstitutional right to privately own and possess firearms' . . . are plainly insufficient to give rise to standing"); *see also, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015) (noting that when organizational plaintiffs sue on their own behalf, "they must independently satisfy the requirements of Article III standing").

**C.**    **Plaintiff Mayor Lacks Standing.**

Plaintiff Mayor lacks standing here as well.  Mayor alleges that he applied for, was granted, and currently holds an unrestricted New York firearms license.  (Am. Cplt. ¶ 77.) Under these circumstances, where a license has been granted to Mayor and has not been revoked, as the Amended Complaint alleges (*id.*), he has not suffered any "concrete and particularized" harm, *Lujan*, 504 U.S. at 560, and thus has failed to establish the requisite injury-in-fact needed for standing.  *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 248-49 (holding that it was the licensing officers' "denial of the [plaintiffs'] permit applications" that established the injury-in-fact needed to challenge New York's public-carry licensing law); *see also, e.g.*, *Parker v. District of Columbia*, 478 F.3d 370, 375-76 (D.C. Cir. 2007), *aff'd sub nom. Heller v. District of Columbia*, 554 U.S. 570 (2008); *Hightower*, 693 F.3d at 70.

Mayor's assertion that he "remain[s] under constant threat of having [his] license[] revoked based on application of the arbitrary and subjective criteria set forth in the statute" (Am. Cplt. ¶ 77) is precisely the sort of "highly speculative fear" that does not meet the requirements of Article III.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013).  Likewise, Mayor's allegation that he "risk[s] . . . immediate arrest" if he does not "carry [his] permit[] on [him] at all times" (Am. Cplt. ¶ 78) cannot support a pre-enforcement challenge, if that is what he is

attempting, because, as the Supreme Court has made clear, "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in *Clapper*); *see also Decastro*, 682 F.3d at 164.  Mayor cannot meet that strict standard.

## D.     Plaintiff Mongielo's Claims Fail on Mootness Grounds.

Plaintiff Mongielo's claims in this action are also barred by Article III, under the mootness doctrine.  The analysis here is not complicated.  Mongielo alleges that he holds an unrestricted firearms license in New York, but that, in July 2013, following his arrest on criminal charges by the City of Lockport police, his license was suspended by Judge Murphy.  (Am. Cplt. ¶¶ 80-82.)  That suspension, however, is no longer in effect.  On February 18, 2016, after a hearing, Judge Murphy determined that "no good cause exists to continue the suspension," reinstated Mongielo's license, and ordered that all of his previously surrendered firearms be returned.  (Ex. C (Feb. 18, 2016 Reinstatement Order)[9]; *see* Am. Cplt. ¶ 90.)  Thus, because this suspension is over and his unrestricted license has been fully reinstated, Mongielo's claims, challenging the constitutionality of New York's firearms licensing law and seeking to have it enjoined and declared invalid by the Court, are unquestionably moot now.  *See, e.g.*, *Azim*, 530 F. App'x at 46; *Amador*, 655 F.3d at 99-100.  For that reason alone, they should be dismissed, on jurisdictional grounds, under Rule 12(b)(1).[10]

---

[9] Because it is a matter of subject matter jurisdiction, in a resolving a motion to dismiss for mootness (or for lack of standing), the Court is not limited to the allegations in the Amended Complaint but may properly consider evidence outside the pleadings. *Carter*, 2015 U.S. Dist. LEXIS 43058, at *7; *see also, e.g.*, *Bibicheff v. Holder*, 55 F. Supp. 3d 254, 260 (E.D.N.Y. 2014).

[10] Mongielo's "highly speculative," *Clapper*, 133 S. Ct. at 1141, 1148, assertion that, "[a]s an outspoken citizen frequently at odds with the Niagara County political machine and political

**E.    Cuthbert and Murtari, at a Minimum, Lack Standing to Assert
       at Least Some of their Claims Against at Least Some of the Defendants.**

      **1.    Cuthbert Lacks Standing to Challenge
       the State's At-Home Licensing Requirement.**

Like Mayor and Mongielo, Plaintiff Cuthbert also alleges that he applied for, was

granted, and currently holds a New York firearms license.  (Am. Cplt. ¶¶ 77, 92-93.)  Unlike

Mayor and Mongielo, his license is not an unrestricted concealed-carry one.  After a full review,

Judge Boller determined that Cuthbert "ha[d] not demonstrated sufficient proper cause to be

granted an unrestricted firearms license as required by section 400.00-2(f) of the New York State

Penal Law." (Ex. D (May 4, 2015 Order).)  But, significantly, Cuthbert's license does allow him

to legally possess a handgun in his home and to carry a handgun outside the home for purposes

of target shooting and hunting.  (*Id.* ¶ 94; Ex. D.)  Thus, with respect to the bulk of the claims

asserted in the Amended Complaint, specifically, those challenging the State's licensing

requirements for at-home firearms possession[11], Cuthbert has no cognizable injury here and

plainly lacks standing under the settled law already discussed.  *See, e.g.*, *Kachalsky*, 817 F. Supp.

2d at 248-49; *supra* Point I(C).

Because Cuthbert was denied a full unrestricted license, he may have standing to

challenge the constitutionality of Penal Law § 400.00(2)(f)'s "proper cause" requirement for the

concealed carry of firearms in New York.  *See Kachalsky*, 817 F. Supp. 2d at 242-44, 248-51

---

class, [he] is at risk of such outrageous and unwarranted permit suspensions in the future" (Am.
Cplt. ¶ 91), of course, are insufficient to change this analysis or avoid dismissal.  *See supra* Point
I(C).

[11] In particular, this would include Plaintiffs' Second Amendment challenge to the State's
licensing requirements for at-home firearms possession (Am. Cplt. ¶ 137); the portions of
Plaintiffs' Second Amendment challenge to the alleged restrictions on public carry that are
duplicative of that at-home challenge (*id.* ¶ 138(b)-(m)); and Plaintiffs' apparent vagueness
challenges to two statutory terms, "good moral character" and "good cause," that apply to all
firearms licenses in New York, including those limited to at-home possession (*id.* ¶ 139(a), (c)).

(finding that individual plaintiffs who had carry licenses restricted to target shooting but were denied full-carry permits had standing to challenge the "proper cause" requirement); *but see infra* Point I(E)(2) (noting the standing restrictions applicable to all Plaintiffs).  As Plaintiffs concede in the Amended Complaint, however, and as discussed below, *see infra* Point III, the Second Circuit has expressly held that the "proper cause" requirement is constitutional. *Kachalsky*, 701 F.3d at 83-84.  Whether or not Cuthbert has standing to challenge New York's concealed-carry licensing provision, then, such a claim is precluded here by binding precedent. And his standing is of little practical effect.

### 2.      Murtari's Claims Are Also Restricted Under Article III.

Murtari is the only one of the Plaintiffs who applied for but was denied any type of New York firearms license, even one for at-home possession.  (Am. Cplt. ¶¶ 96-98; Ex. E (Nov. 24, 2015 Order).)  Defendants do not dispute that Murtari has standing to challenge that license denial through a proceeding under CPLR Article 78 in state court.[12]  Nor do Defendants dispute, at least for purposes of this motion, that the denial of his license application provides Murtari with the requisite injury-in-fact needed to assert each of the constitutional claims alleged in the Amended Complaint (*see* Am. Cplt. ¶¶ 137-41).  *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 248-49.

Nevertheless, Murtari's claims in this action continue to be limited by the other two elements of Article III standing: causation and redressability.  As discussed below, *see infra* Point II, it is licensing officers, not the Attorney General or the Governor or the Superintendent, who specifically administer and enforce New York's firearms licensing law.  And, in particular, under Penal Law § 400.00, it is each New York resident's local licensing officer who determines whether he or she will be granted a firearms license and what, if any, restrictions that license will

---

[12] As demonstrated below, his Article 78 claim fails on jurisdictional grounds, as well as for non-jurisdictional reasons.  *See infra* Point VI.

have.  *See Kachalsky*, 701 F.3d at 87.  For Murtari, that local licensing officer is Judge Kehoe,

who denied his permit application.  (Am. Cplt. ¶¶ 96-97; Ex. E.)  Murtari cannot claim any

injury here that is "fairly traceable" to the actions of any defendant other than Judge Kehoe or

that could be remedied by declaration or injunction against any other defendant.  *See Clapper*,

133 S. Ct. at 1150 & n.5; *Lujan*, 504 U.S. at 560-61.  Thus, even if Murtari has standing to sue in

this case, it is strictly limited to his claims against Judge Kehoe.[13]  He has no standing, and the

Court has no jurisdiction, with respect to any claims Murtari may be attempting to assert against

the other five Defendants.  *See, e.g.*, *Kuck v. Danaher*, 822 F. Supp. 2d 109, 138-39, 150 (D.

Conn. 2011) (dismissing claims against particular defendants on standing grounds where

plaintiff's alleged injury was not "fairly traceable" to any actions of those defendants).  Each

such claim is subject to dismissal, on both causation and redressability grounds, under Article

III.[14]

 In sum, Article III compels dismissal of, at the very least, the vast majority of Plaintiffs'

claims in this action.  Seven of the Plaintiffs (Kuzma, Cooper, Rober, Rebmann, Garrett, Mayor,

and Libertarian Party) lack standing altogether.  Mongielo's claims are moot.  And Cuthbert and

Murtari also face substantial, if not complete, standing bars.

---

[13] Likewise, even if any of the other Plaintiffs could satisfy the requirements of Article III here (which, aside from perhaps Cuthbert and his alleged claims against the "proper cause" requirement, *see supra* Point I(E)(1), they cannot), they, too, would necessarily be limited, on standing grounds, to claims against their own local licensing officers.

[14] In addition, it is unclear in the Amended Complaint whether Plaintiffs are even purporting to challenge those provisions of the Penal Law that make it a criminal offense to possess a handgun or other firearm without a license (§§ 265.01-265.04, 265.20(a)(3)).  While Plaintiffs generally cite to these provisions at three places in the Amended Complaint (*see* Am. Cplt. ¶¶ 55, 59, 126), the causes of action themselves do not reference any of the provisions and Plaintiffs do not appear to ask the Court to strike them down (*id.* ¶¶ 137-41).  Thus, the criminal prohibitions on unlicensed firearm possession, unchallenged, would remain unaltered, even if Plaintiffs were to prevail here.  On this lack of redressability alone, the constitutional claims of all Plaintiffs, including Cuthbert and Murtari, would fail, in their entirety, on standing grounds.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

## II.

### THE GOVERNOR, THE ATTORNEY GENERAL, AND THE SUPERINTENDENT ARE NOT PROPER PARTIES TO THIS ACTION -- AND PLAINTIFFS' CLAIMS AGAINST THEM ARE THUS BARRED BY THE ELEVENTH AMENDMENT.

Plaintiffs also have failed to allege any specific connection of the Governor, the Attorney General, or the Superintendent, to the administration or enforcement of New York's firearms licensing law.  Thus, for that reason, none of these three Defendants is a proper party to this action.

The law on this point is clear.  The *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment sovereign immunity allows for suits against state officers in their official capacities if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (internal quotation marks omitted).  But this exception applies only where the official sued has "some connection with the enforcement of the [allegedly unconstitutional] act." *Ex parte Young*, 209 U.S. at 157; *see also, e.g.*, *McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*, No. 12-CV-3852 (JFB)(ETB), 2013 U.S. Dist. LEXIS 127614, at *15 (E.D.N.Y. July 23, 2013), *adopted by* 2013 U.S. Dist. LEXIS 126874 (E.D.N.Y. Sept. 5, 2013).

Here, to satisfy the *Ex parte Young* exception, Plaintiffs "must plead facts showing that [the Attorney General, the Governor, and the Superintendent each] had a connection with the alleged violation of federal law." *Johnson v. N.Y. State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 183 (N.D.N.Y. 2010).  They have failed to do so.

As an initial matter, Plaintiffs' attempted reliance on the Governor's, the Attorney General's, and the Superintendent's general law-enforcement duties under New York law (*see* Am. Cplt. ¶ 116 (N.Y. Const., art. IV, § 3) (Governor); *id.* ¶ 119 (N.Y. Exec. Law § 63(1))

(Attorney General); *id.* ¶ 123 (N.Y. Exec. Law § 223) (Superintendent)) is unavailing.  Under settled precedent, that is simply not enough to make any of these state officials a proper party here.  *See, e.g.*, *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (noting that "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute"), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999); *Sabin v. Nelson*, No. 12-cv-1373 (GLS/DEP), 2014 U.S. Dist. LEXIS 88462, at *6 (N.D.N.Y. June 30, 2014) (same); *see also, e.g.*, *Gras v. Stevens*, 415 F. Supp. 1148, 1151-52 (S.D.N.Y. 1976) (three-judge court) (Friendly, J.).

Nor do any of Plaintiffs' new allegations in the Amended Complaint regarding the Governor, the Attorney General, and the Superintendent (*see* Am. Cplt. ¶¶ 117-18, 120-22, 124-29) do anything to change this analysis or the proper result of dismissal.  Spurious charges that these Defendants are "committed to violating the plaintiffs' right to bear arms" (*id.* ¶¶ 118, 122, 125) and unsupported, unreasonable fears of arrest and prosecution (*see id.* ¶¶ 117, 120-21, 124, 126-29) cannot turn the Governor, the Attorney General, or the Superintendent into proper parties to a suit challenging the constitutionality of a licensing scheme that is enforced and administered by local licensing officers.  *See, e.g.*, *Maloney v. Cuomo*, 470 F. Supp. 2d 205, 211 (E.D.N.Y. 2007) (holding that the Attorney General and the Governor were not proper defendants to a constitutional challenge to provisions of the Penal Law criminalizing the possession of nunchaku where plaintiff "ha[d] no reasonable fear of prosecution" by the

Attorney General and where the Governor was "not involved in the enforcement of the statutes"), *aff'd*, 554 F.3d 56 (2d Cir. 2009), *vacated on other grounds*, 561 U.S. 1040 (2010).[15]

Indeed, courts in this Circuit to consider the question have expressly held that the Governor and the Attorney General are not proper parties to actions, like this one, challenging New York's firearms licensing scheme as unconstitutional. *See Aron v. Becker*, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor), *appeal dismissed as in default*, No. 14-3843 (2d Cir. Nov. 17, 2014); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 75 (N.D.N.Y. 2011) (Governor and Attorney General), *vacated on other grounds by* 738 F.3d 520 (2d Cir. 2013); *see also Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2012) (noting that the Attorney General was initially sued in this action challenging the constitutionality of aspects of the State's licensing law, but then subsequently dismissed as a defendant), *aff'd*, 723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014).  No court has specifically addressed this issue with respect to the Superintendent.  But, given Plaintiffs' failure to allege that the Superintendent has any "direct connection to, or responsibility for, the alleged illegal action" here, *i.e.*, the denial or revocation of any Plaintiff's firearms license, the correct result could be no different.[16]  *McCluskey*, 2013 U.S. Dist. LEXIS 127614, at *15 (internal quotation marks and citation omitted).  In short, because none is a proper party, Plaintiffs' claims as against each of the Governor, the Attorney General, and the Superintendent are subject to dismissal on Eleventh Amendment grounds.

---

[15] *See Maloney v. Singas*, 106 F. Supp. 3d 300, 303 n.6 (E.D.N.Y. 2015) (reaffirming this ruling post-vacatur).

[16] The case law makes clear, rather, that such suits should be brought, if at all, against the plaintiffs' local licensing officers.  *See Kachalsky*, 701 F.3d at 83-84; *see also supra* Point I(E)(2).

## III.

## PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT.

Plaintiffs assert that New York's firearms licensing law, codified at Penal Law § 400.00, violates their Second Amendment rights, both at home and in public.  (Am. Cplt. ¶¶ 137-38.) These claims, along with being largely, if not entirely, jurisdictionally barred, *see supra* Points I-II, are without merit and should be dismissed as a matter of law under Rule 12(b)(6).

**A.**     **Plaintiffs' Second Amendment Challenges to New York's Firearms Licensing Law Have Already Been Considered and Rejected by the Second Circuit and Other Federal and State Courts in this Circuit.**

This is not the first case to raise a Second Amendment challenge to New York's firearms licensing law.  Since the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Circuit and other courts in this Circuit have considered numerous such challenges.  All have been rejected.

As Plaintiffs acknowledge (*see* Am. Cplt. ¶¶ 73-74), in *Kachalsky v. County of Westchester*, 701 F.3d 81, 83-84, 101 (2d Cir. 2012), the Second Circuit itself rejected a Second Amendment challenge to the licensing law's "proper cause" requirement, contained in the concealed-carry provision, which governs the issuance of licenses to carry a handgun or other firearm, as defined in the law, in public.  And, with respect to the licensing of at-home firearm possession in this State, every federal district court and state court to address the issue has held that Penal Law § 400.00, including its "good moral character" and "good cause" provisions, comports with the Second Amendment.  These decisions fully support -- and, in the case of *Kachalsky*, compel -- dismissal of Plaintiffs' Second Amendment claims in this action with prejudice.

**1.    As Plaintiffs Concede, the Second Circuit's Decision in *Kachalsky*
Compels Dismissal of their Second Amendment Challenge to the
"Proper Cause" Requirement for the Public Carry of Firearms in New York.**

In Count Two of the Amended Complaint, Plaintiffs contend that New York's licensing

restrictions on the public carry of firearms violate their rights under the Second Amendment.

(Am. Cplt. ¶ 138.)  While Plaintiffs appear to attack in this claim essentially all aspects of New

York's public-carry licensing scheme, the "proper cause" requirement contained in the

concealed-carry provision, Penal Law § 400.00(2)(f), is the only relevant distinction between

what is needed for a license to carry a firearm in public and what is needed to obtain a license for

at-home possession.  But, as Plaintiffs concede (*see id.* ¶¶ 73-74), the Second Circuit expressly

held in *Kachalsky* that the "proper cause" requirement is constitutional.  Thus, under this binding

precedent, Plaintiffs' challenge to the "proper cause" requirement in this action, and their

"invitation to strike down New York's one-hundred-year-old law and call into question the

state's traditional authority to extensively regulate handgun possession in public," *Kachalsky*,

701 F.3d at 101, if reached by the Court, must be dismissed with prejudice. [17]

In *Kachalsky*, individual plaintiffs argued that the licensing law's "proper cause"

provision, on its face and as applied to them, violated the Second Amendment.  701 F.3d at 83-

84.  The Second Circuit rejected that argument.  *Id.* at 83-84, 101.  Assuming the Second

Amendment was applicable, the Court applied intermediate scrutiny and held that this statutory

restriction on the public carry of firearms "is substantially related to New York's interests in

public safety and crime prevention" and thus "d[oes] not run afoul of the Second Amendment."

*Id.* at 96-101.  Accordingly, the Second Circuit upheld New York's "proper cause" requirement

as constitutional, both as applied and on its face.  *Id.* at 101.

---

[17] The other licensing requirements Plaintiffs purport to challenge here, as they apply to all
firearms licenses, are discussed more specifically below, in the context of home possession.  As
noted, under settled precedent, they, too, are plainly constitutional.  *See infra* Point III(A)(2)-(B).

Plaintiffs do not dispute this holding of *Kachalsky*. (Am. Cplt. ¶ 74.) They assert, however, that they complain here about the "proper cause" requirement "so as to preserve the issue for reconsideration by the Second Circuit or review by the Supreme Court." (*Id.*) The Attorney General submits that such future appellate challenges would be meritless. But, in any event, given the Second Circuit's controlling decision, the issue is, of course, not subject to reconsideration by this Court. Under *Kachalsky*, Plaintiffs' claim that New York's firearm licensing scheme violates the Second Amendment by requiring an applicant to demonstrate "proper cause" to obtain a license to carry a handgun or other firearm in public must be dismissed with prejudice.[18]

### 2. New York's Licensing Requirements for Home Firearm Possession Also Have Been Upheld, Without Exception, by Every Federal and State Court to Consider the Issue.

The constitutionality under the Second Amendment of New York's licensing requirements for home firearm possession, which Plaintiffs challenge in Count One of the Amended Complaint, also has been repeatedly considered, by both federal district courts and state courts, since *Heller*. The law has been upheld as constitutional on each such occasion.

Two federal district court decisions have expressly ruled that Penal Law § 400.00, as it applies to in-home firearm possession, is constitutionally sound under the Second Amendment. In *Moreno v. New York City Police Department*, No. 10 Civ. 6269 (DAB) (RLE), 2011 U.S. Dist. LEXIS 76129 (S.D.N.Y. May 6, 2011), *adopted by* 2011 U.S. Dist. LEXIS 76131

---

[18] Plaintiffs appear to raise only a facial challenge to the "proper cause" requirement. (Am. Cplt. ¶ 138.) But, regardless, just as in *Kachalsky*, 701 F.3d at 87-88, 101, any as-applied challenge would have to be dismissed with prejudice here as well. Plaintiffs here assert no factual allegations exceeding those asserted by the plaintiffs in *Kachalsky* to demonstrate that the application of the "proper cause" standard was unconstitutional as applied to them. Indeed, they assert less. *See id.* at 87-88. Thus, even if they were pursuing such an as-applied challenge, it would fail.

(S.D.N.Y. July 14, 2011), the district court rejected a plaintiff's Second Amendment challenge to a licensing officer's denial of his application to possess a handgun in his home. *Id.* at *10-14. The court noted that "*Heller* does not constrain the rights of the states to reasonably restrict the possession of handguns through registration and licensing requirements"; it adopted the reasoning of New York state courts, which "have found the regulations in P.L. §§ 265.00 and 400.00 to be constitutional and consistent with *Heller* because they do not 'effect a complete ban on handguns,' but rather, permit persons who meet the statutory requirements to lawfully possess handguns in their home"; and it thus concluded that "so long as [the licensing officer]'s denial of [plaintiff]'s application comports with New York's licensing laws . . . the denial is consistent with *Heller* and does not infringe upon [plaintiff]'s Second Amendment rights." *Id.* at *9-11.

   More recently, in *Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y. 2014), a district court again upheld New York's firearms licensing law against Second Amendment attack. *Id.* at 369-72. Employing the Second Circuit's post-*Heller* framework for assessing Second Circuit claims (which is discussed further below, *see infra* Point III(B)), the court found that because the State's licensing law "burden[s] only the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun," it "do[es] not present a substantial burden on the core protection of self-defense inside hearth and home for law-abiding, responsible citizens." *Id.* at 371. Applying intermediate scrutiny, the court then determined that § 400.00 "substantially relates to the important governmental objective of ensuring that only law-abiding, responsible citizens are allowed to possess a handgun" and thus does not violate the Second Amendment. *Id.* at 371-72. Accordingly, the Second Amendment challenges asserted to the licensing law -- the very same challenges raised by Plaintiffs in this case -- were dismissed with prejudice pursuant to Rule 12(b)(6). *Id.* at 372.

State court decisions on this point are numerous.  And they, too, all go the same way. Just like the federal courts, state courts to consider the question have, without exception, found that New York's firearms licensing scheme, even as applied to the regulation of at-home firearm possession, is wholly valid under the Second Amendment.  In *Matter of Delgado v. Kelly*, 127 A.D.3d 644 (1st Dep't 2015), *leave to appeal denied*, 26 N.Y.3d 905 (2015), for example, the Appellate Division, First Department rejected petitioner's argument "that the licensing eligibility standards in Penal Law § 400.00, *et seq.*, as applied [t]herein, including the requirements of truthful entries on the license application and demonstration of good moral character, impermissibly impinge upon his Second Amendment right to have a firearm in his home."  *Id.* at 644.  As the First Department held, directly contrary to Plaintiffs' contentions here, New York's firearms licensing law was constitutional and advanced "a governmental interest in maintaining public safety."  *Id.*  Countless other state court cases have held likewise.  *See, e.g.*, *People v. Perkins*, 62 A.D.3d 1160, 1161 (3d Dep't 2009); *Mongielo v. Cuomo*, 40 Misc. 3d 362, 363-66 (Sup. Ct. Albany Cnty. 2013);[19] *People v. Nivar*, 30 Misc. 3d 952, 958-62 (Sup. Ct. Bronx Cnty. 2011); *People v. Foster*, 30 Misc. 3d 596, 600 (Crim. Ct. Kings Cnty. 2010).[20]

Given this unwavering authority, the analysis here is a simple and straightforward one. In accordance with this precedent, it is respectfully submitted that this Court should dismiss

---

[19] It appears that the lead plaintiff in this state court action may be the same David Mongielo who is named as one of the Plaintiffs in this case.  If that is true, Mongielo's claims here also would be barred as a matter of law on claim and issue preclusion grounds.  *See, e.g.*, *Moore v. U.S. Dep't of Educ.*, 457 F. App'x 10, 12-13 (2d Cir. 2011).

[20] *See also, e.g.*, *Matter of Knight v. Bratton*, 48 Misc. 3d 536, 540 (Sup. Ct. N.Y. Cnty. 2015); *Matter of Tessler v. City of New York*, 38 Misc. 3d 215, 230-231 (Sup. Ct. N.Y. Cnty. 2012); *Matter of Zedek v. Kelly*, 37 Misc. 3d 1208(A), 2012 N.Y. Misc. LEXIS 4834, at *3-6 (Sup. Ct. N.Y. Cnty. Jan. 25, 2012).

Plaintiffs' Second Amendment claims in this case, as to both public carry and in-home possession, in their entirety and with prejudice.[21]

**B.     In Any Event, Plaintiffs' Claims Fail as a Matter of Law Under the Second Circuit's "Two-Step Inquiry" for Assessing Second Amendment Challenges.**

Defendants, to be clear, are not suggesting that this Court blindly follow non-binding precedent. As noted, *see supra* Point III(A)(1), it is the Second Circuit's binding precedent in *Kachalsky*, 701 F.3d at 83-84, 101, that compels dismissal of Plaintiffs' challenge to the "proper cause" requirement of New York's firearms licensing law, making any further analysis on that point unnecessary. Plaintiffs' claims against the rest of the State's licensing scheme, including the law's application to in-home handgun possession, demonstrably fail under the Second Circuit's governing "two-step inquiry" for assessing Second Amendment challenges, as the federal district court and state court cases just discussed make plain.

**1.     The Second Circuit's Framework for Assessing Second Amendment Claims**

The Second Circuit has established a "two-step inquiry" for deciding Second Amendment challenges to firearms regulations. *NYSRPA v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015). *First*, the court must ask whether the conduct at issue falls within the scope of the Second Amendment right. *Id. Second*, if it does, the court then "must determine and apply the appropriate level of scrutiny." *Id.* Only if the challenged law is found to impose a "substantial burden" on the right to keep and bear arms is "some form of heightened scrutiny" appropriate. *Id.* at 259 (quoting *Kachalsky*, 701 F.3d at 93). And, under those circumstances, the Second Circuit and courts in this Circuit have, without exception, applied intermediate scrutiny -- under which court assess

---

[21] Plaintiffs' counsel, in fact, recently raised the exact Second and Fourteenth Amendment claims made in this case in an Article 78 petition, for another client, in state court. (*Compare* Am. Cplt. ¶¶ 32-33, 47-50, 55-75, 130-41, *with* Ex. F ¶¶ 45-77, 88-95.) These claims were wholly rejected by the Fourth Department. *Matter of Chomyn v. Boller*, 137 A.D.3d 1705, 1706-07, 2016 N.Y. App. Div. LEXIS 2194, at *2-3 (4th Dep't 2016).

whether a law is substantially related to an important government objective -- in assessing the

constitutionality of the challenged measure.  *See, e.g.*, *id.* at 260-61; *Kwong*, 723 F.3d at 168;

*Kachalsky*, 701 F.3d at 96-97; *NYSRPA v. City of New York*, 86 F. Supp. 3d 249, 259 (S.D.N.Y.

2015); *Aron*, 48 F. Supp. 3d at 371.  Plaintiffs' claims fail as a matter of law under this analysis.

> **2.     New York's Licensing Requirements for Home Firearm**
> **Possession Do Not Substantially Burden the Second Amendment Right.**

Even if the Court were to find that New York's licensing requirements for home firearm

possession implicate the Second Amendment (which Defendants do not concede[22]), Plaintiffs

have set forth no facts in the Amended Complaint demonstrating that this law substantially

burdens their rights.  As noted, *see supra* Point I, only Plaintiff Murtari, an admitted, repeated

law-breaker (*see* Am. Cplt. ¶¶ 98, 100-02), has been denied a firearms license for in-home

possession.  Plaintiffs Mayor, Mongielo, and Cuthbert have such licenses, and the other Plaintiffs

do not even allege they applied for one.  Nor, other than the mere fact of Murtari's license denial,

do Plaintiffs point to any actual, specific burden that the State's licensing requirements has

imposed upon any of them.  Instead, Plaintiffs premise their claims on generalized concerns

about crime and fantastical fears of potentially impending tyranny, and, based upon that, appear

---

[22] In *Kachalsky*, the Second Circuit assumed, but did not decide, that the State's licensing requirements for public carry fell within the scope of the Second Amendment right.  701 F.3d at 89.  But, at the same time, it noted that New York's firearms licensing scheme is "longstanding," *id.* at 90 n.11; *see supra* pp. 4-5, comparable to the sorts of measures the Supreme Court identified in *Heller* and *McDonald* as "presumptively lawful."  And, as courts have recognized, *Heller* itself "presume[s] a licensing scheme."  *NYSRPA v. City of New York*, 86 F. Supp. 3d at 258; *see Heller*, 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.").  It is the State's position that New York's licensing statutes are "longstanding" regulations that fall outside the scope of Second Amendment protection.  Nevertheless, for the purposes of this motion, we will proceed, as the Second Circuit did in *Kachalsky*, assuming for the sake of argument that the challenged licensing provisions are subject to Second Amendment analysis.

to assert that any firearms licensing scheme is necessarily unconstitutional.[23] (*Id.* ¶¶ 32-54, 102-

15.)  But that plainly is not the law.  *See Mallard v. Potenza*, 376 F. App'x 132, 134 (2d Cir.

2010) (noting that *Heller* "did not hold reasonable licensing requirements unconstitutional"); *see*

*also, e.g.*, *NYSRPA v. City of New York*, 86 F. Supp. 3d at 258-59 (citing cases).

As the district court held in *Aron*, even with respect to those who properly apply for a

home firearms license, the New York scheme, as it "burden[s] only the narrow class of persons

who are adjudged to lack the characteristics necessary for the safe possession of a handgun,"

does not substantially burden the Second Amendment.  *Aron*, 48 F. Supp. 3d at 371.  Indeed, as

the New York Court of Appeals has made clear, any burden at all here on the Second

Amendment right is a minimal one, as "a license to possess a handgun in one's home" is not

"difficult to come by."  *People v. Hughes*, 22 N.Y.3d 44, 50 (2013).  By no means, do the

requirements for such a license impose a substantial burden.

---

[23] To the extent that Murtari (the only Plaintiff arguably with standing to do so) may also be attempting to raise a more specific, as-applied challenge to the State's licensing scheme for at-home possession, based upon the denial of his license application, it plainly fails.  Murtari's contention in the Amended Complaint appears to be that, under the Second Amendment, a firearms license may only be denied to one who has been convicted of a felony or who has a disqualifying mental-health condition.  (Am. Cplt. ¶¶ 101-02.)  That is wrong.  As noted, New York's licensing statute imposes significantly more rigorous limitations, which repeatedly have been upheld.  Thus, on that basis alone, any purported as-applied challenge by Murtari here is unquestionably meritless.  In addition, as discussed below, *see infra* Point VI, Murtari has a lengthy criminal history of repeated arrests, prosecutions, jail sentences, and violations of court orders, which he does not contest (*see* Am. Cplt. ¶¶ 98, 100-02), and which provides more than sufficient grounds, under New York's licensing law, for denial of his application.  As the district court in *Moreno* held, "so long as [the licensing officer]'s denial of [an] application comports with New York's licensing laws . . . the denial is consistent with *Heller* and does not infringe upon [the applicant]'s Second Amendment rights."  *Moreno*, 2011 U.S. Dist. LEXIS 76129, at *11; *see, e.g., Perkins*, 62 A.D.3d at 1161; *see also, e.g., Matter of Delgado*, 127 A.D.3d at 644 (rejecting as-applied Second Amendment challenge to licensing law by applicant who was denied a firearms license because he "made an untruthful statement on his application regarding a domestic violence incident").  That is precisely the situation here.  And it, too, demonstrates that any as-applied Second Amendment challenge by Murtari is entirely without basis, and must be dismissed with prejudice.

### 3. Even if Heightened Scrutiny Applied Here, New York's Licensing Law Would Easily Pass Constitutional Muster.

As the federal district court and state court cases discussed above demonstrate, *see supra* Point III(A)(2), even if the Court were to find that New York's firearms licensing requirements for at-home possession substantially burden Plaintiffs' Second Amendment rights, their claims should still be dismissed because intermediate scrutiny, at best, is appropriate, and the challenged law unquestionably withstands such scrutiny.

### a. At Most, Intermediate Scrutiny Applies.

Where a law substantially burdens the Second Amendment right, courts assess how severely the challenged provision burdens that right in order to determine the level of scrutiny applicable. *See NYSRPA*, 804 F.3d at 257-61; *Kwong*, 723 F.3d at 168 & n.15; *Kachalsky*, 701 F.3d at 93-94. As noted, the Second Circuit and district courts in this Circuit have, without exception, applied intermediate scrutiny at this stage of the analysis -- including in assessing, and upholding, the constitutionality under the Second Amendment of New York's firearms licensing law, with respect to both public carry and in-home possession. *See, e.g.*, *Kachalsky*, 701 F.3d at 96; *Aron*, 48 F. Supp. 3d at 371. Thus, intermediate scrutiny is, at most, what the Court should apply here as well.

Under intermediate scrutiny, the Court is to assess whether a law "is substantially related to the achievement of an important governmental interest." *Kachalsky*, 701 F.3d at 96-97. Public safety and crime prevention are compelling governmental interests, *id.* at 97; *see NYSRPA*, 804 F.3d at 261, as is the prevention of suicide, *see In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1988) (per curiam). Accordingly, here, the Court need only assess whether the challenged provisions of New York's licensing law are "substantially related to these interests." *Kachalsky*, 701 F.3d at 97.

Courts give "substantial deference" to legislative efforts to design solutions to address public safety and well-being. *Id.* This is especially true in the area of firearms regulation. *Id.* Indeed, "[i]n the context of firearm regulation, the Second Circuit has made clear that the legislature is 'far better equipped than the judiciary' to make sensitive policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)); *accord NYSRPA*, 804 F.3d at 261.

To survive intermediate scrutiny, the fit between the governmental objective and the challenged regulation need only be substantial, not perfect. *Kachalsky*, 701 F.3d at 97. In particular, as the Second Circuit recently stated, "gun-control legislation 'need not strike at all evils at the same time' to be constitutional." *NYSRPA*, 804 F.3d at 263 (quoting *NRA v. BATFE*, 700 F.3d 185, 211 (5th Cir. 2012)); *see Kachalsky*, 701 F.3d at 98-99.

Given the "general reticence to invalidate the acts of [our] elected leaders," firearms regulations of the sort at issue here should be struck down under the Second Amendment "only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.'" *Kachalsky*, 701 F.3d at 100-01 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (2012)) (internal quotation marks omitted) (alterations in *Kachalsky*). And, where, as here, Plaintiffs bring not only an as-applied, but a facial challenge to the provisions of a statute, that facial challenge can succeed only if Plaintiffs "show that 'no set of circumstances exists under which the [statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep.'" *Decastro*, 682 F.3d at 168 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (alteration in *Decastro*).

b.    **New York's Firearms Licensing Law Satisfies Intermediate Scrutiny.**

The Second Circuit has already held that "proper cause" requirement of New York's

firearms licensing law, which applies to the public carry of handguns, satisfies intermediate

scrutiny.  *Kachalsky*, 701 F.3d at 97.  As every court to consider the issue has concluded, *see*

*supra* Point III(A), the remainder of the law's provisions (which, as noted, apply to both at-home

possession and public carry, *see supra* pp. 5-6) also reasonably fit the State's compelling

interests in public safety and crime prevention -- and thus easily satisfy intermediate scrutiny as

well.  *See, e.g.*, *Aron*, 48 F. Supp. 3d at 372; *Matter of Delgado*, 127 A.D.3d at 644; *see also,*

*e.g.*, *Kwong*, 723 F.3d at 168-69 (noting that New York's firearms licensing scheme "is designed

to promote public safety and prevent gun violence," and that the imposition of a licensing fee, in

order to allow that licensing scheme to function properly, satisfies intermediate scrutiny); *Kuck*

*v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010) (noting that State "clearly has a strong and

compelling interest in ensuring that firearm permits are not issued to those 'lacking the essential

character or temperament necessary to be entrusted with a weapon'" (citation omitted)).

A brief overview of the some of the relevant empirical evidence further demonstrates that

New York's firearms licensing scheme is substantially related to the State's compelling interests

in protecting its populace from gun violence.[24]  Research shows, in fact, that handgun permit and

licensing laws are"[t]he type of firearm policy most consistently associated with curtailing the

diversion of guns to criminals and for which some evidence indicates protective effects against

gun violence."  Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep*

*Firearms from High-Risk Individuals*, 36 Ann. Rev. Pub. Health 21, 34 (2015).  One recent

---

[24] The Court may properly take judicial notice of "studies and data" in assessing Plaintiffs'
Second Amendment claim under intermediate scrutiny.  *Kachalsky*, 701 F.3d at 97-99; *see*
*NYSRPA*, 804 F.3d at 261-64; *see also, e.g.*, *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1105-06 (2d
Cir. 1986) (holding that social science studies can be reviewed by courts as "legislative facts").

study, for example, found that Missouri's repeal of its handgun licensing law, in 2007, was associated with a 14% increase in the state's annual murder rate and an increase of 25% in its rate of firearm homicides.  Daniel Webster et al., *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. Urban Health 293 (2014) (erratum: 91 J. Urban Health 598 (2014)).  Another recent study examined the impact of Connecticut's handgun licensing law and found that it was associated with a 40% reduction in that state's firearm homicide rate.  Kara E. Rudolph et al., *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 Am. J. Pub. Health e49 (2015).  And a third study indicated a marked effect on suicides: Missouri's repeal of its licensing law was associated with a 16% increase in firearm suicide rates, while Connecticut's enactment of its law was associated with a 15% decrease in such rates.  Cassandra K. Crifasi et al., *Effect of Changes in Permit-to-Purchase Handgun Laws in Connecticut and Missouri on Suicide Rates*, 79 Preventive Medicine 43 (2015).

Licensing laws like New York's, which allow licensing officers discretion in issuing permits, have been found to be particularly effective in keeping guns out of the hands of criminals.  *See* Daniel W. Webster et al., *Preventing the Diversion of Guns to Criminals through Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109, 109-22 (2013) (handgun licensing laws that provided officers with discretion in issuing permits were associated with 76% lower per capita rates of exporting guns to criminals); Daniel W. Webster et al., *Relationship Between Licensing, Registration, and Other Gun Sales Laws and the Source State of Crime Guns*, 7 Injury Prevention 184, 188 (2001) (finding that "cities with the lowest proportion of their crime guns originating from in-state dealers," which included New York City, "were in states that also allowed law enforcement

discretion in issuing permits to purchase handguns, had longer waiting periods, and required purchase applicants to be fingerprinted").

Accordingly, for all these reasons, New York's firearms licensing law plainly passes constitutional muster under the Second Amendment.[25]

## IV.

## PENAL LAW § 400.00 IS NOT UNCONSTITUTIONALLY VAGUE.

In Count Three of the Amended Complaint, Plaintiffs raise an apparent vagueness claim against Penal Law § 400.00.  (Am. Cplt. ¶¶ 139-41.)  They assert that the statute's requirements of "good moral character" and "proper cause" for the issuance of a handgun license, or conversely, the absence of "good cause" to deny a license, "are not capable of definition in such a way that puts an applicant, a licensing officer or a reviewing court on notice of the meaning of the terms." (*Id.* ¶¶ 139-40.)  They allege that "the state, its licensing officers and reviewing judges, are given unfettered discretion in denying an application based on their own whimsical notion of what these terms mean." (*Id.* ¶ 141.)  And, as a result, Plaintiffs contend that Penal Law § 400.00 is violative of the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 139-41.)

Plaintiffs' vagueness challenge is entirely without merit.  Like their Second Amendment claims, it has been rejected by every court to consider the issue.  *See Aron*, 48 F. Supp. 3d at 372-74; *Nivar*, 30 Misc. 3d at 959-61; *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *4-6.

---

[25] Within their Second Amendment claims, Plaintiffs also make a variety of assertions regarding such issues as "prior restraint," "overbreadth," alleged delay in the licensing process, and claims related to others persons who are not before the Court (*e.g.*, the "terminally ill or the elderly" or "poor persons").  (Am. Cplt. ¶¶ 137-38.)  To the extent any Plaintiff has standing to raise these matters, they are meritless and otherwise subject to dismissal.  *See, e.g., Kachalsky*, 701 F.3d at 91-92 (declining to apply prior-restraint doctrine in Second Amendment context); *Decastro*, 682 F.3d at 169 (no overbreadth in Second Amendment context); *see also, e.g., Kwong*, 723 F.3d at 166-29; *Nivar*, 30 Misc. 3d at 958-62.

Plaintiffs do not come close to meeting the applicable vague-in-all-applications standard (nor have they identified any facts, as to any Plaintiff, that would support an as-applied vagueness challenge).   Thus, even putting aside the serious jurisdictional defects here (which the Court should not do, *see supra* Points I-II), this claim fails, and should be dismissed with prejudice, as a matter of law.

## A.      The Vague-In-All-Applications Standard Applies Here.

"The Due Process Clause of the Fourteenth Amendment requires that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).   "Regulations need not, however, achieve 'meticulous specificity,' which would come at the cost of 'flexibility and reasonable breadth.'"   *Betancourt*, 448 F.3d at 552 (quoting *Grayned*, 408 U.S. at 110).   Instead, "[t]he degree of vagueness that the Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement -- depends in part of the nature of the enactment."   *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

Where, as here, the challenged law is not a criminal statute, but a licensing scheme, it is subject to "less exacting vagueness scrutiny."   *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir. 2008); *see Kuck v. Danaher*, 822 F. Supp. 2d 109, 133 (D. Conn. 2011) (Connecticut handgun licensing statute).   And, notably, because Plaintiffs' vagueness challenge in this action is strictly of the general, pre-enforcement variety and is "not limited to [any] plaintiff's particular case," to prevail on their claim, Plaintiffs must show that the statute at issue, Penal Law § 400.00, is impermissibly vague (under the standards just described) in all possible applications.   *Vt. Rt. to*

*Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 126-28 (2d Cir. 2014) (internal quotation marks and

citation omitted), *cert. denied*, 135 S. Ct. 949 (2015); *see NYSRPA*, 804 F.3d at 265.[26]

This is an exceedingly heavy burden.  As the Second Circuit recently reaffirmed, to

succeed on such a claim, "the challenger must establish that *no set of circumstances* exists under

which the [legislative enactment] would be valid."  *NYSRPA*, 804 F.3d at 265 (quoting *United*

*States v. Salerno*, 481 U.S. 739, 745 (1987)) (emphasis in *NYSRPA*).  It is thus "the most difficult

challenge to mount successfully."  *Id.*  Plaintiffs plainly cannot successfully mount it in this case.

Indeed, they do not even come close to doing so.

**B.      Penal Law § 400.00 Is Not Unconstitutionally Vague.**

The analysis here is not complicated.  "There are innumerable factual circumstances in

which invocation of [Penal Law § 400.00's "good moral character," "proper cause," or "good

cause"] standard[s] to revoke [or deny] a person's pistol permit on the basis that he poses a

danger to the public, even though he does not fall within one of the express statutory grounds for

revocation [or denial] would be constitutionally valid."  *Kuck*, 822 F. Supp. 2d at 132

(dismissing vagueness challenge to Connecticut's firearms licensing statute under Rule

12(b)(6)).  "For instance, it could not possibly be unconstitutional for the state to revoke a

---

[26] Plaintiffs do not expressly state in the Amended Complaint whether they assert Penal Law §
400.00 to be vague on facial or as-applied grounds.  But nowhere do they set forth any
allegations, "grounded in the facts and context of a particular set of charges," *NYSRPA*, 804 F.3d
at 266, that could possibly support a viable as-applied vagueness claim, as to any Plaintiff.
Under these circumstances, the Second Circuit has made clear, there is simply no basis at all for
an as-applied vagueness challenge, and thus the facial vagueness standard must apply.  *See Vt.
Rt. to Life Comm., Inc.*, 758 F.3d at 126-27 (2d Cir. 2014) ("[Plaintiff] has not presented any
legal arguments or facts specific to an as-applied vagueness challenge.  We will therefore
analyze these claims under the standards governing facial challenges.").  And, in any event, even
if viewed as an as-applied claim, Plaintiffs' vagueness challenge would fail just the same, for all
the reasons set forth herein.  *See, e.g., Aron*, 48 F. Supp. 3d at 373-74 (dismissing as-applied
vagueness challenge to Penal Law § 400.00); *Kuck*, 822 F. Supp. 2d at 133-36 (dismissing as-
applied vagueness challenge to Connecticut's licensing law).

person's pistol permit after he develops incurable dementia, is diagnosed with paranoid schizophrenia and makes threats to harm others, repeatedly shoots himself, or has an alcohol or drug addiction and repeatedly engages in reckless activity with his firearm while intoxicated." *Id.* (noting that these examples are "illustrative" and "are not meant to provide an exhaustive list"). On this basis alone, under the applicable vague-in-all applications standard, Plaintiffs' vagueness challenge necessarily fails as a matter of law.

Moreover, Penal Law § 400.00 has already been determined, by every court to consider the issue, to not be unconstitutionally vague. *Aron*, 48 F. Supp. 3d at 372-74; *Nivar*, 30 Misc. 3d at 959-61; *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *4-6. And, notably, these courts have expressly rejected the very vagueness concerns Plaintiffs assert in the Amended Complaint. With respect to the "good moral character" requirement, for example, the district court in *Aron* held that, as used in Penal Law § 400.00, it "is not some esoteric standard devoid of parameters, but rather is a measure used to assess the suitability of the applicant to gain licensure to possess a potential deadly weapon like a pistol." *Aron*, 48 F. Supp. 3d at 374; *accord Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *2 (noting that "[t]he 'good moral character' standard under Penal Law § 400.00(1) . . . is interpreted as 'moral character and fitness to possess a firearm'"). Like the rest of the statute, it has been "repeatedly applied in the firearms licensing context without questioning the requirement's constitutionality." *Matter of Zedek*, 2012 N.Y. Misc. LEXIS 4834, at *5; *see Nivar*, 30 Misc. 3d at 960; *see also Kachalsky*, 701 F.3d at 86-87, 101 (upholding the constitutionality of the "proper cause" requirement, and noting that there is "a substantial body of law instructing licensing officials on the application of this standard").[27]

---

[27] This sort of "repeated use for decades, without evidence of mischief or misunderstanding . . . suggests that the language is comprehensible." *NYSRPA*, 804 F.3d at 268.

Nor does the discretion provided to firearms licensing officers raise a vagueness issue here.  The exercise of some degree of judgment on the part of law enforcement is expected, and constitutionally unproblematic.  *Grayned*, 408 U.S. at 114; *see Thibodeau v. Portuondo*, 486 F.3d 61, 69 (2d Cir. 2007) (Sotomayor, J.) ("[T]he Constitution does not ban *all* discretion on the part of police officers or prosecutors as '[e]ffective law enforcement often requires the exercise of some degree of police judgment.'").  And, contrary to Plaintiffs' assertions, "the discretion of a pistol licensing officer to deny an application is not unfettered, and the officials involved . . . are bound by standards reviewable in a court of law."  *Nivar*, 30 Misc. 3d at 961 (internal quotation marks omitted); *see, e.g.*, *Aron*, 48 F. Supp. 3d at 370 ("An aggrieved pistol permit applicant has well-established appellate recourse under N.Y. CPLR Article 78."); *see also Kuck*, 822 F. Supp. 2d at 129-35 (noting that "it is impossible for the legislature to conceive in advance each and every circumstance in which a person could pose an unacceptable danger to the public if entrusted with a firearm," so a scheme conferring "circumscribed discretion" on the licensing official is constitutional).

Accordingly, Plaintiffs' vagueness challenge to Penal Law § 400.00 should be dismissed with prejudice.

## V.

## ADDITIONAL GROUNDS FOR DISMISSAL
## OF PLAINTIFFS' CONSTITUTIONAL CLAIMS

Along with all of the reasons set forth above, *see supra* Points I-IV, Plaintiffs' Second and Fourteenth Amendment claims, brought here pursuant to 42 U.S.C. § 1983, also should be dismissed on the following additional grounds:

**A.      Plaintiffs' Claims Against Judge Murphy, Judge Kehoe,**
**        and Judge Boller Are Barred Here by Judicial Immunity.**

It is firmly established that judges have absolute immunity from suit for money damages for acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009); *see, e.g.*, *Wik v. Noonan*, No. 12-CV-6400-FPG, 2013 U.S. Dist. LEXIS 177085, at *5 (W.D.N.Y. Dec. 17, 2013). That immunity bars Plaintiffs' damages claims against Judge Murphy, Judge Kehoe, and Judge Boller in this action.

The law is clear on this point. When serving in their roles as firearms licensing officers, state judges in New York -- including Judge Murphy, Judge Kehoe, and Judge Boller -- are acting in their judicial capacities and are thus entitled to absolute immunity. *Aron*, 48 F. Supp. 3d at 365 (holding that "insofar as Plaintiff seeks money damages from Judge Becker arising from or related to the pistol permit application matter, all such claims are barred by absolute judicial immunity"); *Cea v. Bradley*, No. 02-CV-448 (FJS/DRH), 2003 U.S. Dist. LEXIS 28824, at *6 (N.D.N.Y. Feb. 12, 2003) (finding that "it is beyond doubt that Judge Bradley was acting in a judicial capacity when suspending/revoking Plaintiff's pistol permit").[28] Accordingly, Plaintiffs' claims for monetary damages against Judges Murphy, Kehoe, and Boller are barred.

Furthermore, to the extent Plaintiffs seek injunctive relief against the Defendant Judges, such relief is statutorily unavailable. The Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983, provides that "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see, e.g.*, *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam). Plaintiffs have not

---

[28] Plaintiffs' contrary assertion in the Amended Complaint that three Defendants are "not acting in a judicial capacity when issuing permits" (Am. Cplt. ¶¶ 18, 20, 22) is just wrong, *see Aron*, 48 F. Supp. 3d at 363-65 (citing Penal Law §§ 400.00 & 265.00(10)); *Cea*, 2003 U.S. Dist. LEXIS 28824, at *6-7, and, as an unsupported legal conclusion, it should not be credited.

alleged that the Judge Murphy, Judge Kehoe, or Judge Boller have violated any declaratory

decree, nor that declaratory relief is unavailable here.  Accordingly, such injunctive relief against

them is also precluded.  *See, e.g.*, *Aron*, 48 F. Supp. 3d at 365.

**B.      Eleventh Amendment Immunity Bars Any Damages
Claims Against Defendants in their Official Capacities.**

Under well-settled authority, to the extent Plaintiffs assert claims for monetary damages

against any of the Defendants in their official capacities, they are barred by the Eleventh

Amendment.  As this Court has noted, "[s]tate officials who are sued in their official capacities

enjoy Eleventh Amendment immunity as the State does."  *Aplin v. McCrossen*, Nos. 12-CV-

6312FPG, 13-CV-6388FPG, 2014 U.S. Dist. LEXIS 119682, at *53 (W.D.N.Y. Aug. 25, 2014).

Each of the Defendants here -- the Governor, the Attorney General, the Superintendent, and

Judges Murphy, Kehoe, and Boller -- is inarguably a state official.  Thus, just as they would be if

expressly brought against the State itself, any damages claims against them in this case are

plainly precluded on Eleventh Amendment grounds, and should be dismissed with prejudice.[29]

*See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Aron*, 48 F. Supp. 3d at 366-67

(dismissing  all § 1983 official-capacity damages claims asserted against the Governor and state

judge serving as firearms licensing officer on Eleventh Amendment grounds).

**C.      Qualified Immunity Bars Plaintiffs' Damages Claims
Against All Defendants in their Individual Capacities.**

Qualified immunity "is an immunity from suit, rather than a mere defense against

liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It "shields government officials from

civil damages liability unless the official violated a statutory or constitutional right that was

---

[29] In addition, such claims would also fail here because, "[a]s a matter of statutory construction, . . . State officials sued in their official capacities are not "persons" subject to suit pursuant to § 1983." *Aplin*, 2014 U.S. Dist. LEXIS 119682, at *52-53 (citing *Will*, 491 U.S. at 71).

clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see, e.g.*, *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015). As the Supreme Court has held, "[t]o be clearly established, a right must be sufficiently clear 'that every "reasonable official would [have understood] that what he is doing violates that right."' *Reichle*, 132 S. Ct. at 2093; *see, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) ("In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." (internal quotation marks omitted)).

Here, for the reasons already discussed, Defendants violated no rights at all of Plaintiffs. And, certainly, given the unwavering precedent upholding New York's firearms licensing scheme against both Second Amendment and vagueness attacks, *see supra* Points III-IV, Plaintiffs have failed to plausibly allege, and cannot, that any purported action by any individual Defendant violated a clearly established right. Accordingly, dismissal is also required, as to all individual-capacity damages claims as against all Defendants, on qualified immunity grounds.

**D.    Plaintiffs' § 1983 Claims Against at Least the Governor, the Attorney General, and the Superintendent Fail for Lack of the Requisite Personal Involvement.**

Plaintiffs' § 1983 claims against at least the Governor, the Attorney General, and the Superintendent also should be dismissed for failure to allege the requisite personal involvement. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 48-49 (2d Cir. 2011); *Pecuch v. Platt*, No. 13-CV-6102-FPG, 2015 U.S. Dist. LEXIS 145636, at *12 (W.D.N.Y. Oct. 27, 2015) ("As a prerequisite to an award of damages under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional violation."). Nowhere in the Amended Complaint do Plaintiffs allege, as they must, facts demonstrating that any of these Defendants was "directly and personally responsible for the alleged purported unlawful conduct." *Rosa R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989); *see, e.g.*, *Costello*, 632 F.3d at 48-49.

Instead, all Plaintiffs allege is that the Governor, the Attorney General, and the

Superintendent have general law-enforcement duties under New York law (Am. Cplt. ¶¶ 116,

119, 123), along with spurious charges that these Defendants are "committed to violating the

plaintiffs' right to bear arms" (*id.* ¶¶ 118, 122, 125) and unsupported, unreasonable assertions

that Plaintiffs fear arrest and prosecution at their hands (*see id.* ¶¶ 117, 120-21, 124, 126-29).

That is not close to sufficient here. *See, e.g.*, *Justice v. King*, No. 08-CV-6417-FPG, 2015 U.S.

Dist. LEXIS 39555, at *62-63 (W.D.N.Y. Mar. 27, 2015) ("In the absence of any factual

allegations supporting [defendant]'s personal involvement in any of the alleged constitutional

deprivations, the § 1983 action against him regarding these claims must be dismissed."), *aff'd*,

628 F. App'x 58 (2d Cir. 2016).  Thus, for this reason as well, Plaintiffs' § 1983 claims against

the Governor, the Attorney General, and the Superintendent should be dismissed under Rule

12(b)(6).

## VI.

### **MURTARI'S ARTICLE 78 CLAIM SHOULD BE DISMISSED.**

On November 24, 2015, Judge Kehoe denied Plaintiff Murtari's application for a New

York firearms license.  (Am. Cplt. ¶¶ 96–97; Ex. E.)  In the Amended Complaint, Murtari

attempts to assert, in this federal court action, a claim pursuant to Article 78 of the CPLR in

order to challenge that denial.  (Am. Cplt. ¶¶ 142–144.)  He asserts that the decision was

"arbitrary and capricious" and "not supported by substantial evidence."  (*Id.*)  And he seeks an

order from this Court directing Judge Kehoe to now issue him a firearms license.  (*Id.* at 26.)

Murtari's Article 78 claim is both misplaced and meritless, and should be dismissed as a

matter of law for two reasons.  *First*, the Court should decline to exercise jurisdiction over the

claim because Article 78 proceedings, a creature of state law, should be brought and adjudicated

in state court.  *Second*, even if the Court were to reach the merits of the claim, Judge Kehoe's

carefully reasoned and well-supported determination clearly withstands any Article 78 review.

**A.**    **The Court Should Decline to Exercise Jurisdiction over Murtari's Article 78 Claim.**

Murtari's assertion of an Article 78 proceeding in this Court is contrary to overwhelming

precedent.  When "confronted with the question of whether to exercise supplemental jurisdiction

over Article 78 claims," New York federal courts have determined, in almost universal fashion,

"that they are without power to do so or have declined to do so."  *Clear Wireless L.L.C. v. Bldg.*

*Dep't of Lynbrook*, No. 10-CV-5055 (ADS)(ETB), 2012 U.S. Dist. LEXIS 32126 at *24–25

(E.D.N.Y. Mar. 8, 2012) (internal quotations and citations omitted); *see, e.g.*, *Nat'l Fuel*, 904 F.

Supp. 2d at 336 ("Thus, acting with or without discretion, district courts in this Circuit refuse to

hear Article 78 claims.")[30]  That same result should follow in this case as well.  Murtari's Article

78 claim should be dismissed, as a matter of law, for lack of subject-matter jurisdiction or

because this Court properly declines to exercise supplemental jurisdiction under 28 U.S.C. §

1367(c)(4).[31]

An Article 78 proceeding is "a novel and special creation of state law" which provides "a

purely state procedural remedy" for adjudicating claims that a body or officer has acted in an

unlawful or arbitrary manner.  *Nat'l Fuel*, 904 F. Supp. 2d at 336 (quoting *Morningside*

*Supermarket Corp. v. N.Y. State Dep't of Health*, 48 F. Supp. 2d 334, 336-37 (S.D.N.Y. 2006))

(internal quotation marks and citations omitted).  Such a proceeding "differs markedly from the

typical civil action brought in federal district court."  *Id.* (internal quotation marks and citations

---

[30] *See also, e.g.*, *Nitti v. Cnty. of Tioga*, 3:14-CV-0954 (GTS/DEP), 2015 U.S. Dist. LEXIS 130685, at *24 (N.D.N.Y. Sept. 28, 2015).

[31] Pursuant to 28 U.S.C. § 1367(c)(4), federal district courts may decline to exercise supplemental jurisdiction over pendent state law where: "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).

omitted).  Rather, it was "designed for the state courts, and [is] best suited to adjudication there."

*E. End Eruv Ass'n v. Town of Southampton*, No. 13-CV-4810 (AKT), 2014 U.S. Dist. LEXIS

134746, at *51 (E.D.N.Y. Sept. 24, 2014) (internal quotation marks and citation omitted).

Indeed, Article 78, by its terms, appears to vest jurisdiction exclusively in the state courts.

CPLR 7804(b) ("A proceeding under this article *shall* be brought in the supreme court."

(emphasis added)).  For that reason, several district courts in this Circuit have concluded that

they lack all jurisdiction to hear such claims.  *See, e.g.*, *Blatch ex rel. Clay v. Hernandez*, 360 F.

Supp. 2d 595, 637 (S.D.N.Y. Mar. 30, 2005); *Cartagena v. City of N.Y.*, 257 F. Supp. 2d 708,

710 (S.D.N.Y. 2003) (Chin, J.); *see also McNamara v. Kaye*, 360 F. App'x 177, 178 (2d Cir.

2009) ("[Plaintiff's] CPLR Article 78 claim fails for lack of subject-matter jurisdiction.").

The Second Circuit has declined to decide "whether Article 78 can, on its own, deprive a

federal court of claims brought under that provision."  *Carver v. Nassau County Interim Fin.*

*Auth.*, 730 F.3d 150, 155 (2d Cir. 2013).   But it has recognized that "Article 78 reflects a state

preference for a state mode of procedure that is designed to facilitate a summary disposition of

the issues presented."  *Id.* at 155 (quoting *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir.

1986)) (internal quotation marks and citations omitted).  And, the Second Circuit has made clear,

this preference can itself provide "compelling reasons" for a court to decline jurisdiction under §

1367(c)(4).  *Id.*; *see, e.g.*, *Delano v. City of Buffalo*, 45 F. Supp. 3d 297, 309 (W.D.N.Y. 2014),

*aff'd*, 626 F. App'x 23 (2d Cir. 2015).

District courts in this Circuit have been even clearer on this point.  Indeed, they have near

universally held that "[t]he very nature of an Article 78 proceeding" constitutes compelling

reasons for declining supplemental jurisdiction under § 1367(c)(4).  *E. End Eruv Ass'n*, 2014

U.S. Dist. LEXIS 134746, at *49 (citing cases); *accord, e.g.*, *Nitti*, 2015 U.S. Dist. LEXIS

130685, at *22-23; *Nat'l Fuel*, 904 F. Supp. 2d at 336.  There is nothing about the Article 78

claim raised here "that would justify deviation from the well-reasoned and essentially unanimous

position of New York district courts on this issue." *Morningside Supermarket Corp.*, 432 F.

Supp. 2d at 347.  Accordingly, even if it does not find that it is deprived of jurisdiction here

entirely, the Court should decline to exercise supplemental jurisdiction over Murtari's Article 78

claim pursuant to § 1367(c)(4).[32]

## B.   In any Event, Judge Kehoe's Denial of Murtari's Firearms License Application Easily Survives Article 78 Review.

In any event, if this Court were to exercise jurisdiction over Murtari's Article 78 claim,

dismissal is warranted because Judge Kehoe's November 24, 2015 determination denying

Murtari's application for a firearms license was neither arbitrary nor capricious, but instead was

well reasoned and fully supported by the record.  *See* CPLR §§ 7803(3)–(4); *Matter of Pell v. Bd.

of Educ.*, 34 N.Y.2d 222, 231 (1974); *Matter of Lawtone-Bowles v. Klein*, 131 A.D.3d 697, 698-

99 (1st Dep't 2015); *Matter of Galletta v. Crandall*, 107 A.D.3d 1632, 1632-33 (4th Dep't 2013).

As his decision demonstrates, Judge Kehoe had good cause for the denial of Murtari's

application, rationally based his determination on the report prepared by the Wayne County

Sheriff's Office, information provided by the Lyons Police Department, conversations he had

with Murtari's references, documents pertaining to Murtari's criminal record, Murtari's

application, and various online publications and websites discussing Murtari's willful

disobedience of the law and prior court orders.  (Am. Cplt. ¶¶ 97-98; Ex. E.)  Judge Kehoe found

that Murtari had been arrested approximately 50 times, and was incarcerated multiple times,

including one incarceration for over six months for failing to pay child support.  (Am. Cplt. ¶ 98;

---

[32] In addition, because all of Plaintiffs' federal claims are subject to dismissal, *see supra* Points I-V, dismissal of Murtari's Article 78 claim is also warranted pursuant to § 1367(c)(3).  *See, e.g.*, *Nitti*, 2015 U.S. Dist. LEXIS 130685, at *22.

Ex. E.)  Moreover, during that incarceration, Murtari refused to feed himself, and was fed by a gastric feeding tube for several months.  (*Id.*)  Murtari also failed to pay child support over a period of several years, violating several Family Court orders, and accumulating arrears in excess of $100,000.  (*Id.*)

Judge Kehoe reasonably determined that the circumstances underlying Murtari's numerous arrests and jail sentences for, among other things, trespassing on federal property and failing to pay child support, "constitute[] 'good cause' for this Court to deny [his] application for a pistol permit."  (*Id.*)  Notably, Judge Kehoe raised the possibility for Murtari to obtain a license in the future, if he remains compliant with lawful court orders and federal and state law.  (*Id.*)

Murtari argues that his extensive criminal record is irrelevant here because he was never convicted of a felony.  (*Id.* ¶¶ 102.)  But Appellate Courts have rejected Article 78 challenges to gun licensing decisions where the licensee had not been convicted of a felony or serious offense or was acquitted of criminal charges or had charges dismissed or received adjournments in contemplation of dismissal.  *See, e.g., Matter of Graefe v. Cnty. of Westchester*, 85 A.D.3d 789, 789 (2d Dep't 2011) (upholding licensing officer's decision to revoke firearms license, "even in the absence of any proof that such license had been automatically revoked as a result of the petitioner's conviction of a felony or serious offense"); *Matter of Velez v. DiBella*, 77 A.D.3d 670, 670-71 (2d Dep't 2010) ("The fact that five of  the petitioner's [six] arrests" for disorderly conduct "resulted in the dismissal of the charges against him or were resolved in his favor, did not preclude the respondent from considering the underlying circumstances surrounding those arrests in denying the application.").[33]  Judge Kehoe's decision here was plainly lawful.

---

[33] *See also, e.g., Matter of Ostrowski v. City of New York*, 55 A.D.3d 471, 471-72 (1st Dep't 2008) (upholding denial of petitioner's license application where his "arrests cast doubt on his character and fitness to possess a firearm, as did the orders of protection issued against him and

In light of Murtari's extensive criminal record and history of failing to comply with both federal and state court orders, Judge Kehoe properly exercised his authority in denying Murtari's application for a firearms license.  Accordingly, Judge Kehoe's determination that there was good cause to deny the application is rationally supported and neither arbitrary nor capricious. *See, e.g.*, *Matter of Galletta*, 107 A.D.3d at 1632-33.  Thus, even were this Court to entertain Murtari's Article 78 claim, it would be subject to dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss the Complaint in its entirety with prejudice.

Dated:  New York, New York
   April 29, 2016

         ERIC T. SCHNEIDERMAN
         Attorney General of the State of New York
         *Attorney for Defendants*

         By:
         */s/ William J. Taylor, Jr.*
         William J. Taylor, Jr.
         Jonathan Conley
         Assistant Attorneys General
         120 Broadway, 24th Floor
         New York, New York 10271
         (212) 416-8426
         william.taylor@ag.ny.gov

---

his violation of such orders," and noting that, although prior charges were adjourned in contemplation of dismissal, "the circumstances surrounding the matters were appropriately considered").