UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTARIAN PARTY OF ERIE COUNTY, MICHAEL KUZMA, RICHARD COOPER, GINNY ROBER, PHILIP M. MAYOR, MICHAEL REBMANN, EDWARD L. GARRETT, DAVID MONGIELO, JOHN MURTARI, and WILLIAM A. CUTHBERT, | 15-cv-00654-FPG |
| Plaintiffs, | |
| - against - | |
| ANDREW M. CUOMO, individually and as Governor of the State of New York; ERIC T. SCHNEIDERMAN, individually and as Attorney General of the State of New York; JOSEPH A. D'AMICO, individually and as Superintendent of the New York State Police; MATTHEW J. MURPHY, III, individually and as Niagara County pistol permit licensing officer; DENNIS M. KEHOE, individually and as Wayne County pistol permit licensing officer; and M. WILLIAM BOLLER, individually and as Erie County pistol permit licensing officer, | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.    ARTICLE III BARS AT LEAST THE BULK OF PLAINTIFFS' CLAIMS. ....... 2

    II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND
         AMENDMENT ..................................................................................................... 4

    III.    PLAINTIFFS' CLAIMS AGAINST JUDGES MURPHY, KEHOE,
         AND BOLLER ARE ALSO BARRED BY JUDICIAL IMMUNITY. .................. 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aron v. Becker*,
   48 F. Supp. 3d 347 (N.D.N.Y. 2014), *appeal dismissed as in default*,
   No. 14-3843 (2d Cir. Nov. 17, 2014).........................................................................5-7, 9-10

*Ass'n of Home Appliance Mfrs. v. City of New York*,
   36 F. Supp. 3d 366 (S.D.N.Y. 2014)............................................................................9

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005), *overruled in part on other grounds by McDonald v. City
   of Chicago*, 561 U.S. 742 (2010) ................................................................................3

*Bliven v. Hunt*,
   579 F.3d 204 (2d Cir. 2009)........................................................................................10

*Cea v. Bradley*,
   No. 02-CV-448 (FJS/DRH), 2003 U.S. Dist. LEXIS 28824 (N.D.N.Y. Feb. 12, 2003).........10

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013).............................................................................................3-4

*Deats v. Monroe Cnty.*,
   No. 10-CV-6473-FPG, 2014 U.S. Dist. LEXIS 166479 (W.D.N.Y. Dec. 1, 2014) .................2

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
   No. 11-CV-5881 (CS), 2012 U.S. Dist. LEXIS 141252 (S.D.N.Y. Sept. 27, 2012) ...............9

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013)................................................................................................3

*In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*,
   No. 15 Civ. 5838 (PAE), 2016 U.S. Dist. LEXIS 24990 (S.D.N.Y. Mar. 1, 2016) .................3

*Kachalsky v. Cacace*,
   817 F. Supp. 2d 235 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81 (2d Cir. 2012), *cert. denied*,
   133 S. Ct. 1806 (2013)................................................................................................2

*Kachalsky v. County of Westchester*,
   701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) .......................................6-9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................................3

*Matter of Chomyn v. Boller*,
    137 A.D.3d 1705 (4th Dep't 2016)............................................................................5

*Mongielo v. Cuomo*,
    40 Misc. 3d 362 (Sup. Ct. Albany Cnty. 2013) ....................................................5-6

*Moore v. U.S. Dep't of Educ.*,
    457 F. App'x 10 (2d Cir. 2011) ...............................................................................6

*Moreau v. Peterson*,
    No. 14-cv-0201 (NSR), 2015 U.S. Dist. LEXIS 91073 (S.D.N.Y. July 13, 2015) ..............2, 4

*Moreno v. N.Y.C. Police Dep't*,
    No. 10 Civ. 6269 (DAB) (RLE), 2011 U.S. Dist. LEXIS 76129 (S.D.N.Y. May 6,
    2011), *adopted by* 2011 U.S. Dist. LEXIS 76131 (S.D.N.Y. July 14, 2011) ..........................5

*NYC C.L.A.S.H., Inc. v. City of New York*,
    315 F. Supp. 2d 461 (S.D.N.Y. 2004).....................................................................8

*NYSRPA v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015),
    *cert. denied*, 2016 U.S. LEXIS 3959 (June 20, 2016) (No. 15-130) ...................7-8

*Ognibene v. Parkes*,
    599 F. Supp. 2d 434 (S.D.N.Y. 2009), *aff'd*, 671 F.3d 174 (2d Cir. 2011) ...........8

*People v. Hughes*,
    22 N.Y.3d 44 (2013) ...............................................................................................7

*Peruta v. Cnty. of San Diego*,
    --- F.3d ----, 2016 U.S. App. LEXIS 10436 (9th Cir. 2016) (en banc)................6, 9

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013) ...................2-3, 6

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................3

*Wik v. Noonan*,
    No. 12-CV-6400-FPG, 2013 U.S. Dist. LEXIS 177085 (W.D.N.Y. Dec. 17, 2013) .............10

*Wrenn v. District of Columbia*,
    No. 15-cv-162 (CKK), 2016 U.S. Dist. LEXIS 28362 (D.D.C. Mar. 7, 2016) ........6

### CONSTITUTIONAL PROVISIONS

U.S. Const, art. III.................................................................................................1-4

U.S. Const, amend. II.........................................................................................1, 4-9

U.S. Const, amend. XI ...................................................................................................... 1-2

U.S. Const, amend. XI ...................................................................................................... 1-2

U.S. Const, amend. XIV .................................................................................................... 1-2

## STATUTES AND RULES

42 U.S.C. § 1983 ........................................................................................................... 9-10

Article 78 of the New York Civil Practice Law and Rules ................................................. 1-2

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 1-4

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 4-9

Fed. R. Civ. P. 25(d) ............................................................................................................1

## OTHER AUTHORITIES

Evan DeFillipis & Devin Hughes, *Shooting Down the Gun Lobby's Favorite
    "Academic": A Lott of Lies*, Armed with Reason,
    http://www.armedwithreason.com/shooting-down-the-gun-lobbys-favorite-academic-
    a-lott-of-lies/ (Dec. 1, 2014) ...................................................................................8

Julia Lurie, *When the Gun Lobby Tries to Justify Firearms Everywhere, It Turns to This
    Guy*, Mother Jones, http://www.motherjones.com/politics/2015/07/john-lott-guns-
    crime-data (July 28, 2015) .......................................................................................8

Konstantinos Karamanakis, *Permit Requirements Could Reduce Gun Deaths*, Governing,
    http://www.governing.com/topics/public-justice-safety/gov-can-permit-to-purchase-
    laws-reduce-gun-violence.html (July 6, 2015) .........................................................8

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Amended Complaint, dated December 23, 2015, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs' claims in this action challenge, under the Second and Fourteenth Amendments, New York's century-old firearms licensing law.  Plaintiff John Murtari also seeks to assert an Article 78 proceeding before this Court, in order to challenge the recent denial of his own application for a firearms license.  All of these claims should be dismissed for the reasons, both jurisdictional and non-jurisdictional, set forth in Defendants' moving papers.

In their opposition, Plaintiffs barely address the numerous grounds for dismissal here. And they largely ignore the governing legal authorities.  Instead, in support of their arguments, Plaintiffs rely primarily on popular cinema, works of fiction, the Bible, and their own policy preferences.  But neither that bizarre approach, nor anything else, can save their claims from dismissal.

Three of Plaintiffs' arguments -- regarding Article III, the Second Amendment, and judicial immunity -- are addressed, and rebutted, below.  The bulk of Plaintiffs' opposition, however, warrants no reply at all.  The points they attempt to make continue to fail for the reasons detailed in the moving brief.  And, given the undeveloped and perfunctory nature of the opposition, Defendants submit that dismissal, as to at least certain of Plaintiffs' arguments and claims, also would be appropriate here on abandonment grounds.[2]

---

[1] As of June 9, 2016, the Superintendent of the New York State Police is George P. Beach II. With respect to Plaintiffs' official-capacity claims only, he should be substituted for Joseph A. D'Amico as a defendant.  Fed. R. Civ. P. 25(d).

[2] Defendants' Eleventh Amendment immunity from any official-capacity damages claims (*see* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint,

Accordingly, and for the reasons set forth in the moving papers, Defendants' motion should be granted, and the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

## I.  ARTICLE III BARS AT LEAST THE BULK OF PLAINTIFFS' CLAIMS.

As demonstrated in Defendants' moving papers, Article III compels dismissal of all or, at the very least, the vast majority of Plaintiffs' claims in this action, on standing and mootness grounds, pursuant to Rule 12(b)(1).  (*See* Defs.' Mem. at 9-16.)  None of the arguments in Plaintiffs' cursory opposition (*see* Pls.' Mem. at 3-5) changes any of that.

*First*, with respect to the standing of Kuzma, Cooper, Rober, Rebmann, and Garrett, the analysis here is a simple and straightforward one.  Because, as they now concede, none has applied for a firearms license, none has standing to challenge the State's firearms licensing scheme.  (Defs.' Mem. at 10-11); *see United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013); *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 248 (S.D.N.Y. 2011), *aff'd*, 701 F.3d 81 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013).  Merely "object[ing]" to the concept of gun licensing or the need to apply for a license, as Plaintiffs do, does not provide any basis for standing, but it is instead precisely the sort of "generalized

---

dated Apr. 29, 2016 (Dkt. No. 26) ("Defs.' Mem.") at 38) is not addressed at all by Plaintiffs. Defendants' arguments for dismissal for failure to name a proper party, vagueness, lack of Defendants' personal involvement, qualified immunity, and the failure of Murtari's Article 78 claim (*see id.* at 17-19, 32-36, 38-45) are referenced in Plaintiffs' submission, but, aside from a single passing reference to a decision supporting Defendants (*see* Plaintiffs' Memorandum of Law, dated June 3, 2016 (Dkt. No. 29) ("Pls.' Mem.") at 13), no cases are cited and Plaintiffs' replies are not developed in any way.  Thus, Plaintiffs' opposition on these points should be considered abandoned and/or waived *See, e.g.*, *Moreau v. Peterson*, No. 14-cv-0201 (NSR), 2015 U.S. Dist. LEXIS 91073, at *9-10 (S.D.N.Y. July 13, 2015); *Deats v. Monroe Cnty.*, No. 10-CV-6473-FPG, 2014 U.S. Dist. LEXIS 166479, at *11 (W.D.N.Y. Dec. 1, 2014).

grievance" that Article III prohibits.  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013); *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992); (*see* Defs.' Mem. at 11 n.8).[3]

*Second*, Mayor alleges that he applied for, was granted, and currently holds an unrestricted New York firearms license.  (Am. Cplt. ¶ 77.)  Under settled law, he thus lacks standing to sue in this case.  (Defs.' Mem. at 12-13.)  Plaintiffs' repetition (*see* Pls.' Mem. at 4) of their allegations that Mayor "remain[s] under constant threat of having [his] license revoked," that he "risk[s] . . . immediate arrest" if he does not "carry [his] permit on [him] at all times," and that the process for adding firearms to an existing license is a "cumbersome" one (Am. Cplt. ¶¶77-79) does not affect this analysis.  As already demonstrated, such "[a]llegations of *possible* future injury" and "highly speculative fear[s]" cannot provide Mayor with standing here. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-48 (2013); (*see* Defs.' Mem. at 12-13).[4]

*Third*, it is undisputed that the suspension of Mongielo's firearms license is over and his unrestricted license has been fully reinstated.  (Ex. C (Feb. 18, 2016 Reinstatement Order); *see* Defs.' Mem. at 13; Pls.' Mem. at 5.)  Under these circumstances, his claims should be dismissed on mootness grounds.  (Defs.' Mem. at 13.)  Mongielo's "highly speculative" assertion, *Clapper*,

---

[3] Nor can these Plaintiffs avoid dismissal on standing grounds under "the 'futility exception' stated by" *Decastro*, 682 F.3d at 164, as they try to do.  (Pls.' Mem. at 3.)  As the Second Circuit has held, this exception applies only where a plaintiff who fails to apply for a firearms license makes a "substantial showing" that he or she is ineligible for a license and that "therefore submitting an application would have been a futile gesture."  *Decastro*, 682 F.3d at 164; *see Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir. 2005), *overruled in part on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010).  That is unquestionably not this case.  None of the Plaintiffs has alleged, let alone made the substantial showing necessary, that he or she is ineligible for a license as a matter of law.

[4] Mayor's attempted reliance (*see* Pls. Mem. at 4) on the purported injuries of other persons, including Mongielo, likewise does nothing to help his cause.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see, e.g.*, *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, No. 15 Civ. 5838 (PAE), 2016 U.S. Dist. LEXIS 24990, at *16 (S.D.N.Y. Mar. 1, 2016).

133 S. Ct. at 1141, 1148, that he "remains under constant threat of future improper suspensions" (Pls.' Mem. at 5) does not change that.  (*See* Defs.' Mem. at 13 n.10.)

*Fourth*, Cuthbert continues to lack standing for the reasons set forth in Defendants' moving brief.  (*See id*. at 14-15.)

*Fifth*, although Plaintiffs now contend that they "are challenging the criminal prohibitions on unlicensed firearm possession" (Pls.' Mem. at 5), they are entirely unclear which of these provisions, many of which go well beyond criminalizing the mere unlicensed possession of firearms, they are actually seeking to have this Court strike down.  Without specification, or any assertion that Plaintiffs are or will be subject to these statutes, the constitutional claims of all Plaintiffs also fail for lack of redressability.  (*See* Defs.' Mem. at 16 n.14.)

*Finally*, Plaintiffs do not address Defendants' arguments that Libertarian Party lacks standing (*see* Defs.' Mem. at 11-12), that any standing Murtari may have in this case is strictly limited to his claims against Judge Kehoe (*see id.* at 15-16), and that, indeed, all Plaintiffs are, at best, necessarily limited on standing grounds to claims against their own licensing officers (*see id.* at 16 n.13).  Thus, with respect to these unchallenged points, Defendants' motion should be granted on abandonment grounds.  *See, e.g.*, *Moreau*, 2015 U.S. Dist. LEXIS 91073, at *9-10.  And, in any event, as with the rest of Plaintiffs' claims, dismissal also remains fully warranted for the reasons set forth in the moving brief.  (*See* Defs.' Mem. at 9-16.)

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECOND AMENDMENT.

Plaintiffs have failed to overcome Defendants' showing that even if the Court reaches the merits here, Plaintiffs' Second Amendment claims, challenging both New York's at-home and concealed-carry firearms licensing provisions, should be dismissed as a matter of law under Rule 12(b)(6).  (*See id.* at 20-32.)  The governing authorities and proper constitutional analysis leave no doubt on this point.  Every court to consider Second Amendment challenges to the State's

licensing scheme has rejected those claims and found New York's licensing law to be constitutional.  (*See id.* at 20-25.)  And, as Defendants have demonstrated, under the Second Circuit's "two-step inquiry" for assessing such challenges, both the at-home and concealed-carry provisions readily pass Second Amendment muster.  (*See id.* at 25-32.)

In their opposition, Plaintiffs barely address any of this, ignoring Defendants' arguments and the relevant case law, including binding Second Circuit precedent setting out the rubric under which their claims must be analyzed.  Instead, Plaintiffs focus their response here on four points: (i) their unavailing attempt to discount and distinguish four of the multitude of cases, many of which are cited in Defendants' moving brief (*see id.* at 20-25), in which courts have held, without exception, that New York's firearms licensing law comports with the Second Amendment (*see* Pls.' Mem. at 6-9); (ii) their assertion, already rejected by the Second Circuit, that New York's licensing scheme infringes on a "fundamental" right and  thus must be subject to strict scrutiny (*see id.* at 9); (iii) their claim that, despite the failure to plausibly allege as much, the State's licensing law substantially burdens their Second Amendment rights (*see id.* at 10-11); and (iv) their meritless effort to have the Court disregard leading empirical studies on the efficacy of firearms licensing laws, which fully support the State's legislative judgment here, based on nothing more than their own policy preferences, the blog posts of a discredited researcher, and a movie quote (*see id.* at 11-12).  None of these contentions has any merit or can save Plaintiffs' Second Amendment claims from dismissal.

*First*, Plaintiffs' attempt to distinguish the decisions in *Moreno v. New York City Police Department*, *Aron v. Becker*, *Matter of Chomyn v. Boller*, and *Mongielo v. Cuomo*, while, at the same time, ignoring many of the other on-point cases cited by Defendants (*see* Pls.' Mem. at 6-9) is unavailing.  Though Plaintiffs devote much of their opposition to this effort, their inapposite

factual distinctions, assertions that a published federal district court opinion is unclear and "convoluted" and that a state court decision did not involve "careful judicial consideration," and repeated insistence, without more, that all four decisions are simply "unpersuasive" (*see id.*) do nothing to help their cause.[5]  In each case, despite what Plaintiffs might wish, the court expressly found that New York's firearms licensing law, the very same law challenged in this case, does not violate the Second Amendment.  (*See* Defs.' Mem. at 22-25.)  For the reasons discussed in the moving brief, these decisions, as well as the many others cited in the moving brief, continue to fully support dismissal here.  (*See id.*)[6]

*Second*, there is no merit at all to Plaintiffs' contention that strict scrutiny must be applied here because the Second Amendment right is fundamental.  (*See* Pls.' Mem. at 9.)  That argument is expressly precluded by binding Circuit precedent.  *Decastro*, 682 F.3d at 166-67.  And, as noted in Defendants' moving brief, the Second Circuit and district courts in this Circuit have, without exception, applied intermediate scrutiny at this third stage of the Second Amendment analysis -- including in assessing, and upholding, the constitutionality of New York's firearms licensing law, which respect to both public carry and home possession.  (Defs.'

---

[5] Plaintiffs' additional assertion that plaintiff Mongielo's claims are somehow not precluded by the state court decision in *Mongielo* because "preclusion is a flexible common law doctrine" (*see* Pls.' Mem. at 8-9) is just flatly wrong.  *See, e.g., Moore v. U.S. Dep't of Educ.*, 457 F. App'x 10, 12 (2d Cir. 2011) (claim and issue preclusion are "rigid rules of limitation").

[6] Plaintiffs, in fact, concede (*see* Am. Cplt. ¶¶ 73-74) that the Second Circuit, in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), has already upheld the State's concealed-carry provision against Second Amendment attack -- and, in their opposition, they now expressly acknowledge that this Court "must dismiss" their challenge to this provision (*see* Pls.' Mem. at 17).  Despite this concession and acknowledgment, however, Plaintiffs also point to two out-of-Circuit cases, from the Ninth Circuit and the D.C. federal district court, that, they assert, are "at odds with" *Kachalsky*.  (*See id.* at 3.)  Neither is good law even in its own circuit.  The Ninth Circuit decision has been overruled en banc.  *Peruta v. Cnty. of San Diego*, --- F.3d ----, 2016 U.S. App. LEXIS 10436 (9th Cir. 2016) (en banc).  And the D.C. district court decision has been stayed by the D.C. Circuit (Ex. M) and is in conflict with a prior decision by a different judge on the same district court, *see Wrenn v. District of Columbia*, No. 15-cv-162 (CKK), 2016 U.S. Dist. LEXIS 28362 (D.D.C. Mar. 7, 2016).  They are certainly of no relevance here.

Mem. at 28); *see, e.g.*, *Kachalsky*, 701 F.3d at 96; *Aron v. Becker*, 48 F. Supp. 3d 347, 371 (N.D.N.Y. 2014).  Most recently, in *NYSRPA v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), *cert. denied*, 2016 U.S. LEXIS 3959 (June 20, 2016) (No. 15-130), the Second Circuit rejected the application of strict scrutiny, and instead applied intermediate scrutiny, to laws that, quite unlike the licensing scheme at issue here, "impose an outright ban" on particular weapons, "including within the home." *Id.* at 257-61.  Thus, if the Court even finds heightened scrutiny appropriate (which it should not), intermediate scrutiny is, at most, what it should apply here as well.  (Defs.' Mem. at 25-29.)[7]

*Third*, Plaintiffs' claim that the State's firearms licensing law substantially burdens their Second Amendment rights (*see* Pls.' Mem. at 10-11) also is without merit.  In support of this assertion, Plaintiffs just repeat in their brief several paragraphs from the Amended Complaint.  But, as Defendants have explained, there is nothing in that pleading demonstrating that this law substantially burdens Plaintiffs' rights.  (Defs.' Mem. at 26-27.)  Instead, what Plaintiffs point to are only generalized concerns, speculative fears, and claims related to other persons who are not before the Court (*e.g.*, the "terminally ill or elderly" or "poor persons") and whose alleged rights, if any, Plaintiffs plainly have no standing to assert.  (*See, e.g.*, Am. Cplt. ¶¶ 68-79, 137-38; Pls.' Mem. at 10.)  None of that constitutes a substantial burden on Plaintiffs.  (Defs.' Mem. at 26-27, 32 n.25); *see People v. Hughes*, 22 N.Y.3d 44, 50 (2013); *Aron*, 48 F. Supp. 3d at 371.

*Finally*, Plaintiffs' argument that the many empirical studies cited by Defendants demonstrating the efficacy of handgun permit and licensing laws (*see* Defs.' Mem. at 30-32; Exs. G-L) are "flawed, incomplete and irrelevant" (*see* Pls.' Mem. at 11-12) is wholly baseless.  Plaintiffs make two primary contentions here: that two of the studies, examining Connecticut's

---

[7] As demonstrated, the licensing law easily withstands such scrutiny.  (*See id.* at 30-32.)

and Missouri's firearms licensing laws, "ha[ve] been criticized for cherry picking data," and that empirical evidence somehow cannot be considered by the Court at all or, at least, cannot be considered on a motion to dismiss.  (*See id.*)  Neither has merit.  The criticism of the Connecticut and Missouri studies is groundless.  It is based on non-peer-reviewed blog posts by a discredited gun researcher[8], whose criticisms of these two studies has itself already been discredited.[9]

And the assertion that empirical evidence may not be considered in assessing the constitutionality of a statute under the Second Amendment, or may not be considered on a motion to dismiss, simply misunderstands the governing law.  Courts, including the Second Circuit, regularly consider the sort of "studies and data" cited here by the State Defendants in deciding whether legislation withstands constitutional scrutiny under the Second Amendment.  *Kachalsky*, 701 F.3d at 99; *see NYSRPA*, 801 F.3d at 261-64; (Defs.' Mem. at 30 n.24).  They do so not in order to assess the wisdom of the challenged legislative enactment as a policy choice (which is not an issue properly the subject of judicial review), but, rather, "only 'to assure that, in formulating its judgments, [the State] has drawn reasonable inferences based on substantial evidence.'"  *Kachalsky*, 701 F.3d at 97; (*see* Defs.' Mem. at 28-32).[10]  Indeed, contrary to

---

[8] *See, e.g.*, Evan DeFillipis & Devin Hughes, *Shooting Down the Gun Lobby's Favorite "Academic": A Lott of Lies*, Armed with Reason, http://www.armedwithreason.com/shooting-down-the-gun-lobbys-favorite-academic-a-lott-of-lies/ (Dec. 1, 2014); Julia Lurie, *When the Gun Lobby Tries to Justify Firearms Everywhere, It Turns to This Guy*, Mother Jones, http://www.motherjones.com/politics/2015/07/john-lott-guns-crime-data (July 28, 2015).

[9] *See, e.g.*, DeFillipis & Hughes, *supra* note 8 ("Lott's dual accusation that Webster's study shows that Missouri's gun law increased crime and that Webster cherry-picked his data is wrong on both counts."); Konstantinos Karamanakis, *Permit Requirements Could Reduce Gun Deaths*, Governing, http://www.governing.com/topics/public-justice-safety/gov-can-permit-to-purchase-laws-reduce-gun-violence.html (July 6, 2015).  Further studies regarding these two states have only enhanced researchers' conclusions about the beneficial impacts of gun licensing.  (*See* Ex. L; Defs.' Mem. at 30-31.)

[10] *See also, e.g.*, *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 488 n.23, 492-94 & n.32 (S.D.N.Y. 2004); *Ognibene v. Parkes*, 599 F. Supp. 2d 434, 447 (S.D.N.Y. 2009), *aff'd*, 671 F.3d 174 (2d Cir. 2011).

Plaintiffs' position, the law is clear that legislative judgments based upon "conflicting evidence" are precisely what courts are required to uphold under intermediate scrutiny -- and, as the Second Circuit has stressed, nowhere is that more true than "[i]n the context of firearm regulation." *Kachalsky*, 701 F.3d at 97, 99; *see also, e.g.*, *Peruta*, 2016 U.S. App. LEXIS 10436, at *62-66 (Graber, J., concurring).

Nor, despite Plaintiffs' protestations, does it matter that this is a motion to dismiss, and not one for summary judgment. The Court may still take judicial notice of the empirical studies cited by the Defendants in conducting its Second Amendment analysis -- and in dismissing Plaintiffs' Second Amendment claims with prejudice. *See, e.g.*, *Ass'n of Home Appliance Mfrs. v. City of New York*, 36 F. Supp. 3d 366, 371 (S.D.N.Y. 2014) (noting that courts may take judicial notice of legislative facts on a motion to dismiss); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881(CS), 2012 U.S. Dist. LEXIS 141252, at *10-11 (S.D.N.Y. Sept. 27, 2012) (noting that that courts may take judicial notice of publicly available documents on a motion to dismiss, including articles in secondary sources); (Defs. Mem. at 30-32 & n.24).

### III.    PLAINTIFFS' CLAIMS AGAINST JUDGES MURPHY, KEHOE, AND BOLLER ARE ALSO BARRED BY JUDICIAL IMMUNITY.

As demonstrated in Defendants' moving brief, absolute judicial immunity prohibits any claims for damages against Judge Murphy, Judge Kehoe, and Judge Boller, and the statutory immunity provided by 42 U.S.C. § 1983 itself precludes any claims against them for injunctive relief. (*See id.* at 37-38.)

Nevertheless, conjuring up fantastical scenarios of ethical violations and rogue dog catchers, Plaintiffs insist that the unwavering authority relied upon by Defendants should not be followed. (*See* Pls.' Mem. at 13-15.) In particular, Plaintiffs contend that *Aron v. Becker*, one of the cases cited in the moving brief, is a "poorly argued" decision that "contradict[s]" governing

Supreme Court precedent and fails to follow the applicable "functional analysis."  (*See* Pls.'

Mem. at 14-15.)  But that is entirely wrong.  The district court in *Aron* expressly recognizes the

"functional approach" to judicial immunity and, applying that approach, holds that the plaintiff's

claims against the defendant judge, in his role as a firearms licensing officer, "are barred by

absolute judicial immunity."  *Aron*, 48 F. Supp. 3d at 363-65.[11]  Taking this same functional

approach, the court in *Cea v. Bradley* ruled the same way.  No. 02-CV-448 (FJS/DRH), 2003

U.S. Dist. LEXIS 28824, at *6 (N.D.N.Y. Feb. 12, 2003).  So too should this Court.[12]

## CONCLUSION

For the foregoing reasons, and those set forth in their moving papers, Defendants

respectfully request that the Court grant their motion and dismiss the Amended Complaint, in its

entirety, along with such other relief as the Court deems just and appropriate.

Dated:  New York, New York
     June 24, 2016

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendants*
By:
/s/ *William J. Taylor, Jr.*
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

---

[11] The *Aron* court likewise holds that injunctive relief against the defendant judge "arising from or related to the pistol permit application" is "statutorily barred" by § 1983.  *Id.* at 365.

[12] Plaintiffs' baseless charges of improper ex parte communications (*see* Pls.' Mem. at 13-14), for which they provide no factual support at all, also do nothing to help their cause.  While Defendants strongly dispute any such spurious claims of ethical or other misconduct, with respect to judicial immunity, they are simply of no moment.  "[T]hat a proceeding is 'informal and ex parte . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009); *see also, e.g.*, *Wik v. Noonan*, No. 12-CV-6400-FPG, 2013 U.S. Dist. LEXIS 177085, at *5 (W.D.N.Y. Dec. 17, 2013).