UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIBERTARIAN PARTY OF ERIE COUNTY, et al.,

                            Plaintiffs,

v.

 

ANDREW M. CUOMO, et al.,

                            Defendants.

Case # 15-CV-654-FPG

DECISION AND ORDER

## INTRODUCTION

On July 22, 2015, Plaintiffs filed a Complaint alleging that New York State's firearms licensing laws are unconstitutional. *See* ECF No. 1. After several Defendants moved to dismiss the Complaint, Plaintiffs filed an Amended Complaint on December 23, 2015. ECF Nos. 6, 14, 17, 18. The Amended Complaint alleges that Defendants violated Plaintiffs' Second and Fourteenth Amendment rights by enforcing New York State's firearms licensing laws. ECF No. 17, ¶¶ 55-57, 137. Specifically, Plaintiffs claim that N.Y. Penal Law §§ 265.00(3), 265.01-265.04, 265.20(a)(3), and 400.00 violate the Second and Fourteenth Amendments on their face and as applied to Plaintiffs. *See id.*

All Plaintiffs[1] bring three claims (the "constitutional claims") against Defendants[2]: (1) NYS's firearms licensing laws on their face and as applied to Plaintiffs violate their Fourteenth and Second Amendment rights to possess firearms in their homes; (2) NYS's firearms licensing

---

[1] The Libertarian Party of Erie County, Michael Kuzma, Richard Cooper, Ginny Rober, Philip M. Mayor, Michael Rebmann, Edward L. Garrett, David Mongielo, John Murtari, and William A. Cuthbert.

[2] Andrew M. Cuomo, Governor of NYS; Eric T. Schneiderman, NYS Attorney General; Joseph D'Amico, Superintendent of the NYS Police; Hon. Matthew J. Murphy, III, Niagara County Court Judge; Hon. Dennis M. Kehoe, Wayne County Court Judge and Acting NYS Supreme Court Justice; and Hon. M. William Boller, Judge of the NYS Court of Claims and Acting NYS Supreme Court Justice.

laws on their face violate Plaintiffs' Fourteenth and Second Amendment rights to possess firearms in public; and (3) the standards of "good moral character," "proper cause," and "good cause" outlined in N.Y. Penal Law § 400.00 are vague and violate the Due Process Clause of the Fourteenth Amendment. *See* ECF No. 17, ¶¶ 137-41. These claims seek relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983. ECF No. 17, ¶ 30. Finally, Plaintiff Murtari wishes to institute an N.Y. C.P.L.R. Article 78 proceeding to determine whether Defendant Judge Kehoe failed to perform a duty enjoined on him by law when he rejected Murtari's application for a firearms license. *See* ECF No. 17, ¶¶ 142-44. Plaintiffs sue all Defendants individually and in their official capacities. ECF No. 17, ¶ 27. Aside from the Article 78 claim, all Plaintiffs seek monetary damages and declaratory and injunctive relief. ECF No. 17, at 20, 25-26.

Currently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim and for Lack of Subject-Matter Jurisdiction. ECF No. 25. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Amended Complaint is DISMISSED.

## BACKGROUND

### 1. NYS's Firearms Licensing Laws

NYS regulates the possession of firearms through a licensing scheme (N.Y. Penal Law § 400.00) and several criminal statutes (N.Y. Penal Law §§ 265.01-265.04, 265.20(a)(3)). *See Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85-86 (2d Cir. 2012). Section 400.00 "is the exclusive statutory mechanism for the licensing of firearms in New York State." *Id.* at 85 (citing *O'Connor v. Scarpino*, 83 N.Y.2d 919, 920 (1994)). Generally, NYS prohibits possession of a firearm[3] without a license. *Id.*

---

[3] "A 'firearm' is defined to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; 'any weapon made from a shotgun or rifle' with an overall length of less than twenty-six inches; and assault weapons." *Kachalsky*, 701 F.3d at 85 (citing N.Y. Penal Law § 265.00(3)). The statute does not regulate the possession of rifles and shotguns. *Id.* After NYS passed the Secure Ammunition

To obtain a firearms license under Section 400.00, applicants must be over 21 years old, have "good moral character," have no history of crime or mental illness, and demonstrate no "good cause" to deny the license. *Id.* at 86 (citing N.Y. Penal Law § 400.00(1)(a)-(d), (g)). An applicant must receive a concealed carry license when they show "proper cause" for it. N.Y. Penal Law § 400.00(2)(f). Individuals may obtain a license for at-home possession and/or concealed carry in public. *See id.* § 400.00(2)(a), (f).

## 2. Allegations in the Amended Complaint[4]

Plaintiffs make a series of general factual allegations for all Plaintiffs followed by specific factual allegations for some of the Plaintiffs. The Amended Complaint contains no factual allegations as to Plaintiffs Libertarian Party of Erie County, Kuzma, Cooper, Rober, Rebmann, or Garrett.

### a. General Allegations

Plaintiffs make two sets of general allegations. First, they allege that the terms "good moral character," "good cause," and "proper cause" in Section 400.00 are undefinable and therefore violate the Second and Fourteenth Amendments. Second, they assert that the licensing process is expensive, time-consuming, and unnecessarily invades an individual's privacy.

### b. Plaintiff Philip M. Mayor

Plaintiff Mayor alleges that, although he is licensed to own a firearm, he remains "under constant threat of having [his] license revoked . . . ." ECF No. 17, ¶ 77.

---

and Firearms Enforcement Act (SAFE Act), the possession of specifically defined, semi-automatic "assault weapons" was banned, with few exceptions. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 249-50 (2d Cir. 2015) ("*NYSRPA*").

[4] The following allegations are taken from Plaintiffs' Amended Complaint (ECF No. 17) and are accepted as true for the purpose of evaluating Defendants' Motion to Dismiss (ECF No. 25). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

### c. Plaintiff David Mongielo

Plaintiff Mongielo alleges that Defendant Judge Murphy suspended his concealed carry license on July 3, 2013, without notice or due process after police officers falsely arrested him. Mongielo was later acquitted of all charges, except a minor cell phone violation. Despite the acquittal, Judge Murphy did not schedule a hearing regarding Mongielo's license until February 18, 2016, over two-and-a-half years after Mongielo's arrest.[5]

### d. Plaintiff William A. Cuthbert

Plaintiff Cuthbert also maintains that he is under constant threat of having his license revoked. Moreover, Cuthbert applied for his license on July 19, 2013, but did not receive it until May 18, 2015. Finally, Cuthbert alleges that Defendant Judge Boller violated his Second Amendment rights when he limited Cuthbert's license to hunting and target shooting.

### e. Plaintiff John Murtari

On November 24, 2015, Defendant Judge Kehoe sent a letter to Plaintiff Murtari explaining his denial of Murtari's firearms license application.[6] Judge Kehoe found "good cause" to deny the application because Murtari was arrested approximately fifty times, had received four jail sentences totaling over four months in jail, and repeatedly refused to make child support payments. ECF No. 17, ¶ 98.

## LEGAL STANDARD

A complaint will survive a motion to dismiss when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-

---

[5] Plaintiffs do not address whether Mongielo's license was reinstated in their Amended Complaint. In their Motion to Dismiss, however, Defendants explain that Judge Murphy reinstated Mongielo's license on February 18, 2016, after Mongielo's hearing. ECF No. 26, at 26; ECF No. 27, Ex. C.

[6] Plaintiffs quote the letter in full in their Amended Complaint. ECF No. 17, ¶ 98. Defendants provide a copy of the letter. ECF No. 27, Ex. E.

56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Id.* In considering the plausibility of a claim, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

## DISCUSSION

After outlining standing and mootness, the Court addresses whether Plaintiff Libertarian Party of Erie County has standing to maintain this action. The Court next considers standing for Plaintiffs Kuzma, Cooper, Rober, Rebmann, and Garrett. Finally, the Court analyzes standing for Plaintiffs Mayor, Mongielo, Cuthbert, and Murtari individually.

**1.      Standing**

Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2; *see Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). Courts require plaintiffs to establish standing to meet the case-or-controversy requirement. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). Standing is "the threshold question in every federal case," *Ross v. Bank of America, N.A.*, 524 F.3d 217, 222 (2d Cir. 2008), and must exist "throughout the course of the proceedings" to maintain jurisdiction, *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991).

To establish standing, the plaintiff must demonstrate three elements:

(1) *injury-in-fact*, which is a "concrete and particularized" harm to a "legally protected interest"; (2) *causation* in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3)

*redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief.

*W.R. Huff*, 549 F.3d at 106-07 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (emphasis in original). The mootness doctrine ensures that the plaintiff's standing "persists throughout the life of a lawsuit." *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011).

The plaintiff must establish standing for each claim asserted and for each type of relief sought, *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010), "by a preponderance of the evidence," *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (summary order) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

A plaintiff lacks standing to challenge NYS's licensing laws if he fails to apply for a firearms license in NYS. *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). There is an exception to this rule: a plaintiff who fails to apply for a firearms license in NYS has standing if he makes a "substantial showing" that his application "would have been futile." *Id.* (citing *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). An unsupported claim of futility, however, is insufficient to excuse a failure to apply. *Jackson–Bey*, 115 F.3d at 1096.

### a. Plaintiff Libertarian Party of Erie County Abandoned Its Claims

Defendants argue that Plaintiff Libertarian Party of Erie County lacks standing to bring this action. ECF No. 26, at 24-25. Plaintiffs did not respond to Defendants' argument. *See* ECF No. 29; ECF No. 30, at 9. The Court finds that Plaintiff Libertarian Party of Erie County thus abandoned its claims and they are hereby DISMISSED. *See Moreau v. Peterson*, No. 7:14-cv-0201 (NSR), 2015 WL 4272024, at *4 (S.D.N.Y. July 13, 2015) (noting that "[P]laintiff's failure to respond to contentions raised in a motion to dismiss . . . constitutes an abandonment of those claims" (citations omitted)).

### b. Plaintiffs Kuzma, Cooper, Rober, Rebmann, and Garrett Lack Standing

Defendants argue that Plaintiffs Kuzma, Cooper, Rober, Rebmann, and Garrett do not have standing because (1) the Amended Complaint does not allege that the named Plaintiffs applied for a NYS firearms license; and (2) the named Plaintiffs made no claim of futility as outlined in *Decastro*. ECF No. 26, at 23-24; ECF No. 30, at 7-8. In response, the named Plaintiffs argue that they object to NYS's firearms licensing laws, and, thus, the futility exception in *Decastro* applies.

The Second Circuit rejected a similar argument in *Decastro*. There, Decastro argued that NYS's firearms licensing laws were constitutionally defective. *Decastro*, 682 F.3d at 164. The Second Circuit held that Decastro lacked standing to challenge the licensing laws because he did not apply for a firearms license. *Id.* When Decastro alleged that any firearms application license would be futile, the Second Circuit weighed his argument and rejected it. *Id.*

The named Plaintiffs suffer the same fate. They may object to the licensing laws, but the named Plaintiffs must apply for a firearms license in NYS to have standing to challenge the laws' constitutionality. *Decastro*, 682 F.3d at 164. Of course, the named Plaintiffs may avoid that requirement by making a substantial showing that their applications would be futile. *Id.* Here, however, they do not allege futility in the Amended Complaint. As noted above, unsupported claims of futility are insufficient to excuse a failure to apply. *Jackson-Bey*, 115 F.3d at 1096. Accordingly, the named Plaintiffs' arguments fail and their claims are DISMISSED.

### c. Plaintiff Philip A. Mayor Lacks Standing

Defendants argue that Plaintiff Mayor also lacks standing because he currently holds an unrestricted NYS firearms license. ECF No. 26, at 25. Mayor argues that he has standing for several reasons: (1) he is under constant threat of having his license revoked and of being arrested if he does not carry his permit at all times; (2) the process to add firearms onto his license is

cumbersome; and (3) he disagrees with the existence of NYS's firearms licensing laws.  ECF No. 29, at 4.

No court has held that an individual who applied for and received a firearms license has standing to challenge the constitutional validity of the licensing laws; indeed, courts have only found standing where the individual applied for a license and was denied.  *See, e.g., District of Columbia v. Heller*, 554 U.S. 570, 575 (2008) (Respondent applied for a handgun registration certificate and was denied); *Decastro*, 682 F.3d at 164; *Kachalsky*, 701 F.3d at 84-84 (all plaintiffs applied for a concealed carry license and were denied).  Moreover, based on the standing precedent discussed above, Mayor cannot have an injury when the licensing laws do not prevent him from owning firearms.

Mayor's remaining arguments are meritless.  The constant threat of revocation and arrest is the "possible future injury" the Supreme Court has found insufficient to establish standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Whitmore v. Arkansas*, 495 U.S. 149, 157-58 (1990).  Those alleged threats take the Court into "the area of speculation and conjecture," which is beyond its jurisdiction.  *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Furthermore, while the process of adding firearms onto Mayor's license may be cumbersome, mere inconvenience does not establish standing.  *Lee v. Va. State Bd. of Elections*, 155 F. Supp. 3d 572, 579 (E.D. Va. 2015).  Finally, as explained in *Decastro*, Mayor does not have standing to challenge NYS's firearms licensing laws merely because he disagrees with them.  *Decastro*, 682 F.3d at 164.  He must have some other injury to establish standing, which he does not. Accordingly, Mayor's claims are DISMISSED.

### d. Plaintiff David Mongielo's Claims Are Moot

Defendants argue that Plaintiff Mongielo also lacks standing because he currently holds an unrestricted NYS firearms license. ECF No. 26, at 25. Defendant Judge Muprhy suspended Mongielo's firearms license on July 3, 2013, but reinstated it on February 18, 2016. ECF No. 26, at 26. Defendants thus challenge Mongielo's standing under the mootness doctrine. Mongielo contends that (1) NYS's firearms licensing laws are constitutionally invalid pursuant to the Supreme Court's decisions in *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742, 748 (2010); and (2) Mongielo is under constant threat of having his license suspended again. ECF No. 29, at 5.

Mongielo's arguments are meritless. First, his conclusion that NYS's firearms licensing laws are unconstitutional under *Heller* and *McDonald* is unfounded. *Heller*, like *McDonald*, makes clear that the Second Amendment right to bear arms is limited and does not grant American citizens "the right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786. Moreover, *Heller* and *McDonald* struck down complete bans of handgun possession at home. *Heller*, 554 U.S. at 635; *McDonald*, 561 U.S. at 791. Those cases did not hold that a state's firearms licensing laws were unconstitutional, which is what Mongielo and his co-Plaintiffs argue here. Finally, the *Heller* court declined to address a possible licensing requirement for handguns in the District of Columbia. *Heller*, 554 U.S. at 631. Thus, holding that NYS's firearms licensing law is unconstitutional under *Heller* and *McDonald* would stretch the conclusions of both decisions well beyond their scope. The Court declines to do so.

Second, Mongielo's argument that he is under constant threat of having his license suspended again is also meritless. As discussed above, Mongielo does not have standing to

challenge NYS's firearms licensing laws when he has an unrestricted NYS firearms license. The very licensing laws that Mongielo seeks to challenge allow him to own firearms. Furthermore, while Mongielo has had his license suspended, the possibility that it will be suspended again is speculative. Mongielo asks this Court to hold NYS's licensing laws invalid because a licensing officer *may*, at an unknown time in the future, decide to suspend Mongielo's firearms license. This alleged threat takes the Court into "the area of speculation and conjecture," which is beyond its jurisdiction. *O'Shea*, 414 U.S. at 497. Accordingly, Mongielo's claims are DISMISSED.

### e. Plaintiff Cuthbert Has Established an Injury as to the Second and Third Claims

Defendants argue that Plaintiff Cuthbert lacks standing to challenge NYS's firearms licensing laws regarding at-home possession because he has a limited NYS firearms license that allows him to possess a firearm at home and carry a firearm outside his home for target shooting and hunting. ECF No. 26, at 27-28. Defendants, however, concede that Cuthbert "may" have standing to challenge the "proper cause" requirement for a concealed carry license. *Id.* Cuthbert contends that he has standing to challenge at-home possession for the same reasons Plaintiffs Kuzma, Cooper, Rober, Rebmann, Garrett, and Mayor have standing. ECF No. 29, at 5. Cuthbert also asserts that he has standing to challenge the "proper cause" requirement. *Id.*

The Court agrees with Defendants, and partially with Cuthbert. Just as Plaintiffs Kuzma, Cooper, Rober, Rebmann, Garrett, and Mayor lack standing to challenge the standards for at-home possession, so too does Cuthbert. Cuthbert cannot challenge a statute that allows him to exercise his right to possess a firearm in his home. *See Decastro*, 682 F.3d at 164. *Decastro* also dictates that Cuthbert does not have standing to challenge NYS's firearms licensing laws regarding at-home possession merely because he disagrees with them. *Id.*

Cuthbert, however, does have standing[7] to challenge the "proper cause" requirement for a concealed carry license because he established an injury: he applied for the license and was denied. *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 248-50 (S.D.N.Y. 2011). Accordingly, only the first claim is DISMISSED as to him.

### f. Plaintiff Murtari Has Established an Injury for All Claims

Defendants concede that Murtari has alleged an injury for all claims in the Amended Complaint. ECF No. 26, at 28-29. The Court agrees.

### g. Plaintiffs Murtari and Cuthbert Have Established Causation as to Defendant Judges Kehoe and Boller, Respectively

Defendants argue that Murtari has not established the causation requirement for standing for any Defendant except Judge Kehoe. ECF No. 26, at 29. Murtari appears to concede the point, since he does not address the argument in his response. *See* ECF No. 30, at 9.

Regardless of whether Murtari concedes, the Court agrees with Defendants. Murtari's injury—the denial of his firearms license application—is "fairly traceable" only to Judge Kehoe. None of the other Defendants caused Murtari's injury. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (noting that "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant" (quotation marks omitted) (alterations in original)); *Kuck v. Danaher*, 822 F.

---

[7] Defendants argue that no Plaintiff, including Cuthbert and Murtari, has standing to bring the constitutional claims because the Amended Complaint does not challenge N.Y. Penal Law provisions that criminalize possession of a firearm without a license. ECF No. 26, at 29 n.14. The Court disagrees. A plaintiff's claims challenging the constitutional validity of any statutes criminalizing possession of a firearm without a license are subsumed into a plaintiff's claims challenging a firearms licensing law where the plaintiff applied for the license and was denied. *Young v. Hawaii*, 911 F. Supp. 2d 972, 987 (D. Haw. 2012) (citing *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom., Heller*, 554 U.S. at 570). The plaintiff also has standing to sue on both grounds. *Id.* Accordingly, here, any Plaintiff who applied for a license and was denied is also challenging N.Y. Penal Law provisions that criminalize possession of a firearm without a license, and those Plaintiffs have standing to challenge those laws.

- 11 -

Supp. 2d 109, 138 (D. Conn. 2011) (finding that plaintiffs did not have standing to challenge a defendant's actions who did not cause plaintiffs' injury).

Defendants do not make the same argument for Cuthbert's claims. The Court, however, may analyze subject-matter jurisdiction *sua sponte*, since it is not waivable. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008). The Court finds that Cuthbert's injury is "fairly traceable" only to Judge Boller because none of the other Defendants were involved with Cuthbert's injury.

### h. Plaintiffs Murtari and Cuthbert Have Established Redressability as to Defendant Judges Kehoe and Boller, Respectively, and Thus Have Standing

Finally, Murtari and Cuthbert have established a "non-speculative likelihood" that their injuries will be remedied by the requested relief. Finding NYS's firearms licensing laws unconstitutional will allow them to possess firearms without restraint. Consequently, Murtari has standing to bring all four claims against Judge Kehoe, while Cuthbert has standing to bring the second and third claims against Judge Boller.

Accordingly, all claims against Defendants Cuomo, Schneiderman, D'Amico, and Judge Murphy are DISMISSED. The Court next analyzes judicial immunity for Judges Kehoe and Boller.

### 2. Defendant Judges Kehoe and Boller Are Entitled to Judicial Immunity from Suit for Money Damages and Injunctive Relief in Their Individual Capacities

"[J]udges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). The immunity is from *suit*, not damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Moreover, "[t]he 1996 Congressional amendments to § 1983 bar injunctive relief, unless a declaratory decree was

violated or declaratory relief was unavailable." *Neroni v. Coccoma*, No. 3:13-cv-1340 (GLS/DEP), 2014 WL 2532482, at *6 (N.D.N.Y. June 5, 2014) (citing *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)). Therefore, a judge is immune from all lawsuits unless she "has acted either beyond [her] judicial capacity or 'in the complete absence of all jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 12). Importantly, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is" judicial immunity. *Aron v. Becker*, 48 F. Supp. 3d 347, 363 (N.D.N.Y. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

To determine whether an act is "judicial," the Court examines the act itself, and not the actor. *Bliven*, 579 F.3d at 209-10. An act is "judicial" when a judge normally performs that act and the parties interact with the judge in her judicial capacity. *Mireles*, 502 U.S. at 12. The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d at 210. Examples include "issuing a search warrant; directing court officers to bring a particular attorney before the judge for a judicial proceeding; granting a petition for sterilization; and disbarring an attorney." *Id.* (citations omitted). "The fact that a proceeding is 'informal and *ex parte* . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 225-26 (1988)). "The Second Circuit has noted that '[t]he principal hallmark of the judicial function is a decision in relation to a particular case.'" *Aron*, 48 F. Supp. 3d at 365 (quoting *Bliven*, 579 F.3d at 211).

Defendants argue that Judges Kehoe and Boller are immune from suit for money damages in their judicial capacities.[8] ECF No. 26, at 50. Plaintiffs Cuthbert and Murtari concede that

---

[8] Plaintiffs use the phrase "judicial capacities." ECF No. 26, at 50. For clarity, the law states that judges are immune from suits in law and equity in their individual capacities for judicial acts. *See Aron v. Becker*, 48 F. Supp. 3d 347, 363 (N.D.N.Y. 2014).

judges are immune from suit for money damages for judicial acts. ECF No. 29, at 13. They argue, however, that deciding firearms license applications is an administrative act, not a judicial one. *Id.*

Plaintiffs incorrectly analyze Defendants' acts. Based on well-established law, Judges Kehoe and Boller were acting in their judicial capacities when they ruled on Cuthbert and Murtari's firearms license applications. First, Judges Kehoe and Boller are authorized to evaluate firearms license applications because they are judges. *See Aron*, 48 F. Supp. 3d at 365; *see also* N.Y. Penal Law §§ 265.00(10), 400.00. Of course, as noted above, an act is not judicial simply because the actor is a judge. Here, however, Judges Kehoe and Boller may evaluate firearms license applications because they are judges *and* the relevant law grants that authority to judges specifically. Consequently, it would be illogical to find that Judges Kehoe and Boller were acting outside of their judicial capacity. *Aron*, 48 F. Supp. 3d at 365.

Moreover, Judges Kehoe and Boller's acts carry all the hallmarks of judicial acts: their determinations arose out of an individual case before them, which is the "principal hallmark" of a judicial act; a judge normally[9] performs those acts; and Cuthbert and Murtari were dealing with Judges Kehoe and Boller in their capacity as judges.

Murtari and Cuthbert argue that Judges Kehoe and Boller received *ex parte* communications in their role as licensing officers in violation of the Judicial Code of Conduct, and they therefore could not be acting in their judicial capacity when deciding firearms license applications. ECF No. 29, at 14. As noted above, however, an informal or *ex parte* proceeding does not strip an act of its judicial character. *Bliven*, 579 F.3d at 210 (quoting *Forrester*, 484 U.S. at 225-26). Based on this precedent, the Court declines to change its analysis of Judges Kehoe and Boller's acts.

---

[9] With the exception of judges in New York City, Nassau County, and some towns in Suffolk County, all state judges in NYS determine firearms license applications. *See* N.Y. Penal Law § 265.00(10)

Finally, Plaintiffs attack the *Aron* court's reasoning and argue that the *Aron* court "basically said that the defendant was immune from suit because he was called a 'judge' by statute" and "judges are not immune from suit for administrative activities even though those who perform them are *called* judges and even though those functions are statutorily prescribed or bestowed ex officio."  ECF No. 29, at 14 (emphasis in original).  However, the court's analysis in *Aron* is thorough and based on well-established Supreme Court and Second Circuit precedent.  Plaintiffs, on the other hand, provide little or no legal authority to support their arguments.  Plaintiffs are correct that the *Aron* court, based on Northern District of New York precedent, reasoned that a judge authorized to act because she is a judge is therefore acting in her judicial capacity.  What Plaintiffs fail to grasp, however, is that this analysis is based on both NYS's firearms licensing laws and the functional analysis framework for judicial acts handed down by the Supreme Court and the Second Circuit.  Without their own legal authority to counter the substantial case law that Defendants and the *Aron* court provide, Plaintiffs' arguments must fail.  Accordingly, the Court finds that Judges Kehoe and Boller are immune from suit for money damages and injunctive relief[10] in their individual capacities, and all claims against them in their individual capacities are DISMISSED.

### 3.      Defendant Judges Kehoe and Boller Are Entitled to Sovereign Immunity from Suit for Money Damages in Their Official Capacities

Next, Defendants challenge Plaintiffs' claims for damages against Defendants in their official capacity under the Eleventh Amendment.  ECF No. 26, at 51.  Notably, they do not challenge Plaintiffs' claims for injunctive relief.  Plaintiffs did not respond to Defendants' arguments.  Judges Kehoe and Boller are state officials who enjoy immunity from suits for

---

[10] Plaintiffs do not argue that Judges Kehoe and Boller should not be immune from suit in their individual capacities for injunctive relief.  Consequently, the Court rules in Defendants' favor.

damages in their official capacities. *Aron*, 48 F. Supp. 3d at 366-67. Accordingly, the Court finds

that Plaintiffs' claims for damages against Judges Kehoe and Boller in their official capacities are

DISMISSED.

Cuthbert is left with the second and third claims in the Amended Complaint for injunctive

relief against Judge Boller, while Murtari has the three constitutional claims for injunctive relief,

and the Article 78 claim, against Judge Kehoe. ECF No. 17, ¶¶ 139-41. The Court addresses each

in turn below, beginning with the void-for-vagueness claim.

**4.      The Third Claim Fails as to Plaintiffs Cuthbert and Murtari Because the Standards in N.Y. Penal Law § 400.00 Are Not Unconstitutionally Vague**

Cuthbert and Murtari allege that Section 400.00 is unconstitutionally vague.[11] ECF No.

17, ¶¶ 139-41. Specifically, they contend that the terms "good moral character," "proper cause,"

and "good cause" in Section 400.00[12] are "not capable of definition in such a way that puts an

applicant, a licensing officer, or a reviewing court on notice of the meaning of the terms." *Id.*

Before the Court analyzes Plaintiffs' claim, the Court must determine whether Plaintiffs

challenge Section 400.00 facially or as applied to them. *See John Doe No. 1 v. Reed*, 561 U.S.

186, 194 (2010); *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 249-50 (2d

Cir. 2015) ("*NYSRPA*"). To determine whether a claim is facial or as-applied, "[t]he label is not

what matters." *Doe*, 561 U.S. at 194. Rather, it is the plaintiff's claim and the relief that follows.

*Id.* A claim is facial if it "challenges application of the law more broadly." *Id.* A claim is as-

applied if it is limited to a plaintiff's particular case. *See id.*

---

[11] While unclear, it appears that Plaintiffs allege a claim that the "serious offense" standard in Section 400.00 is overbroad and thus violates the Constitution. ECF No. 17, ¶¶ 137-38. As the Second Circuit pointed out, however, there is no overbreadth argument in the Second Amendment context. *Decastro*, 682 F.3d 169. Consequently, Plaintiffs' overbreadth claim fails to the extent they allege it.

[12] As explained above, Cuthbert only has standing to challenge the "proper cause" standard, while Murtari has standing to challenge all three standards. The Court addresses the vagueness claims for both Plaintiffs in one section for the sake of brevity.

Here, Defendants argue that Plaintiffs challenge Section 400.00 facially, and not as applied to them. ECF No. 26, at 47 n.26. Specifically, they state that Plaintiffs have not alleged factual or legal arguments to support an as-applied vagueness claim. *Id.* The Court agrees.

First, neither the Amended Complaint nor Plaintiffs' response to the Motion to Dismiss state that the standards were unconstitutional as applied to Plaintiffs. Plaintiffs argue only that the standards are unconstitutional because they cannot be defined. ECF No. 17, ¶¶ 139-141; ECF No. 29, at 12-13.

Second, while Cuthbert and Murtari allege that they were denied unlimited firearms licenses, they do not assert that their applications were denied due to the allegedly undefinable standards.

Neither the Amended Complaint nor Plaintiffs' response to the Motion to Dismiss contain any language limiting Plaintiffs' vagueness claim to the particular cases of Cuthbert and Murtari. Instead, Plaintiffs challenge the application of the standards more broadly. Accordingly, the Court finds that Cuthbert and Murtari allege a facial vagueness claim against the standards in Section 400.00.

"[T]o succeed on a facial challenge, the challenger must establish that *no set of circumstances* exists under which the [laws] would be valid." *NYSRPA*, 804 F.3d at 265 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (quotation marks omitted) (emphasis in quotation).[13] Consequently, a facial challenge is "the most difficult challenge to mount successfully." *Id.*

---

[13] The *Kuck* court expressed some uncertainty over whether to apply the Supreme Court's standard for vagueness from *Salerno* or from *City of Chicago v. Morales*, 527 U.S. 41, 119 (1999). *Kuck*, 822 F. Supp. 2d at 130-33. As the *Kuck* court noted, however, only a plurality of the Supreme Court agreed to the *Morales* standard, while a majority endorsed the standard in *Salerno*. *Kuck*, 822 F. Supp. 2d at 132. Moreover, the Second Circuit recently used the *Salerno* standard in a context similar to this case. *NYSRPA*, 804 F.3d at 265.

Here, Defendants argue that there are "innumerable factual circumstances" in which the standards outlined in Section 400.00 are constitutionally valid. ECF No. 26, at 48. They give one example: an individual who develops dementia and paranoid schizophrenia threatens to harm others, shoots himself, has an alcohol or drug addiction, and repeatedly engages in reckless activity with his firearm while intoxicated. ECF No. 26, at 47-48 (quoting *Kuck*, 822 F. Supp. 2d at 130-33). In response, Plaintiffs maintain that the standards in Section 400.00 are not defined. ECF No. 29, at 12-13.

Whether Section 400.00 defines the standards is irrelevant. As noted above, Plaintiffs must show that there are no set of circumstances under which the standards in Section 400.00 would be valid. They have failed to do so. Defendants provide one of many sets of circumstances in which the Section 400.00 standards would be valid if applied. Indeed, under *Heller*, which Plaintiffs mention favorably many times in their response to the Motion to Dismiss, prohibiting felons and the mentally ill from possessing firearms is "presumptively lawful." *NYSRPA*, 804 F.3d at 253. *Heller* thus provides a set of circumstances in which Section 400.00 would be valid: prohibiting a felon or mentally ill person from obtaining a firearms license. Accordingly, the third claim is DISMISSED.

5. **The Second Claim Fails as to Plaintiffs Cuthbert and Murtari Because the "Proper Cause" Standard Is Constitutional Pursuant to Binding Precedent**

Defendants argue that Cuthbert's challenge against the "proper cause" standard for a concealed carry firearms license in NYS fails because binding precedent found the "proper clause" requirement constitutional. ECF No. 26, at 34. In their Amended Complaint, Plaintiffs acknowledge that "this requirement has been ruled constitutional by the . . . Second Circuit," but they intend to preserve the issue for Second Circuit or Supreme Court review. ECF No. 17, ¶¶ 73-74. Plaintiffs do not respond to Defendants' argument. As Plaintiffs and Defendants have noted,

the Second Circuit recently found the "proper clause" requirement constitutional.  *See Kachalsky*,

701 F.3d at 101.  *Kachalsky* is still good law in this Circuit.  Accordingly, the second claim is

DISMISSED as to Cuthbert.

The Court is left with the first and fourth claims as to Murtari.  The first claim contains

both facial and as-applied challenges to NYS's licensing laws.  The Court addresses each below.

**6.     Plaintiff John Murtari's As-Applied and Facial Challenges to NYS's Firearms Licensing Laws under the First Claim Fail Because the Licensing Laws Satisfy Intermediate Scrutiny and Would Be Valid under Numerous Circumstances**

**a.     As-Applied Challenge**

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security

of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST.

amend. II.  In *Heller*, the Supreme Court announced that the Second Amendment codified an

individual right to possess and carry weapons "in common use" by citizens for "lawful purposes

like self-defense."  *Heller*, 554 U.S. at 624.  This right is at its "zenith within the home."

*Kachalsky*, 701 F.3d at 89; *see Heller*, 554 U.S. at 628-29, 635 ("The Second Amendment . . .

surely elevates above all other interests the right of law-abiding, responsible citizens to use arms

in defense of hearth and home.").

Simultaneously, *Heller* described limits on the Second Amendment right that are

"presumptively lawful."  Namely, States may prohibit "possession of firearms by felons and the

mentally ill, . . . [possession] of firearms in sensitive places such as schools and government

buildings, [and may impose] conditions and qualifications on the commercial sale of arms."

*Heller*, 554 U.S. at 626-27.

Outside of these explicit limits, however, *Heller* provides "little guidance for resolving future Second Amendment challenges." *NYSRPA*, 804 F.3d at 253. The Supreme Court's subsequent decision in *McDonald* provides no further direction. *Id.* at 254.

The Second Circuit filled this void with its decisions in *Decastro*, *Kachalsky*, and *NYSRPA*. In these cases, the Second Circuit announced a two-step inquiry for laws challenged under the Second Amendment. The Court must consider (1) whether the law burdens conduct protected by the Second Amendment, and then (2) the appropriate level of scrutiny. *See NYSRPA*, 804 F.3d at 254. Of course, if the law does not burden conduct protected by the Second Amendment, it stands. *Id.*

i.      **NYS's Firearms Licensing Laws Burden Conduct Protected by the Second Amendment**

Under the first step, the Court looks to conduct the Second Amendment protects, namely, possession of weapons that are (1) in common use and (2) typically possessed by law-abiding citizens for lawful purposes. *Id.* (quoting *Heller*, 554 U.S. at 625-27). Handguns satisfy both criteria, but all "bearable arms" enjoy prima facie protection by the Second Amendment. *See NYSRPA*, 804 F.3d at 255-56 (quoting *Heller*, 554 U.S. at 582, 629).

Here, NYS's firearms licensing laws burden conduct protected by the Second Amendment. First, the licensing laws unquestionably places restrictions on the possession of firearms "in common use." Individuals in NYS may not possess any firearms without a license, except rifles and shotguns. *See* N.Y. Penal Law §§ 265.00(3), 400.00. Included in that category are handguns, which the *Heller* court noted are "the most popular weapon chosen by Americans for self-defense in the home. *Heller*, 554 U.S. at 629.

For the same reasons, NYS's firearms licensing laws restrict the possession of weapons that are typically possessed by law-abiding citizens for lawful purposes. Indeed, under *Heller*,

handguns are the most commonly possessed firearm for the ultimate lawful purpose—defending the home.

In a footnote, Defendants urge the Court to find that NYS's firearms licensing laws do not burden conduct protected by the Second Amendment. In support, they note that the *Kachalsky* court *assumed*, but did not decide, that NYS's concealed carry requirements burdened conduct protected by the Second Amendment. ECF No. 26, at 39 n.22. Moreover, they argue that NYS's licensing laws qualify as a "longstanding" regulation that the *Heller* court determined is "presumptively lawful." *Id.*

The Court is not persuaded. First, Defendants' characterization of the *Kachalsky* decision is incorrect. The Second Circuit assumed that Second Amendment protections, and the *Heller* decision, had "*some* application in the very different context of the public possession of firearms." *Kachalsky*, 701 F.3d at 89 (emphasis in original). The Second Circuit did not reach the question of whether NYS's concealed carry requirements burdened Second Amendment protections.

Even if Defendants' characterization were correct, requirements for possession of firearms at home carry the highest level of protection under the Second Amendment, a fact noted repeatedly in *Kachalsky* and *Heller*. Therefore, the context in this case is completely different from the concealed carry requirements analyzed in *Kachalsky*.

Finally, given the framework outlined in *NYSRPA*, whether NYS's firearms licensing laws are "longstanding" or "presumptively lawful" is irrelevant at this stage of this analysis.[14] The Court is required to determine whether the licensing laws burden possession of weapons that are

---

[14] The Court again disagrees with Defendants' characterization of the *Kachalsky* decision. The *Kachalsky* court did not determine that "New York's firearms licensing [laws are] 'longstanding,'" as Defendants contend. ECF No. 26, at 39 n.22. It concluded that the "proper cause" requirement is longstanding. *Kachalsky*, 701 F.3d at 90 n.11. More importantly, the *Kachalsky* court noted that the "longstanding" and "presumptively lawful" language in *Heller* is not "a talismanic formula for determining whether a law regulating firearms is consistent with the Second Amendment." *Id.* While the language is informative, "it simply makes clear that the Second Amendment right is not unlimited." *Id.*

in common use and typically possessed by law-abiding citizens for lawful purposes. The Court finds that it does.

The Court now must consider what level of scrutiny to apply to NYS's firearms licensing laws. *NYSRPA*, 804 F.3d at 257. While *Heller* provided no guidance on the level of scrutiny applicable to firearms regulations, the Second Circuit has determined that heightened scrutiny is not always appropriate. *Id.* at 258. The Court must, therefore, determine whether heightened scrutiny applies. *Id.*

### ii. Intermediate Scrutiny Is Appropriate

To determine whether heightened scrutiny applies, the Court considers two factors: (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right. *Id.* (citing *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)). As to the second factor, heightened scrutiny is appropriate only where the law "substantially burdens" Second Amendment protections. *NYSRPA*, 804 F.3d at 259. There is no substantial burden "if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense." *Id.* (quoting *Decastro*, 682 F.3d at 168). Indeed, where a law does not prevent law-abiding, responsible citizens from possessing firearms "in defense of hearth and home," it does not substantially burden the core Second Amendment right. *See Aron*, 48 F. Supp. 3d at 371.

First, NYS's firearms licensing laws implicate the core of the Second Amendment right to possess handguns in "defense of hearth and home." *Heller*, 554 U.S. at 628-29, 635. Although NYS's licensing laws do not ban firearm possession outright as the laws in *Heller* and *McDonald* did, they still place limits on the ability of law-abiding citizens to own firearms for self-defense in the home, where Second Amendment protections are at their "zenith." *Kachalsky*, 701 F.3d at 89; *see also NYSRPA*, 804 F.3d at 258 (concluding that a ban on semiautomatic assault weapons and

large-capacity magazines in the home implicates the core of the Second Amendment's protections).

While NYS's firearms licensing laws implicate the core Second Amendment right, they do not substantially burden it. The licensing laws place no more than "marginal, incremental, or even appreciable restraint on the right to keep and bear arms." *NYSRPA*, 804 F.3d at 259 (quoting *Decastro*, 682 F.3d at 166). As Plaintiffs note, law-abiding, responsible citizens face nothing more than time, expense, and questioning of close friends or relatives. ECF No. 17, ¶¶ 68-72. It is only "the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun" that face a substantial burden on the core Second Amendment protection via NYS's firearms licensing laws. *Aron*, 48 F. Supp. 3d at 371.

Plaintiffs' own experiences support the Court's conclusion. It is only Murtari who was denied a license to possess a firearm in his home. *See* ECF No. 17, ¶ 97. Murtari plainly fits into the "narrow class of persons" noted in *Aron*—he has shown repeated indifference for laws at the state and federal level. *See* ECF No. 27, Ex. E (letter from Judge Kehoe denying Murtari's application for a firearms license in full because he was arrested approximately fifty times, had received four jail sentences totaling over four months in jail, and repeatedly refused to make child support payments).

Accordingly, because the licensing laws implicate the core Second Amendment right, but does not substantially burden it, the Court applies intermediate scrutiny. *See, e.g., Aron*, 438 F. Supp. 3d at 371; *United States v. Chovan*, 753 F.3d 1127, 1139 (9th Cir. 2013) (applying intermediate scrutiny where the law did not implicate the core Second Amendment right, but did substantially burden it); *Kachalsky*, 701 F.3d at 96 (applying intermediate scrutiny to the "proper cause" standard).

### iii.     NYS's Firearms Licensing Laws Satisfy Intermediate Scrutiny

In the context of the Second Amendment, the question is whether the laws are "substantially related to the achievement of an important government interest." *NYSRPA*, 804 F.3d at 261 (quoting *Kachalsky*, 701 F.3d at 96). Unquestionably, NYS has "substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id.* Consequently, this Court need only determine "whether the challenged laws are 'substantially related' to the achievement of that governmental interest." *Id.*

As the Second Circuit explained, the "fit between the challenged regulation [and the government interest] need only be substantial, not perfect." *Id.* "So long as the [D]efendants produce evidence that 'fairly support[s]' their rationale, the laws will pass constitutional muster. *NYSRPA*, 804 F.3d at 261 (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438 (2002) (plurality)).

The Court also affords "substantial deference to the predictive judgments of the legislature." *NYSRPA*, 804 F.3d at 261 (quoting *Kachalsky*, 701 F.3d at 97). "In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Id.* The Court must only ensure that NYS has "drawn reasonable inferences based on substantial evidence." *Id.* at 262 (quoting *TBS v. FCC*, 520 U.S. 180, 195 (1997)).

Here, NYS's firearms licensing laws are substantially related to NYS's governmental interest. The prior decisions within this Circuit are clear: the licensing laws are designed to ensure that "only law-abiding, responsible citizens are allowed to possess" a firearm. *Aron*, 438 F. Supp. 3d at 372. Moreover, the laws "promote[] public safety and prevent gun violence" by ensuring

that classes of individuals who do not have the necessary character and qualities to possess firearms are not able to do so. *See Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013). Murtari provides nothing in the Amended Complaint to counter the substantial body of law that favors Defendants. Consequently, he has not alleged a plausible claim for relief.

### b. Facial Challenge

Finally, Murtari's facial challenge to the licensing laws must also fail. In order to succeed in his facial challenge, Murtari would need to show that "*no set of circumstances* exists under which the [laws] would be valid." *NYSRPA*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745) (quotation marks omitted) (emphasis in quotation). Because the licensing laws do not substantially burden the core Second Amendment right, they do not infringe the Second Amendment right to keep and bear arms, and numerous circumstances exist under which the act would be valid. *See Decastro*, 682 F.3d at 168. Accordingly, Murtari's as-applied and facial challenges to NYS's firearms licensing laws fail, and the second claim is DISMISSED.

### 7. The Court Declines to Institute an Article 78 Proceeding Against Defendant Judge Kehoe

Defendants argue that federal courts in NYS have universally declined to exercise supplemental jurisdiction over Article 78 claims. ECF No. 26, at 54. Plaintiffs contend that an Article 78 proceeding in this Court would be "faster" than one in state court and appropriate because Defendants are required to "produce a complete record" for the Court. ECF No. 29, at 16-17. Plaintiffs' response is unclear and fails to address Defendants' argument. In any case, Defendants are correct—"[t]he overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." *Coastal Commc'ns Serv., Inc. v. City of New York*, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009). The Court joins the vast majority of our

sister courts and declines to exercise jurisdiction over Murtari's Article 78 claim. Consequently, it is DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 25) is GRANTED and Plaintiffs' Amended Complaint (ECF No. 17) is DISMISSED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: January 10, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court